UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE,                                      :

    Plaintiff,                              :
                                          CASE NO. 1:05cv02450 (ESH)
v.                                             :

MAMSI LIFE AND HEALTH                          :
INSURANCE COMPANY, et al.,
                                          :
    Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION TO DISMISS OF
<u>DEFENDANT IPRO NATIONAL MEDICAL REVIEW, LTD.</u>**

Plaintiff Jane Doe, by her undersigned counsel, herewith opposes the Motion to Dismiss by defendant IPRO National Medical Review, Ltd. ("IPRO"), served February 6, 2006.

IPRO's Motion lists, in numbered paragraphs, five grounds for dismissal of plaintiff's Complaint against IPRO. None of them warrants granting the Motion.

**I.    <u>SUIT AGAINST THE WRONG ENTITY</u>:**

IPRO contends that IPRO, Inc., is the party that contracted to provide independent review services to the District of Columbia. Plaintiff will seek leave of the Court to amend the Complaint to substitute IPRO, Inc., in place of IPRO National Medical Review, Ltd., as the defendant.

**II.    <u>IMMUNITY PURSUANT TO D.C. CODE § 44.301.08(h)</u>:**

The cited section does not grant total immunity. It reads as follows:

> Neither an independent review organization nor an individual working for an external review panel pursuant to this chapter shall be held liable for any recommendation presented by the independent review organization, <u>except in cases of gross negligence, recklessness, or intentional misconduct.</u>

(Emphasis supplied).

Count VI of the Complaint alleges that "By refusing without justification to consider the documents plaintiff submitted and by improperly analyzing the records and documentation it did consider, IPRO conducted its review in bad faith with a calculated and wrongful intention to cause harm to plaintiff". Under the statute, IPRO is immune from liability for the recommendation it presents, and nothing more than that. Count VI does not concern IPRO's recommendation, but instead its focus is the procedure IPRO followed that preceded issuance of its recommendation.

D.C. Code, § 44.301.08(h) does not immunize IPRO from the allegation stated in Count VI because it alleges intentional misconduct. In addition, Count IV of the Complaint, alleging the tort of Wrongful Involvement in Litigation, also cannot be dismissed on the basis of the statute. Should the Court disagree, plaintiff would seek leave to amend the Complaint as the underlying facts alleged certainly evidence a gross and intentional departure from the appropriate role of a health care agency. In essence, IPRO ignored significant relevant medical evidence and made its recommendation on an incomplete record. IPRO's defense to this action is contained in its Exhibit C, a letter of June 6, 2005, replete with hearsay in which IPRO attempted well after-the-fact to justify its rejection of plaintiff's medical information.

### III.   WRONGFUL INVOLVEMENT IN LITIGATION (Count IV):

Addressing Count IV of the Complaint which alleges Wrongful Involvement in Litigation, IPRO contends (Motion at 2, paragraph 3; Memorandum of Points and Authorities at 5) that plaintiff has failed to state "any factual basis" for alleging that IPRO forced her to bring suit against MAMSI, "as IPRO's recommendations are non-binding". For this, IPRO quotes D.C. Code, § 44-301.07(p), that "the decision of the independent review organization shall be

nonbinding on all parties and shall not affect any other legal causes of action" (Memorandum of Points and Authorities at 5).

That IPRO's recommendation was not binding on MAMSI does not mean it did not affect MAMSI's conduct to continue to deny plaintiff's claim so plaintiff was compelled to bring suit. The reason why the District of Columbia enacted the independent review procedure is that the recommendations of independent review organizations should influence the insurers' conduct even if the recommendations are not binding.[1] The statutory purpose is achieved, as it was not in this case, when the recommendation is fully informed of all the documentation the claimant tenders in support of her claim. By the strength that the recommendation achieves from that state of completeness, the more likely will the insurer find it persuasive. When, as Count IV alleges, IPRO wrongfully refused to consider plaintiff's evidence, its recommendation for denial fortified MAMSI's resolve to deny plaintiff's claim. Had IPRO conducted its review in the manner that the statutory procedure intends, its recommendation would have been to recognize plaintiff's claim, and this law suit would not have been brought. That the recommendation is not binding is therefore not a valid ground to dismiss Count IV.

## IV. **BREACH OF CONTRACT (Count V):**

IPRO next contends (paragraph 4 of Motion at 2; Memorandum of Points and Authorities at 5-7) that plaintiff has failed to state "any factual basis" for alleging breach of contract because

---

[1] This distinction exists with the difference between binding and non-binding arbitration. Parties agree to non-binding arbitration with the hope that the arbitrator's decision will carry persuasive force. They find it useful for that reason.

"all actions taken by IPRO were in strict conformity with that contract and Plaintiff has alleged nothing to the contrary".

Preliminarily, plaintiff notes that IPRO appends to its Memorandum of Points and Authorities three exhibits, most particularly Exhibit C, mentioned above, thus attempting to import matter outside the pleadings. Rule 12(b) grants this Court discretion to exclude this material, and plaintiff urges the Court to exercise that discretion to exclude the exhibits, most especially Exhibit C that is so rife with hearsay. They are unauthenticated, inadmissible, and unilateral submissions that concern questions of fact critical to the issues in this case. If the Court chooses to accept them and thereby to treat IPRO's Motion to Dismiss as a motion for summary judgment in the manner allowed by Rule 12(b), plaintiff asks that the Court give the parties notice of that intention and an opportunity to invoke the procedures of Rule 56 . 5C Wright and Miller, <u>Federal Practice and Procedure</u> (2004), § 1366 at 188; <u>Amons v. District of Columbia</u>, 231 F. Supp.2d 109, 113 (D.D.C. 2002).

IPRO poses two defenses to plaintiff's breach of contract claim in Count V. First, it contends that the contract does not recognize claimants like plaintiff as intended third-party beneficiaries (Memorandum at 5-6). Second, it argues that the contract required it to refuse to consider the documentation that plaintiff submitted after the hearing because it was submitted after, not "before and during", the hearing on May 18, 2005 (Memorandum at 6). Plaintiff addresses these in turn:

    A.    **<u>Third-Party Beneficiary Status:</u>**

That the contract does not explicitly recognize claimants as third-party beneficiaries is not determinative. A party's status as an intended third-party beneficiary may, as it is in this case, be

4

an inherent feature of the regulatory design. "A third-party beneficiary need not be named in a contract to have rights pursuant to it". <u>Nortel Networks, Inc. v. Gold & Appel Transfer, S.A.</u>, 298 F. Supp.2d 81, 89-90 (D.D.C. 2004), citing <u>R. A. Weaver and Associates v. Haas and Haynie Corp.</u>, 663 F.2d 168, 175 (D.C. Cir. 1980); Restatement (2d) of Contracts, § 308, comment a ("there is no requirement of identification prior to the time for enforcement of the right"). It is implausible to suppose that the Health Benefits Plan Members Bill of Rights Act of 1998, D.C. Code, § 44-301.01 <u>et seq.</u>, had anyone but plan members such as plaintiff in mind as the intended beneficiaries of the external grievance process provided for by § 44-301.07 of the Act, and, accordingly, that plan members such as plaintiff are the intended beneficiaries of the contract that the D.C. Department of Health entered into with IPRO to provide that process in the District of Columbia.

      **B.**    **Compliance with the Contract:**

IPRO contends that it was only complying with its contract with the District of Columbia when it issued its recommendation without considering the documentation that plaintiff submitted after the hearing on May 18, 2005 (Motion at 2, paragraph 4; Memorandum of Points and Authorities at 6-7). As an aside, the June 6, 2005, letter (Exhibit C to IPRO Motion) on which IPRO relies for the factual basis of this defense is an after-the-fact effort by IPRO to protect its wrongful decision once plaintiff's counsel had complained. The Court should note that this rationale was NEVER shared with plaintiff's attorney until IPRO filed this Motion to Dismiss..

In any event, IPRO relies upon D.C. Code, § 44-301.07(k)(2)(C), quoted in paragraph 25 of the Complaint, that parties involved in external review may "submit supporting material both before and during the hearing". IPRO construes this statute absolutely to prohibit any post-

hearing submission of documentation no matter how strong is the case for good cause to do so (Memorandum at 6, arguing that, by submitting such documents, plaintiff committed a "unilateral amendment" of the statute). However, this argument ignores Paragraph 26 of plaintiff's complaint which alleges the following:

> The right 'To submit supporting material both before and during the hearing' includes the right to submit supporting material following the hearing when, during the hearing, a party expresses the intention for good reason to do so, and there is no objection.

The medical records forwarded to IPRO two days after the hearing were the topic of discussion during the hearing, they were specifically referenced by plaintiff's health care provider, and it was agreed that the records would be submitted and made available to a second IPRO physician who could not be on the line for the hearing.

As a statement of its position on this issue, IPRO references Exhibit C, the June 6, 2005, letter from Ms. Giorgio to Patrick Kelly of the Department of Health. This letter acknowledges confirmation of the advice that IPRO should not consider the post-hearing material (Memorandum at 6-7).[2]

IPRO, in its Memorandum in support of its Motion, characterizes this letter in the following manner:

---

[2] The source of this rule is not explained. Is it based on the Department's reading of D.C. Code, § 44-301.07(k)(2)(C), or is it founded on some gloss the Department has placed upon that provision? Evidence of IPRO's bad faith and of its intention to harm plaintiff may include its apparently unquestioning acceptance of the Department's rule without inquiry whether there could be any possible exception based upon IPRO's first-hand awareness of the reasons that plaintiff's counsel stated at the hearing why the documents should be accepted.

6

>As set forth in that letter, contrary to plaintiff's depiction of what occurred during the hearing, when plaintiff's counsel indicated that he would be submitting additional documents following the hearing, he was advised that this information <u>might not be considered</u> in IPRO's review. This is quite different from plaintiff's representation that there was 'no objection' to his stated intent to supplement the record. Compl. ¶ 26. Plaintiff's breach of contract claim should be dismissed, as IPRO performed exactly as it was required to perform under its contract.

Memorandum at 7.

IPRO overstates what Ms. Giorgio says. In the third paragraph of the letter, Ms. Giorgio tells Mr. Kelly:

>During the conference call, Mr. Hannon alluded to his forwarding additional records to be reviewed in regard to this matter. We advised him that he could send the records along, but we would need to speak with you in regard to whether this late information could be accepted . . .

First, this does not amount to objecting to receipt of the documents. Second, plaintiff intends to contest Ms. Giorgio's hearsay statement as to what occurred during the hearing. IPRO received them. In telling plaintiff's counsel that IPRO would speak to Mr. Kelly (if, <u>arguendo</u>, that is what Ms. Giorgio said), plaintiff's counsel would reasonably anticipate that IPRO would advise him of the result of that discussion and, if the documents were not accepted, would offer him a chance to respond before IPRO issued its recommendation. That would have been the good faith way to proceed. Instead, when apparently first informed on the day following the hearing that there was a rule of the Department of Health that forbade post-hearing submissions, IPRO concealed that fact from plaintiff's counsel until after it issued its adverse recommendation without considering the documents. Moreover, there is no evidence that IPRO fully informed Mr.

Kelly as to what transpired in the hearing, and what information IPRO provided was done ex parte. This fait accompli is what plaintiff alleges occurred, and it was an act of bad faith.[3]

Plaintiff's counsel disputes that Ms. Giorgio said during the teleconference hearing that IPRO's acceptance of documents he proposed to file after the hearing depended on advice from Mr. Kelly. To his recollection and records, Ms. Giorgio said nothing at all that suggested any contingency to acceptance of the documents founded on the good cause that plaintiff's counsel explained.

The Complaint alleges plaintiff's view of the facts concerning this issue. Paragraph 27 lists the persons who attended the teleconference hearing on May 18, 2005. They were: Ms. Giorgio; a physician consultant for IPRO; plaintiff's counsel; a law clerk for plaintiff's counsel; and Mary Stock, Ph.D., a psychologist and eating disorder specialist who treated plaintiff. In paragraph 28 and paragraphs 31 and 32, the Complaint then alleges:

> 28. During the hearing [on May 18, 2005], plaintiff's counsel stated he wished to submit following the hearing additional documents related to Dr. Stock's testimony upon the understanding that an expert retained by IPRO who could not attend the hearing might then be able to review the documents. No one attending the hearing objected to this procedure.

> 31. On June 3, 2005, Terese Giorgio telephoned plaintiff's counsel to inform him that IPRO was instructed by representatives of the Department of Health of the District of Columbia that, because the additional documents were filed 'out of time', they could not be considered and, therefore, IPRO did not consider them.

---

[3] Contracts and law never authorize actions taken in bad faith. Restatement (2nd) of Contracts, § 205, requires good faith performance of contracts. IPRO's contract with the District of Columbia requires nothing else. IPRO cites (Memorandum at 6) a provision of the contract that exonerates it from liability for obeying policy directives of the Department of Health, but that provision contains an exception: "unless the Contractor acts negligently, maliciously, fraudulently, or in bad faith".

32. By letter to Terese Giorgio dated June 3, 2005, counsel for plaintiff protested this action. Counsel told Ms. Giorgio he was not aware of any such instruction or why he had not been informed of it and that because IPRO had not considered the additional documents, its action sustaining MAMSI's denial of plaintiff's claim rested on incomplete information. No response to this letter was received.

All this at least creates a question of fact concerning what was said at the hearing on May 18. That D.C. Code, § 44-301.07(k)(2)(C) provides for parties "To submit supporting material both before and during the hearing" cannot reasonably be read to prohibit post-hearing submissions under any circumstances. As the Complaint alleges in paragraph 26, "The right 'To submit supporting material both before and during the hearing' includes the right to submit supporting material following the hearing when, during the hearing, a party expresses the intention for good reason to do so, and there is no objection". Had counsel for plaintiff been aware of this parsimonious interpretation of the process, he would have continued the hearing.

For these reasons, IPRO's Motion to Dismiss cannot be granted on the ground that what IPRO did in response to plaintiff's post-hearing submission complied with its contract with the District of Columbia.

V.   **ALLEGATIONS OF BAD FAITH**:

Lastly, IPRO (Motion at 2, paragraph 5) asserts that plaintiff has failed, in Count VI of the Complaint, to state "any factual basis" for alleging that IPRO acted in bad faith because "all actions taken by IPRO were in strict conformity not only with its contract with the D.C. Government, but also with all applicable statutes and regulations, and Plaintiff has alleged nothing to the contrary".

As argued above, bad faith and action taken with a wrongful purpose to cause injury are not, and they cannot be, sanctioned either by contract (Restatement (2nd) of Contracts, § 205) or

by statute or other law. With respect to plaintiff's allegations of bad faith, nothing alleged in Count VI is of a character that Rule 9 of the Federal Rules of Civil Procedure requires be pleaded with particularity. Rule 9(b) requires that all averments of fraud or mistake and the circumstances constituting fraud or mistake be "stated with particularity". But Count VI does not allege fraud or mistake. Rule 9(b) otherwise states: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally".

Count VI alleges, in paragraph 61:

In the course of her appeal, plaintiff provided IPRO with evidence that amply supported her claim of coverage for inpatient services at the Hospital. By refusing without justification to consider the documents plaintiff submitted and by improperly analyzing the records and documentation it did consider, IPRO conducted its review in bad faith with a calculated and wrongful intention to cause harm to plaintiff.

IPRO is mistaken that Count VI does not allege that what IPRO did was contrary to its contract or the law. The Count alleges IPRO acted in bad faith "without justification". This sufficiently alleges that no contract or law justified its wrongful acts of bad faith.

WHEREFORE, plaintiff submits that IPRO's Motion to Dismiss must be denied.

Respectfully submitted,

THOMPSON O'DONNELL, LLP

_____//s// J. Michael Hannon_____
J. Michael Hannon #352536
James F. Bromley #1438
Suite 1000
1212 New York Avenue, N.W.
Washington, D.C. 20005
(202) 289-1133
(202) 289-0275

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition to Motion to Dismiss, together with form of Order, was sent via electronic filing and first-class mail, postage prepaid, this 17th day of February to:

Daly D.E. Temchine, Esq.
Epstein Becker & Green, PC
1227 25th Street, N.W.
Washington, D.C. 20037

Christopher Flynn, Esq.
King Pagano Harrison
1730 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20006.

                              *//s// J. Michael Hannon*
                              J. Michael Hannon