UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, | : |
| Plaintiff, | : |
| v. | : |
| MAMSI LIFE AND HEALTH INSURANCE COMPANY, | : Civil Action No. 05-2450 (ESH) |
| 4 Taft Court | : |
| Rockville, MD 20850 | : |
| and | : |
| IPRO, Inc. | : |
| 1979 Marcus Avenue | |
| Lake Success, NY 11042 | : |
| Defendants. | : |

**AMENDED COMPLAINT**
For Health Care Benefits under ERISA and For
Other Claims Based on Supplemental Jurisdiction[1]

1. This action arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

2. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the other claims alleged in this Complaint that are so related to the claim under ERISA that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) on the ground that defendant MAMSI Life and Health Insurance Company ("MAMSI") "may be found" in this jurisdiction.

---

[1] On March 21, 2006, the Court dismissed Counts IV and V. By agreement of the parties, counts II & III were also dismissed.

4. Plaintiff is a Dependent of an Employee, and therefore a beneficiary as defined by 29 U.S.C. § 1002(8), under a Group Hospital and Insurance Policy Contract, Group No./Policy No. M14106, dated January 12, 2004 (the "Group Policy"). A copy of the Group Policy is appended as Exhibit "A".

5. MAMSI administers the Group Policy. It is the "Administrator" of the Group Policy pursuant to 29 U.S.C. § 1002(16A)(i), being designated as such by Article 9.3 of the Group Policy.

6. Defendant IPRO, Inc. ("IPRO"), operates under a contract with the Department of Health of the District of Columbia to provide independent external review of denials of health benefits coverage to residents of the District of Columbia pursuant to the Health Benefits Plan Members Bill of Rights Act of 1998, D.C. Code, § 44-301.07.

7. The Group Policy is an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1) and is therefore governed by ERISA.

8. In conjunction with the Group Policy, MAMSI issued its Group Certificate Schedule TB [7/04] (the "Group Certificate"). A copy of the Group Certificate is appended as Exhibit "B".

9. The Group Certificate was in effect at all times relevant to this Complaint. It describes the coverage available to plaintiff and the procedures required to obtain coverage pursuant to the Group Policy.

10. The Group Certificate provides that medical services for mental illness, including eating disorders, are covered unless they are excluded as "Services that are not Medically Necessary".

11. The Group Certificate defines "Medically Necessary" as follows:

2

Health Services which are reasonably necessary and in the exercise of good medical practice in accordance with professional standards accepted and commonly available in the United States for treatment of Sickness or Injury as determined by the Company. The services must 1) be appropriate and necessary for the symptom's diagnosis, or treatment of the medical condition; 2) be provided for the diagnosis or direct care or treatment of the condition; 3) not be provided for convenience; and 4) be performed or provided in the least costly setting or manner appropriate to diagnose or treat the Injury or Sickness. . . . The fact that Physician may prescribe, recommend or approve a procedure or treatment does not, in itself, make that procedure or treatment Medically Necessary.

The Group Certificate defines the word "Sickness" to mean "A physical or mental illness".

12. MAMSI determines whether hospital services for eating disorders are "Medically Necessary" by reference to a Protocol it has promulgated entitled "MAMSI Behavioral Health Department Psychiatric Level of Care Criteria for Eating Disorders" (the "Protocol"). The Protocol was in effect during all times relevant to this Complaint. A copy is appended as Exhibit "C".

13. The Protocol is not part of, and is not specifically referred to in, the Group Policy or Group Certificate, but it is among the "policies, procedures, rules and interpretations" which Article 9.3 of the Group Policy authorizes MAMSI, as Administrator, to adopt and which must be "reasonable".

14. From October 13, 2004, until November 8, 2004, plaintiff received inpatient services at the River Oaks Hospital in New Orleans, Louisiana (the "Hospital").

15. The Hospital is a "Hospital" as defined by the Group Certificate.

16. Plaintiff was treated at the Hospital under a diagnosis of bulimia nervosa, an eating disorder.

17. From November 9, 2004, until November 22, 2004, the Hospital provided partial hospitalization services to plaintiff. These services were provided under the same diagnosis of bulimia nervosa and without re-admitting plaintiff to the Hospital.

18. Plaintiff submitted to MAMSI timely and sufficient claims for coverage for her inpatient services from October 13, 2004, to November 8, 2004, and for her partial hospitalization services from November 9, 2004, until November 22, 2004.

19. Defendant MAMSI denied both claims. It denied the claim for inpatient services on the ground that they were not Medically Necessary. It denied the claim for partial hospitalization services on the ground that plaintiff had not obtained Preadmission Authorization.

20. Denial of the claim for inpatient services was communicated to plaintiff by letters dated October 14, 2004, and December 2, 2004. The denial dated December 2, 2004, followed plaintiff's timely appeal for internal review by MAMSI of its initial denial dated October 14, 2004.

21. Denial of the claim for partial hospitalization services was communicated to plaintiff by letter dated November 11, 2004.

22. Plaintiff thereupon sought independent external review by appeal to the Director of the District of Columbia Department of Health ("Director") pursuant to the Health Benefits Plan Members Bill of Rights Act of 1998, D.C. § 44-301.01, et seq. The appeal was designated Appeal No. 0526.

23. Communications regarding the appeal were conducted through Patrick E. Kelly, Sr., AIE, Grievance and Appeals Coordinator (the "Coordinator") of the Office of General Counsel of the Department of Health of the District of Columbia.

24. MAMSI filed with the Coordinator documentation entitled "Insurer's Submission" in support of its position on the appeal. As part of its Submission, MAMSI included a letter to the Coordinator, dated March 9, 2005, which advises the Coordinator of the grounds for denial of plaintiff's claim for inpatient services based upon the letters of October 14, 2004, and December 2, 2004. No further medical review of plaintiff's claim occurred between December 2, 2004, and MAMSI's letter to the Coordinator dated March 9, 2005.

25. The Director appointed IPRO to conduct the independent external review. Under D.C. Code, § 44-301.07(j), IPRO, acting as an "independent review organization", was required to consider "all pertinent medical records, consulting physician reports, and other documents submitted by the parties". Under D.C. Code, § 44.301.07(k)(2)(C), the parties had the right "To submit supporting material both before and during the hearing".

26. The right "To submit supporting material both before and during the hearing" includes the right to submit supporting material following the hearing when, during the hearing, a party expresses the intention for good reason to do so, and there is no objection.

27. On May 18, 2005, IPRO conducted a teleconference hearing pursuant to D.C. Code, § 44-301.07(k)(1). Attending the hearing, among others, were Terese Giorgio, IPRO Director of Corporate Programs & External Review; a physician consultant to IPRO who refused to identify himself; J. Michael Hannon, counsel for plaintiff; a law clerk for Mr. Hannon; and Mary Stock, Ph.D., a psychologist and eating disorder therapist who treated plaintiff.

28. During the hearing, plaintiff's counsel stated he wished to submit following the hearing additional documents related to Dr. Stock's testimony upon the understanding that an

expert retained by IPRO who could not attend the hearing might then be able to review the documents. No one attending the hearing objected to this procedure.

29. By letter dated May 20, 2005, plaintiff's counsel furnished the additional documents to Terese Giorgio at IPRO.

30. By letter dated May 26, 2005, the Coordinator forwarded to MAMSI, with a copy to plaintiff's counsel, IPRO's determination, dated May 26, 2005, sustaining MAMSI's denial of plaintiff's claim for inpatient services.

31. On June 3, 2005, Terese Giorgio telephoned plaintiff's counsel to inform him that IPRO was instructed by representatives of the Department of Health of the District of Columbia that, because the additional documents were filed "out of time", they could not be considered and, therefore, IPRO did not consider them.

32. By letter to Terese Giorgio dated June 3, 2005, counsel for plaintiff protested this action. Counsel told Ms. Giorgio he was not aware of any such instruction or why he had not been informed of it and that because IPRO had not considered the additional documents, its action sustaining MAMSI's denial of plaintiff's claim rested on incomplete information. No response to this letter was received.

33. The charges plaintiff incurred for her inpatient and partial hospitalization services at the Hospital have been fully paid to the Hospital by plaintiff.

## COUNT I
## ERISA - MAMSI
## 29 U.S.C. § 1132(a)(1)(B) - Claim for Benefits Due

34. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 33.

35. Pursuant to the Group Policy and Group Certificate, plaintiff is entitled to benefits due under the Group Policy for her inpatient and partial hospitalization services at the Hospital.

### Partial Hospitalization Services

36. MAMSI wrongly denied plaintiff's claim for benefits owed for partial hospitalization services on the ground of her failure to obtain Preadmission Authorization. The Group Certificate requires Preadmission Authorization only for Hospital Confinement which the Group Certificate defines as "Being registered as a bed patient in a Hospital". Plaintiff was not "registered as a bed patient" during the time the Hospital provided partial hospitalization services to her. Further, those services continued immediately following plaintiff's inpatient treatment. Therefore, plaintiff was not required to be re-admitted to the Hospital to receive these services in any sense that obligated her to obtain Preadmission Authorization.

37. MAMSI was advised by letter dated March 24, 2005, that plaintiff's claim for coverage includes the claim for partial hospitalization services. On information and belief, MAMSI did not consider that claim during its internal review, nor did IPRO consider it during its external review.

38. The partial hospitalization services were Medically Necessary and were therefore covered by the Group Policy.

### Inpatient Services

39. MAMSI wrongly denied plaintiff's claim for benefits owed for her inpatient services (the "MAMSI Denial").

40. The MAMSI Denial is based upon the Protocol (Exhibit "C"). The Protocol is divided into eight categories, called "Dimensions", which claims for inpatient treatment of

anorexia nervosa and bulimia nervosa may be shown to satisfy, subject to one of the categories (Item 1) acting, as hereafter described, as a gateway to other categories (Items 5 through 8). Certain of the categories (Items 4 through 8) consist of more than one element wherein it is reasonable to understand that satisfying at least one of the elements satisfies the category.

41. Plaintiff's claim for inpatient services satisfies Item 4 of the Protocol on the basis of "Psychiatric issues that meet inpatient acute psychiatric criteria". Plaintiff's claim also satisfies Items 5 and 8, as well as Items 6 and 7. Her claim satisfies Item 5 on the basis that she "verbally agrees to participate, but requires 24 hour skilled nursing supervision to resist urges to engage in eating disorder behavior"; her claim satisfies Item 6 on the basis of "Inability" "to comply with refeeding program and restricted exercise without 24 hour skilled nursing supervision due to severe cognitive distortions" and "intensive fears"; her claim satisfies Item 7 on the basis of "Family conflicts/dysfunction contribute to the perpetuation of the eating disorder due to family's lack of insight, knowledge, and coping skills" and isolation "from peers and community resources due to illness"; and her claim satisfies Item 8 on the basis of "Inability to control compulsive behaviors, including exercise and binge/purge cycle, even with some supervision". Satisfaction of any of these elements requires MAMSI to conclude that the inpatient services were Medically Necessary.

42. For "acute inpatient" services, the Protocol permits access to Items 5 through 8 only if the claim also satisfies Item 1, entitled "Weight Issues". Item 1 lists "weight indicators" for anorexia nervosa. It concludes with the statement: "There are no particular weight indicators re: bulimia nervosa".

8

43. In disregarding the evidence of weight loss that plaintiff sustained prior to her inpatient treatment (reducing from a weight of 125 pounds to 109 pounds) and therefore failing to find that her claim satisfies Item 1 ("Weight Issues"), the MAMSI Denial wrongly did not properly consider and determine that plaintiff's claim satisfies any of Items 5 through 8 of the Protocol.

44. Alternatively, in finding no documentation of significant weight loss resulting from plaintiff's bulimia nervosa, the MAMSI Denial wrongly did not properly consider and determine that plaintiff's claim satisfies any of Items 5 through 8 of the Protocol.

45. Patients suffering from bulimia nervosa, and who therefore engage in cycles of binging and purging, do not always lose weight beyond a normal range. The reasonably understood intent of the Protocol is, therefore, to exempt patients who are diagnosed as suffering from bulimia nervosa from having to satisfy Item 1 ("Weight Issues") before they may demonstrate that their claim for coverage of inpatient services satisfies any of Items 5 through 8.

46. If the Protocol were construed contrary to this understanding, it would be an unreasonable policy, procedure, rule, or interpretation in violation of the Article 9.3 of the Group Policy.

47. Based on this reasonable interpretation of the Protocol, the finding by the MAMSI Denial of no documentation of significant weight loss does not prevent plaintiff's claim for inpatient services from satisfying any of Items 5 through 8 of the Protocol.

48. Based on this reasonable interpretation of the Protocol, plaintiff's claim for inpatient services satisfies at least one or more of Items 5 through 8 of the Protocol. MAMSI therefore

acted wrongly and arbitrarily, and in contradiction of the terms of the Group Certificate, in denying the claim.

49. Apart from the Protocol and to the extent that the Protocol fails to include elements reasonably relevant to the need for inpatient and partial hospitalization treatment of bulimia nervosa, plaintiff's claim for inpatient services satisfies the definition of "Medically Necessary" in the Group Certificate. MAMSI therefore acted wrongly and arbitrarily, and in contradiction of the terms of the Group Certificate, in denying the claim.

## COUNT II
### Breach of Contract - MAMSI

50. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 49.

51. The Group Policy is a contract between MAMSI and The William Calomiris Co. to which plaintiff is an intended third-party beneficiary. The Group Policy requires MAMSI to provide coverage to plaintiff whenever plaintiff fulfills the requirements of the Group Certificate.

52. The evidence which plaintiff has submitted to MAMSI in support of her claim for inpatient services at the Hospital from October 13, 2004, to November 8, 2004, and for partial hospitalization services from November 9, 2004, to November 22, 2004, fulfilled the requirements of the Group Certificate. By denying plaintiff's claim, MAMSI breached its contract with The William Calomiris Co., to the injury of plaintiff as an intended third-party beneficiary of the contract.

## COUNT III
## Bad Faith - MAMSI

53. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 52.

54. MAMSI was provided with clear and sufficient medical proof of plaintiff's right to coverage for her inpatient services at the Hospital from October 13, 2004, to November 8, 2004, and and for partial hospitalization services from November 9, 2004, to November 22, 2004. By denying coverage, MAMSI administered the Group Policy in bad faith and with a calculated and wrongful intention to cause harm to plaintiff.

## COUNT IV
## Wrongful Involvement in Litigation - IPRO

55. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 54.

56. IPRO did not conduct its independent external review under the Health Benefits Plan Members Bill of Rights Act of 1998 upon all the pertinent medical records, consulting physician reports, and other documents submitted by the parties as required by D.C. Code, § 44-201.07(j), and IPRO failed without justification to consider the documents that plaintiff's counsel submitted to IPRO on May 20, 2005. Failure to consider these documents, and failure properly to analyze the records and documentation it did consider, caused IPRO improperly to sustain the MAMSI Denial, thereby wrongfully compelling plaintiff to bring this suit against MAMSI. If IPRO had properly and lawfully performed its services, this suit would not have been necessary.

## COUNT V
## Breach of Contract - Defendant IPRO

57. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 56.

58. In reviewing plaintiff's claim for inpatient services, IPRO was performing its contract with the Department of Health of the District of Columbia to provide independent external review services under D.C. Code, § 44-301.07.

59. Plaintiff was an intended third-party beneficiary of the contract by which IPRO undertook to provide independent external review services under D.C. Code, § 44-301.07.

60. In performing such services, IPRO failed to consider and properly analyze all the documents which plaintiff submitted in support of her claim.

61. By denying plaintiff's claim, IPRO breached its contract with the Department of Health of the District of Columbia to the injury of plaintiff as an intended third-party beneficiary of that contract.

## COUNT VI
## Bad Faith - IPRO

62. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 61.

63. In the course of her appeal, plaintiff provided IPRO with evidence that amply supported her claim of coverage for inpatient services at the Hospital. By refusing without justification to consider the documents plaintiff submitted and by improperly analyzing the records and documentation it did consider, IPRO conducted its review in bad faith with a calculated and wrongful intention to cause harm to plaintiff.

WHEREFORE, plaintiff requests the following relief against defendants:

1. That MAMSI be ordered to pay to plaintiff all of the benefits owed to her as a beneficiary under the Group Policy for the inpatient and partial hospitalization services the Hospital provided to her from October 13, 2004, to November 8, 2004 (inpatient), and from November 9, 2004, to November 22, 2004 (partial hospitalization).

2. That the Court award compensatory damages against IPRO for wrongfully involving plaintiff in this litigation with MAMSI.

3. That the Court award compensatory damages against MAMSI and IPRO for their respective breaches of contract as alleged herein.

4. That the Court award punitive damages against MAMSI and IPRO for their bad faith and calculated and wrongful intention to cause harm to plaintiff.

5. That the Court award to plaintiff reasonable attorneys fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

6. That the Court award plaintiff such other and further relief as the Court deems just.

THOMPSON O'DONNELL, LLP

_____//s// J. Michael Hannon_____
J. Michael Hannon #352536
James F. Bromley #1438
1212 New York Avenue, N.W.
Suite 1000
Washington, D.C. 20005
(202) 289-1133
(202) 289-0275 (facsimile)

*Attorneys for Plaintiff Jane Doe*