UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, : | |
| : | |
| Plaintiff, : | |
| : | CASE NO. 1:05cv02450 (ESH) |
| v. : | |
| : | |
| MAMSI LIFE AND HEALTH : | |
| INSURANCE COMPANY, et al., : | |
| : | |
| Defendants. : | |

**OPPOSITION TO DEFENDANT MAMSI LIFE AND
HEALTH INSURANCE COMPANY'S MOTION FOR PROTECTIVE
ORDER LIMITING DISCOVERY TO THE ADMINISTRATIVE RECORD**

Plaintiff through her attorneys, HANNON LAW GROUP, LLP, respectfully submits this opposition to Defendant MAMSI Life and Health Insurance Company's Motion for a Protective Order.

**INTRODUCTION**

This case involves claims for benefits under an employee group health plan governed by ERISA. In the fall of 2004, Plaintiff received inpatient services and partial hospitalization for bulimia nervosa. Plaintiff, a Dependent of an Employee and therefore a beneficiary under a Group Hospital and Insurance Policy Contract, properly submitted to MAMSI Life and Health Insurance Company ("MLH"), claims for her coverage. MLH improperly denied her claims, stating that they were not medically necessary and that Plaintiff had not obtained Preadmission Authorization for her partial hospitalization.

Plaintiff next sought independent external review by appeal to the Director of the District of Columbia Department of Health. The Director appointed IPRO to conduct an independent external review through consideration of all pertinent medical records, physician reports and

1

other documents submitted by the parties. A hearing was conducted by IPRO. Attending the hearing were Terese Girorgio, IPRO Director of Corporate Programs and External Review; a physician consultant to IPRO; J. Michael Hannon, counsel for Plaintiff; a law clerk for Mr. Hannon; and Mary Stock, Ph.D., a psychologist and eating disorder therapist who treated Plaintiff.

Dr. Stock reported as to Jane Doe's medical history, the diagnosis, and the treatment protocol. She stated that it was medically necessary for Plaintiff to be placed in inpatient treatment due to her inability to conform her behavior to the treatment protocol and due to complicating psychological issues.

One of IPRO's outside consultants was unable to attend the telephonic hearing. Therefore, during the hearing counsel for Plaintiff announced that the additional medical records would be provided to IPRO and a summary of the hearing would be provided for the second IPRO medical consultant. These records were the basis of the additional information provided in the telephonic hearing and supported Dr. Stock's opinion that inpatient treatment of Jane Doe was medically necessary.

No one objected to the procedure which was necessary to allow the hearing to go forward on the agreed-upon schedule. Yet, IPRO denied Plaintiff's appeal before receiving the records. When Plaintiff's counsel protested, Terese Giorgio informed Plaintiffs counsel that the additional documents could not be considered as they were filed out of time. Plaintiffs counsel protested this action by letter. No response to the letter was received. Plaintiff has since, fully paid all charges incurred for her inpatient and partial hospitalization services.

**ARGUMENT**
**I.    The Benefits and Burdens of Discovery Requests Under**
<u>**Fed. R. Civ. P. 26(b)(iii)**</u>

Plaintiff is entitled to production of all the requested documents, as they are necessary for the fair resolution of this matter.  Production of the requested documents will not unduly burden Defendant, nor will it lead to unreasonable expenditures.  Each document requested by Plaintiff will provide necessary information in discerning the decision-making process that led to the denial of Plaintiff's claim.

Defendant raises issue with the following discovery requests made by Plaintiff: (1) the production of all minutes of each and every meeting MLH or its representatives or any other defendant conducted regarding Jane Doe's claim; (2) deposition of corporate representatives to provide information regarding the claim review history and payment history for each of the internal and external reviewers who reviewed the coverage decision at issue; (3) production of all documents regarding or showing the claim review and payment history of these reviewers; (4) depositions of MLH Medical Directors, registered nurses and outside consultants; and (5) identification of the total number of cases MLH has reviewed involving bulimia nervosa and the number of those cases that have been denied. *See* Def.'s Mem. of Law in Supp. of its Mot. for Protective Order Limiting Disc. to Admin. R. at 6-7.

Fed. R. Civ. P. 26(b)(2)(iii) allows the court to limit the scope of discovery only when the, "burden or expense of the proposed discovery outweighs its likely benefit."  In determining the benefits and burdens of the discovery request, the rule instructs the court to take into account factors such as, "[1] the needs of the case, [2] the amount in controversy, [3] the parties' resources, [4] the importance of the issues at stake in the litigation, and [5] the importance of the proposed discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(iii); *See* <u>Linder v. Calero-</u>

Portocarrero, 183 F.R.D. 314, 319 (D.D.C. 1998) (listing factors).  Additionally, in order to ascertain whether compliance with the discovery request is unduly burdensome the court may take into account the, "[1] volume of material requested, [2] the ease of searching for the requested documents in the form presented, and [3] whether compliance threatens the normal operation of the responding agencies." Linder, 183 F.R.D. at 320.  An analysis of these factors will show that the benefits of Plaintiffs discovery requests outweigh the minimal burden to Defendant.

In order to resolve this dispute on its merits, a determination by the Court needs to be made as to whether denial of Plaintiff's claim was correct and whether Plaintiff's claim was given a genuine evaluation.  The documents requested by Plaintiff will provide information relating to the plan administrator's decision to deny Plaintiff's claim and whether there is substantial evidence to support Defendant's denial.

The amount in controversy is significant, as Plaintiff is demanding that Defendant pay all the benefits owed to her as a beneficiary under the Group Policy for inpatient and partial hospitalization services the Hospital provided her, in addition to those compensatory and punitive damages the court deems appropriate.  *See* Compl. at 13.

Defendant has considerable resources, as it is a large health insurance organization, "serving more than 50 million Americans… [and] providing access to over 45,000 physicians, health care practitioners and facilities." www.mamsi.com/w/d/am/.  Defendant therefore is able to efficiently retrieve the documents requested by Plaintiff without undue burden.

The issue at stake is important since Defendant wrongfully denied Plaintiff's claim and as a result Plaintiff has suffered a substantial economic loss.  Moreover, Plaintiff was suffering from a potentially deadly disorder when her application for benefits was submitted to Defendant.

Plaintiff maintains that Defendant gave the claim for benefits short shrift, depending on the burden of the administrative process to protect it from any litigation. Plaintiff was between a rock and a hard place. She must either pay the medical care herself, or expose herself to a real risk of death. Plaintiff has made out a prima facie case that Defendant did give this claim "short shrift", ruling upon the claim before even receiving documents supporting Plaintiff's own treating psychologist's determination. To deny discovery under these circumstances would allow health insurers to deny claim, assuming that the lack of resources among its claimants will produce a net profit from this strategy in the end. The Court ought not in a case such as this to allow the plan administrator to thwart discovery on terms that are applicable only to circumstances where the plan administrator acts in good faith. Determination of whether Plaintiff's claim was wrongfully denied is the important issue at stake in this litigation. Given the issue in this matter, the documents requested are important in shedding light on how the plan administrator determined Plaintiff's claim should be denied and whether this decision was supported by evidence.

"ERISA requires that the administrator of a benefits plan provide claimants, upon request, with all documents, records, and other information relevant to the claimant's claim for benefits." Hurley v. Life Ins. Co. of N. America, 2006 U.S. Dist. LEXIS 48835, *16-17 (D.D.C. 2006), *citing* 29 C.F.R. §2560.503-1(h)(2)(iii). In asking for all minutes of each and every meeting MLH or its representatives or any other defendant conducted regarding Jane Doe's claim, Plaintiff is hoping to obtain information that was discussed during the meeting and ultimately played a role in the plan administrator's decision to deny Plaintiffs claim. Meetings being open forums where individuals speak freely, and express opinions and ideas, Plaintiff is confident that there is relevant information discussed during these meetings but not found in the

5

Administrative Record.

Plaintiff next requests that Defendants provide corporate representatives for depositions regarding claim review and payment statistics for each of the internal and external reviewers who reviewed the coverage decision at issue. *See* Notice of Dep. Duces Tecum IPRO, Inc., Pursuant to Rule 30(b)(6). Through this discovery request, Plaintiff is hoping to find a pattern of action by those reviewers who reviewed the coverage decisions at issue. The Court should be aware that the identities of the two "physicians" who reviewed the claim have not been provided. There is no evidence that they are even physicians, other than IPRO's contention that they are. Moreover, perhaps these reviewers derive a substantial amount of income from these procedures, or themselves are devotees of peculiar schools of psychiatric thought. We already know that one is not aware that there are no outpatient facilities in New Orleans for treatment of Plaintiff's condition.

Plaintiff also asks that Defendant produce all documents regarding or showing claim review and payment statistics. *See* Notice of Dep. Duces Tecum of IPRO, Inc., Pursuant to Rule 30(b)(6). These documents can provide insight on how Defendants interpret relevant terms of MLH's benefit plan. *See* Hurley, 2006 U.S. Dist. LEXIS 48835 at *21. Moreover, this information can show whether Defendants decide claims consistently. Plaintiff has raised a prima facie case that the MAMSI reviewers did not apply a standard for payment that is consistent with the MAMSI plan documents.

Additionally, Plaintiff requests the depositions of MLH Medical Directors, registered nurses and outside consultants. *See* Notice of Dep. Those individuals that Plaintiff wishes to depose are related and necessary for the resolution of the issue. Vera C. Dvorak, Morton B. Albert, and Dawn Chattin were all involved in the mailing of various denial letters. Dr. Glass is

6

a consultant and reviewed Plaintiff's case. Therefore all those requested for deposition are relevant and will provide insight on why Defendant denied Plaintiff's claim.

Lastly, Plaintiff asks Defendant to identify the total number of cases MLH has reviewed involving bulimia nervosa and the number of those cases that have been denied. *See* Plaintiff's First Set of Interrogatories to MAMSI Life and Health Insurance Company at 5. "[A]dministrators are obligated under ERISA to apply the plan provisions consistently with respect to similarly situated claimants, thus discovery regarding whether the administrator has applied its policies consistently is relevant to Plaintiff's claim…." Hurley, 2006 U.S. Dist. LEXIS 48835 at *25. Production of these documents will show whether MLH has decided bulimia nervosa claims consistently

The volume of material requested is not such that would cause undue burden. The material does not improperly expand the administrative record Defendant gathered and sent to Plaintiff. The documents requested deal with Plaintiff and those requests that do not deal specifically with Plaintiffs files, are merely depositions of employees who are able to provide relevant information. Therefore, the search for the requested documents is not difficult. The documents requested are documents already in existence, and there is no need for Defendant to produce these documents; therefore, production will not threaten the normal operation of their business.

**II.    Scope of Discovery Under an Abuse of Discretion Standard of Review**

First and foremost, it is important to note that, "[t]here are few published opinions on the scope of discovery in ERISA cases." Hawkins v. Artic Slope Reg'l Corp., 344 F. Supp.2d 1331, 1337 (M.D. Fla. 2002). In support of the limited scope of discovery, Defendant heavily relies upon Fitts v. Fannie Mae, 204 F.R.D. 1, 5 (D.D.C. 2001). However, Defendant misinterprets the

7

proposition set forth in this case, as nowhere in the decision does it state or imply that, "[w]hen a plan administrator is vested with discretionary authority under the plan, the district court *must* limit discovery to the administrative record that relates to the plan administrator's decision." Def.'s Mot. for Protective Order at 4. "The D.C. Circuit has not yet decided this issue of whether district courts may review evidence beyond the administrative record." Hurley, 2006 U.S. Dist. LEXIS 48835 at *15. The case relied upon by the Defendant merely states that, "discovery in ERISA cases should be less than what is ordinarily required," but does not go further to establish the scope of discovery for ERISA cases in the D.C. Circuit, as it was not necessary, given the facts. *See*, Fitts, 204 F.R.D. at 4, 6, *see also* Hawkins, 344 F. Supp.2d at 1337, Galm v. Eaton Corp., 360 F. Supp.2d 978, 982 (N.D. Iowa 2005).

Pursuant to Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the standard of review for an ERISA case is "abuse of discretion." However, not all circuits side with Defendant and its reliance on Hunter v. Metro. Life Ins. Co., 2002 U.S. Dist. LEXIS 26615 (D.D.C. Aug. 8, 2002), which states that under a deferential review standard, "the weight of authority clearly limits the evidence to the facts before the claim administrator or fiduciary at the time the benefits decision was made." The D.C. Circuit in Pulliam v. Cont'l Cas. Co., 2003 WL 1085939 (D.D.C. Feb. 27, 2003), allowed discovery regarding the scope and adequacy of Defendant's review. *See also* Hurley, 2006 U.S. Dist. LEXIS 48835 at *27. Additionally, the Fifth Circuit in Kenneth E. Wilbur v ARCO Chemical Co., 974 F.2d 631, 639 (5th Cir. 1992), held that under an abuse of discretion standard, "a district court is not confined to the administrative record in determining whether, under our analytical framework, a plan administrator abused his discretion in making a benefit determination." As noted by the Court in Wilbur, there may be evidence outside of the administrative record that is relevant to the matter. *See* Id. at 638.

Plaintiff has made a prima facie showing that MAMSI denied her claim for necessary and life-saving medical care in a presumptuous and ignorant fashion. The decision that was made initially when Plaintiff was hospitalized was supported at every turn, even though Plaintiff's own treating health experts stated that it would have been a breach of the standard of care for Plaintiff not to be treated as an inpatient. MAMSI was so intent to persist in its coverage decision that it refused to even consider medical records provided to it during and after the telephonic review afforded Plaintiff under the administrative review process. The report of the "Re-review" was pretextual. MAMSI should be required to defend this record and to present evidence in discovery as to why it would accept such a shabby review process from IPRO. Simply because IPRO maintains its original decision does not mean that MAMSI's adoption of it was appropriate. MAMSI may not close a blind eye to the defects in IPRO's procedures, and Plaintiff is entitled to know whether MAMSI ever even reviewed the IPRO decision on its own merits.

## CONCLUSION

WHEREFORE, Jane Doe requests that the Motion for Protective Order of Defendant MAMSI Life and Health Insurance Company be denied.

    Respectfully submitted,

    HANNON LAW GROUP, LLP

    *//s// J. Michael Hannon //s//*
    J. Michael Hannon, #352526
    1901 18th Street, N.W.
    Washington, D.C. 20009
    (202) 232-1907
    (202) 232-3704 Facsimile

    *Attorneys for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a copy of the foregoing Opposition to Defendant MAMSI Life and Health Insurance Company's Motion for a Protective Order, together with form of Order were sent via electronic filing this 7th day of August, 2006, to:

Christopher Flynn, Esq.
William Silvis, Esq.
KING PAGANO HARRISON
1730 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20006

                                                                                                   ___*//s// J. Michael Hannon //s//*___
                                                                                                     J. Michael Hannon