UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JANE DOE, ) |  |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| v. ) | Civil Action No. 05-2450 (ESH) |
| ) |  |
| MAMSI LIFE AND HEALTH ) |  |
| INSURANCE COMPANY, *et al.*, ) |  |
| ) |  |
| Defendants. ) |  |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has brought suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, challenging the denial of claims for health care benefits under a private employer-sponsored group welfare benefit plan. Defendant MAMSI Life and Health Insurance Company ("MAMSI") has moved for a protective order limiting discovery to the administrative record. For the reasons explained herein, the Court will grant the motion in part, deny it in part and order MAMSI to produce certain responsive materials in accordance with this Memorandum Opinion and Order.

**BACKGROUND**

MAMSI administers the employer-sponsored group welfare benefit plan under which plaintiff, the dependent of an employee, received health benefits. (*See* Amended Compl. ¶¶ 4, 5.) The parties agree that the plan is governed by ERISA and that MAMSI is the administrator of the plan pursuant to 29 U.S.C. § 1002(16)(A). (*Id.* ¶¶ 5,7; Def.'s Mem. at 2.) As the plan administrator, MAMSI is responsible for making benefit coverage decisions thereunder.

MAMSI is also the provider of hospital and medical insurance benefits to plan enrollees and has agreed to provide such benefits in accordance with applicable plan documents.  Most relevant for present purposes are the MAMSI Group Hospital and Insurance Policy Contract Face Sheet (the "Group Agreement") (Amended Compl. Ex. A) and the MAMSI Group Certificate.  (A.R. 271-301.)

The Group Agreement provides that MAMSI "may adopt reasonable policies, procedures, rules and interpretations to promote orderly and efficient administration of this Contract, and Employer agrees to cooperate with [MAMSI] in administering such rules and regulations." (Amended Compl. Ex. A at Article 9.3.)  The Group Certificate, in turn, describes the coverage available to plan enrollees and the procedures required to obtain coverage.  Pertinent here, the plan "does not cover . . . Services that are not Medically Necessary." (A.R. 284.)    As defined in the Group Certificate, "Medically Necessary" means

> Health Services which are reasonably necessary and in the exercise of good medical practice in accordance with professional standards accepted and commonly available in the United States for treatment of Sickness or Injury *as determined by the Company*.  The service must 1) be appropriate and necessary for the symptom's diagnosis, or treatment of the medical condition; 2) be provided for the diagnosis or direct care or treatment of the condition; 3) not be provided for convenience; and 4) be performed or provided in the least costly setting or manner appropriate to diagnose or treat the Injury or Sickness.

(A.R. 279 (emphasis added).)  The Group Certificate also requires preadmission authorization for non-emergency inpatient hospital services.  (A.R. 276, 299.)

Plaintiff submitted claims to MAMSI for healthcare services she received during October and November 2004 relating to the treatment of bulimia nervosa.  Initially, plaintiff submitted a

claim for coverage upon her admission to River Oaks Hospital in Harahan, Louisiana on October 13, 2004, for acute inpatient psychiatric hospitalization. By letter dated October 14, 2004, MAMSI denied plaintiff's claim on the ground that inpatient hospitalization was not medically necessary for the treatment of her medical condition. (A.R. 1-2.) According to the administrative record, it appears that plaintiff submitted a subsequent claim for coverage on November 9, 2004. By letter dated November 10, 2004, MAMSI again denied plaintiff's claim, this time on the ground that plaintiff had failed to obtain the required authorization prior to her admission for partial hospitalization, which MAMSI considered to have been non-emergent and elective.[1] (A.R. 236-40.)

      Shortly thereafter, plaintiff lodged an appeal of MAMSI's coverage decision with MAMSI's medical affairs appeals department. (*See* A.R. 260-61.) Her request was reviewed by a board certified consulting psychiatrist and by a MAMSI medical director -- neither of whom appears to have been involved in MAMSI's initial coverage decision. By letter dated December 2, 2004, MAMSI informed plaintiff that the denial of coverage had been upheld on appeal. (A.R. 264-65.) Plaintiff then sought independent external review, pursuant to the Health Benefits Plan Members Bill of Rights Act of 1998, D.C. Code § 44-301.01, *et seq.*, by appealing MAMSI's coverage decision to the Director of the District of Columbia Department of Health. In accordance with the Act, the Director appointed IPRO, Inc. ("IPRO"), an independent review organization, to conduct the review through consideration of all pertinent medical records, physician reports and other materials submitted by the parties. (*See* A.R. 547-50.) At plaintiff's

---

[1] On November 11, 2004, MAMSI sent plaintiff a slightly revised denial letter, which clarified that MAMSI was denying the claim on the sole ground that plaintiff had failed to obtain preadmission authorization. (A.R. 254-59.)

request, IPRO conducted a telephonic hearing on the matter on May 18, 2005. On May 26, 2005, IRPO determined that MAMSI's coverage decision should be upheld (A.R. 748-51), and on June 2, 2005, MAMSI implemented IRPO's recommendation and once again confirmed its decision to deny coverage. (A.R. 754.)

Plaintiff initiated this action on December 20, 2005, asserting claims against MAMSI for benefits due under ERISA, breach of contract and bad faith (Counts I-III), and against IPRO for wrongful involvement in litigation, breach of contract and bad faith (Counts IV-VI). Plaintiff's claims against IPRO centered on allegations that IPRO improperly had rendered its determination without considering -- as it allegedly had agreed to do at the May 18, 2005 hearing -- additional medical records furnished by plaintiff's counsel. On March 21, 2006, this Court dismissed with prejudice all counts against IPRO but one (Count VI (bad faith)), and at the Court's suggestion, IPRO agreed to review the additional records proffered by plaintiff's counsel and, if necessary, to revise its determination. (*See* Order, Mar. 21, 2006.)[2] After conducting an additional review, IPRO reaffirmed its initial determination on April 16, 2006. On June 26, 2006, the Court granted IPRO's renewed motion for entry of judgment of dismissal with prejudice as to Count VI, thereby removing IPRO as a party to this litigation. (Minute Order, June 26, 2002.) As a result, the only remaining claim in this action is plaintiff's claim in Count I against MAMSI for benefits due under ERISA.

On July 10, 2006, plaintiff propounded a number of discovery requests on MAMSI,

---

[2] With the agreement of the parties, the Court also dismissed two counts against MAMSI (Counts II (breach of contract) and III (bad faith)). (*Id.*) Accordingly, as of March 21, 2006, only two counts remained: (1) a claim against MAMSI for benefits due under ERISA (Count I); and (2) a claim against IPRO for bad faith (Count VI).

which have given rise to present controversy. Plaintiff seeks (1) production of all minutes of each and every meeting MAMSI, its representatives or any other defendant conducted regarding plaintiff's claim; (2) identification of the total number of claims MAMSI has reviewed involving bulimia nervosa and the number of such claims that have been denied; (3) deposition testimony from MAMSI medical directors, registered nurses and outside consultants; (4) deposition testimony from the two IPRO medical reviewers who reviewed plaintiff's claim; (5) deposition testimony from IPRO corporate representatives regarding IPRO's review of plaintiff's claim, its review of other claims, and payment information; and (6) production of documents regarding IPRO's review of plaintiff's claim, its review of other claims and payment information. (*See* Def.'s Mem. Exs. C-F.) MAMSI opposes these requests principally on the ground that the administrative record, which consists of over 800 pages and was produced on July 24, 2006, constitutes the only admissible evidence that should be before the Court. MAMSI further contends that much of the discovery plaintiff seeks is unnecessarily duplicative of the administrative record and that, in any event, MAMSI cannot be compelled to respond to the discovery requests directed at IPRO, which has been dismissed from the case.

## ANALYSIS

Pursuant to the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), under ERISA, the denial of benefits by a claims administrator or fiduciary is subject to the deferential "abuse of discretion" or "arbitrary and capricious" standard of review when "the benefit plan gives the administrator of fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. Plaintiff does not dispute MAMSI's contention that a deferential standard of review is appropriate in this case because the

plan provides MAMSI with discretionary authority to determine eligibility for benefits and to construe the terms of the plan. (*See* Pl.'s Opp'n at 8 (agreeing that, under *Firestone*, the standard of review is "abuse of discretion").) Instead, plaintiff argues that discovery is not limited in abuse of discretion cases. While MAMSI is correct that courts routinely deny discovery beyond the administrative record when reviewing the decisions of a plan administrator or fiduciary under a deferential standard and that most of the discovery plaintiff seeks is impermissible, plaintiff nevertheless has shown that a very a very limited amount of discovery is warranted.

As this Court recognized in *Hunter v. Metropolitan Life Insurance Co.*, No. 02-137, 2002 WL 32072472 (D.D.C. Aug. 9, 2002), under the deferential standard of review that applies in this case, "the weight of authority clearly limits the evidence to the facts before the claim administrator or fiduciary at the time the benefits decision was made." *Id.* at *1 (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999)); *see also Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 493 (D.C. Cir. 1998) ("Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum."); *Abatie v. Alta Health & Life Ins. Co.*, 2006 WL 2347660, at *11 (9th Cir. Aug. 15, 2006) (*en banc*) ("in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion"); *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197, 1201 (10th Cir. 2001) (noting that the majority of circuits have held that, in reviewing a plan administrator's decision for abuse of discretion, courts may not consider evidence beyond the administrative record). Courts therefore have generally prohibited discovery beyond the administrative record in ERISA cases involving a deferential standard of review. The rationale for this prohibition was clearly explained by the

Seventh Circuit in *Perlman*:

> It follows from the conclusion that review of UNUM's decision is deferential that the district court erred in permitting discovery into UNUM's decision-making. There should not have been any inquiry into the thought processes of UNUM's staff, the training of those who considered Perlman's claim, and in general who said what to whom within UNUM -- all of which Perlman was allowed to explore at length by depositions and interrogatories, and on some of which the district judge relied. Deferential review of an administrative decision means review of the administrative record. We have allowed parties to take discovery and present new evidence in ERISA cases subject to *de novo* judicial decisions . . . , but never where the question is whether a decision is supported by substantial evidence, or is arbitrary and capricious.

*Perlman*, 195 F.3d at 981-82. While the D.C. Circuit has yet to address this issue, as explained in *Hunter*, this Court is persuaded that where review is limited to the arbitrary and capricious standard, it should not, as a general matter, permit discovery beyond the administrative record.[3]

Despite this general prohibition, however, courts have allowed limited discovery of evidence outside of the administrative record in certain specified circumstances. In particular, courts have held that discovery is permitted to determine whether the administrative record produced by the plan administrator or fiduciary is complete. *See, e.g.*, *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 103, 105-07 (W.D.N.Y. 2000) (noting that "judicial review without a

---

[3] The Court finds no support for plaintiff's argument that discovery is not limited in abuse of discretion cases in the two district court decisions from this Circuit cited by plaintiff. In *Hurley v. Life Insurance Co. of North America*, No. 04-252, 2006 WL 1883406 (D.D.C. July 9, 2006), unlike this case, the parties had stipulated that *de novo* review was the appropriate standard. Similarly, in *Pulliam v. Continental Casualty Co.*, No. 02-370, 2003 WL 1085939, at *3 (D.D.C. Feb. 27, 2003), the parties disagreed as to the applicable standard of review. The court accordingly permitted discovery regarding the plan administrator's alleged conflict of interest, which the court considered relevant to the determination of the appropriate standard. Here, plaintiff has not sought discovery regarding an alleged conflict of interest on the part of MAMSI, and as noted above, there is no dispute about the appropriate standard of review.

complete and accurate record is in no one's interest . . . and . . . does not comport with the meaningful judicial review Congress undoubtedly had in mind"). Indeed, such discovery does not seek information beyond "the facts before the claim administrator or fiduciary at the time the benefits decision was made," *Hunter*, 2002 WL 32072472, at *1, but rather is intended to uncover the entire record that was, in fact, considered by the plan administrator or fiduciary. *See Doe v. Travelers*, 167 F.3d 53, 58 (1st Cir. 1999) ("Finding out just what information [the plan fiduciary] had and why it acted as it did . . . can require discovery or even fact finding by the district court."); *Cannon v. UNUM Life Ins. Co.*, 219 F.R.D. 211, 214-15 (D. Me. 2004) (ordering plan administrator to produce documents -- including memoranda, policies, guidelines and any "contrary evidence" -- not included the administrative record). Moreover, discovery of this character comports with an ERISA administrator's obligation to provide claimants, upon request, with all documents, records, and other information relevant to the claimant's claim for benefits. *See* 29 C.F.R. § 2560.503-1(h)(2)(iii).[4]

      Plaintiff seeks all minutes of each and every meeting MAMSI or its representatives conducted regarding plaintiff's claim and contends that such records likely contain information relevant to her claim but which is not found in the administrative record. (Pl.'s Opp'n at 5-6.) Construing this request as discovery aimed at determining whether the administrative record that has been produced is complete and persuaded by the reasoning of courts that have permitted such discovery, the Court will direct MAMSI to produce any materials that are responsive to this

---

[4] A document, record, or other information is considered "relevant to the claim" if it was "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8).

request within 14 days.

The Court, however, is unwilling to grant plaintiff's other discovery requests, which seek information that goes far beyond the administrative record or information that is already contained in the record. Moreover, many of plaintiff's requests are directed at IPRO, which is no longer a party to this litigation, and these requests far exceed what could even arguably be compelled in an ERISA abuse of discretion case. Finally, while there is some case law in other jurisdictions that permits discovery beyond the administrative record relating to a plan administrator's interpretation of the relevant terms of the benefit plan, *see*, *e.g.*, *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 102 (5th Cir. 1992), plaintiff's request here for the total number of claims MAMSI has reviewed involving bulimia nervosa and the number of such claims that have been denied will hardly, without more, provide any useful information to how MAMSI has historically interpreted the requirement of medical necessity in cases involving bulimia nervosa. Therefore, the Court will deny all other discovery that plaintiff seeks.

## CONCLUSION

For the above reasons, MAMSI's motion [27] is **GRANTED IN PART** and **DENIED IN PART**. The Court hereby **ORDERS** MAMSI to produce all minutes of each and every meeting MAMSI or its representatives conducted regarding plaintiff's claim within 14 days from the date of this Memorandum Opinion and Order. It is further **ORDERED** that, in all other respects, discovery in this case shall be limited to the administrative record, and MAMSI's motion for a protective order is **GRANTED**. It is further **ORDERED** that MAMSI shall file its motion for summary judgment on or before October 16, 2006; plaintiff's opposition and cross-

motion is due on or before November 6, 2006; defendant's reply and opposition is due on or before November 16, 2006; and plaintiff's reply is due on or before November 27, 2006.

                                                                _____s/_____
                                                  ELLEN SEGAL HUVELLE
                                                  United States District Judge

Dated: September 7, 2006