**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**JANE DOE,**                                       )
                                                    )
            **Plaintiff,**                          )
                                                    )
            **v.**                                  )        **Case No.:  1:05CV02450 (ESH)**
                                                    )
                                                    )
**MAMSI LIFE AND HEALTH**                           )
**INSURANCE COMPANY, et al.,**                      )
                                                    )
            **Defendant.**                          )
_____)

**DEFENDANT MAMSI LIFE AND HEALTH INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Defendant MAMSI Life and Health Insurance Company ("MLH" or "the Health Plan"),

by and through counsel, King Pagano Harrison, respectfully submits this Memorandum of Law

in support of its Motion for Summary Judgment and states as follows:

**I.**

**INTRODUCTION**

The facts are undisputed that, in seven separate reviews, board certified physicians

concluded that Plaintiff's inpatient stay at River Oaks Hospital in New Orleans was not

medically necessary and, therefore, not covered under the terms of the MLH health benefits plan.

Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., the

denial of Plaintiff's claim for inpatient benefits is reviewed for an abuse of discretion.  Try as she

might, Plaintiff cannot demonstrate, as a matter of law, that MLH abused its discretion in

administering plan benefits by adopting the reasoning of a whole host of separate board-certified

physicians.  As a result, MLH is entitled to summary judgment on Plaintiff's claims for relief under ERISA's remedial provisions.

MLH respectfully submits that the Court should also dismiss Plaintiff's claim challenging MLH's denial of her separate request for outpatient partial hospitalization benefits.  MLH denied that claim because Plaintiff did not pre-certify the partial hospitalization services pursuant to the terms of her Group Certificate.  Plaintiff then failed to challenge that denial and, as a result, her claim is not ripe for adjudication by the Court.  The case law is clear that Plaintiff must exhaust her administrative remedies before seeking redress from the Courts under ERISA.  As a result, MLH is entitled to summary judgment on Plaintiff's request for coverage of partial hospitalization services as well.

## II.

## PROCEDURAL HISTORY

On December 20, 2005, Plaintiff filed her Complaint against MLH alleging violations of ERISA as well as several common law claims.[1]  Plaintiffs' complaint arises out of two separate requests for coverage under an employer-sponsored health benefits plan.  Plaintiff's first request for coverage relates to her inpatient admission at River Oaks Hospital from October 13 through November 8, 2004.  Undisputed Facts at ¶ 7; *see also* Amended Complaint at ¶¶ 14, 18-19.  After MLH denied coverage for this stay because Plaintiff's admission did not meet the criteria for inpatient psychiatric treatment, Plaintiff appealed the decision both through MLH's internal appeal process and the District of Columbia's grievance procedures.  Undisputed Facts at ¶¶ 7-10, 13.  Plaintiff, therefore, exhausted her administrative remedies relating to her request for coverage of her inpatient stay prior to filing suit.

---

[1] Plaintiff subsequently stipulated to the dismissal of her common law claims.

Plaintiff's denial of her second request for coverage, however, has never been appealed. Plaintiff's Complaint alleges that MLH also denied a claim for coverage of outpatient partial hospitalization services at River Oaks from November 9 through November 22, 2004. Amended Complaint at ¶¶ 17-19. MLH denied Plaintiff's request for these services because she failed to request and, as a result, did not receive the required pre-certification for these services from MLH prior to receiving care. Undisputed Facts at ¶¶ 27-28; *see also* Amended Complaint at ¶ 19. Plaintiff did not appeal this denial of coverage through MLH's internal appeal process. Undisputed Facts at ¶ 29. Plaintiff, therefore, has not exhausted her administrative remedies as it relates to her second claim for denial of partial hospitalization benefits.

MLH answered Plaintiff's Complaint on February 7, 2006. In its answer, MLH pleaded as an affirmative defense the fact that Plaintiff failed to exhaust her administrative remedies. Answer at ¶ 66. MLH now is entitled to summary judgment on two grounds. First, MLH did not abuse its discretion as administrator of the Plan at issue by denying Plaintiff's request for coverage on her first claim for inpatient services. Second, Plaintiff's separate claim relating to her request for coverage of outpatient partial hospitalization services is barred because she failed to exhaust her administrative remedies.

### III.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.      The ERISA Health Benefits Plan at Issue**

1.      The MLH Health Benefits Plan (the "Plan") at issue is a private employer-sponsored benefit plan. *See* Complaint at ¶ 7; *see also* MAMSI Group Hospital and Insurance Policy Contract Face Sheet [Group Agreement] (attached as Exhibit A).[2] The Plaintiff is a

---

[2]  In order to protect the privacy of the Plaintiff, MLH does not identify the Employer by name in its moving papers. There is no dispute that the Plan at issue was sponsored by the Employer.

covered dependent under the terms of the Plan.  *See* MLH Group Certificate, Administrative

Record ("Admin. Rec.") at pp. 288-90.[3]

2.    MLH and the Employer agreed that, in exchange for the payment of periodic

premiums, MLH would provide certain hospital and medical benefits to the group enrollees

pursuant to the terms of a Group Certificate and other applicable plan documents (i.e.,

endorsements, riders, etc.).  *See* Group Agreement ¶ 2 and Article 9.3 (attached hereto as Exhibit

A).

3.    During the period relevant to the issues in dispute, MLH acted as the

administrator of the Plan.  Pursuant to the terms of the Group Agreement, MLH was given broad

discretion to interpret and administer the terms of the Plan.  Specifically, Article 9.3 of the Group

Agreement provides that MLH shall:

> adopt reasonable policies, procedures, rules and interpretations to
> promote orderly and efficient administration of this Contract, and
> the Employer agrees to cooperate with MLH in administering such
> rules and regulations.

*See* Group Agreement, Article 9.3 (Ex. A).

**B.    Plaintiff's Care at River Oaks Hospital**

4.    Plaintiff, a 20 year old college student, was admitted to River Oaks Hospital

("River Oaks") in New Orleans, Louisiana on October 13, 2004.  *See* River Oaks Admission

History (Admin. Rec. at pp. 318-23); IPRO Re-Review Decision Dated April 18, 2006 (Admin.

Rec. at pp. 764).  Upon admission, River Oaks diagnosed Plaintiff with bulimia nervosa.  *See*

River Oaks Admission Hist. (Admin. Rec. at p. 318); April 18, 2006 IPRO Decision (Admin.

Rec. at p. 764).

---

[3] For ease of reference, the Administrative Record (Bates Labeled 0000001-00000796) has been abbreviated to "Admin. Rec." and the particular pin-point citations are identified without the series of preceding zeroes.

5.      The Plaintiff's admitting physical exam, laboratory workup and vital signs were all normal.  *See* River Oaks Hospital Admitting Patient History & Physical Exam (Admin. Rec. at pp. 321-23); River Oaks Admission Lab-Workup and Results Report (Admin. Rec. at pp. 505-10, 512).  In addition, Plaintiff weighed 119.2 pounds upon admission.  *See* October 14, 2004 River Oaks Diet History/Nutrition Assessment (Admin. Rec. at pp. 357-58).  An admitting River Oaks dietician explicitly stated that the optimal weight for a person who is 5 feet 2 inches tall (like Plaintiff) is 110 pounds, plus or minus 10%.  *See* River Oaks Diet Hist./Nutrition Assessmt. (Admin. Rec. at p. 357).  While hospitalized, Plaintiff maintained a weight between 115 and 125 pounds.  *See* April 18, 2006 IPRO Decision (Admin. Rec. at p. 764); IPRO Review Decision dated May 26, 2005 (Admin. Rec. at p. 749).

6.      Plaintiff remained at River Oaks until November 8, 2004.  *See* Plaintiff's Medical Record Progress Notes (Admin. Rec. at p. 500).  During her stay, she received both individual and group therapy.  Plaintiff's physician did not begin treating Plaintiff with medication until approximately October 26, 2004, her thirteenth day of inpatient care.  *See* Plaintiff's Medical Record Physician Orders (Admin. Rec. at p. 364).  At no time during her inpatient stay did Plaintiff ever express any suicidal ideations or threats of harm to herself or others.  *See generally* Plaintiff's Medical Record (Admin. Rec. at pp. 318-546) (citing physician progress notes taken during Plaintiff's inpatient care).

**C.      MLH Reviews The Request For Coverage And Denies The Claim Because Inpatient Care Was Not Medically Necessary**

7.      Plaintiff's physician requested that MLH cover her October 13-November 8, 2004 inpatient treatment shortly after it began.  *See* October 14, 2004 MLH Coverage Decision Letter to Plaintiff (Admin. Rec. at pp. 1-2).  In reviewing the claim, the Plan utilized its criteria for determining medical necessity of an inpatient stay for the treatment of eating disorders, which

are set forth in the MAMSI Behavioral Heath and Psychiatric Level of Care Criteria for Eating

Disorders ("Eating Disorder Care Criteria").  *See* October 14, 2004 MLH Coverage-Decision

(Admin. Rec. at pp. 1-2); Eating Disorder Care Criteria (Admin. Rec. at pp. 303-05); Group

Certificate, Definition of Medical Necessity (Admin. Rec. at p. 279).  The Eating Disorder Care

Criteria for inpatient treatment are comprehensive and require a finding of at least one of the

following criteria:

>  a.  severe weight loss: i.e., refusal to maintain weight at or above 75% of optimal weight;
>
>  b.  medical complications related to weight loss that require 24-hour skilled nursing care such as a heart rate less than 40, blood pressure less than 90/60, temperature less than 97, severe orthostatic changes, severe hypokalemia or hyponatremia, esophageal rupture, or other significantly abnormal test results;
>
>  c.  comorbid biomedical issues such as diabetes or pregnancy that worsen due to the weight loss and need 24-hour skilled nursing care; or
>
>  d.  comorbid psychiatric/substance abuse issues that meet inpatient rehabilitation criteria.

*See* Eating Disorder Care Criteria (Admin. Rec. at pp. 303-05); October 14, 2004 MLH

Coverage-Decision (Admin. Rec. at pp. 1-2); December 2, 2004 Internal Appellate Review

Decision re inpatient coverage determination (Admin. Rec. at pp. 264-65); May 26, 2005 IPRO

Decision (Admin. Rec. at pp. 748-51); April 18, 2006 IPRO Decision (Admin. Rec. at pp. 762-

67).  The Eating Disorder Care Criteria also incorporates the Group Certificate's definition of

Medical Necessity, which is as follows:

>  health services which are reasonably necessary and in the exercise of good medical practice in accordance with professional standards accepted and commonly available in the United States for treatment of Sickness or Injury as determined by [MLH].  The services must 1) be appropriate and necessary for the symptom's

> diagnosis, or treatment of the condition; 2) be provided for the
> diagnosis or direct care or treatment of the condition; 3) not be
> provided for convenience; 4) be performed or provided in the least
> costly setting or manner appropriate to diagnose or treat the Injury
> or Sickness … The fact that a Physician may prescribe,
> recommend or approve a procedure or treatment does not, in itself,
> make that procedure or treatment Medically Necessary.

*See* Group Certificate, Definition of Medical Necessity (Admin. Rec. at p. 279).  The

Group Certificate grants MLH broad discretion in determining what health services are

medically necessary.  *See id.*

8.    Morton Albert, M.D., the Behavioral Health Services Medical Director ("BHS

Medical Director") at MLH, reviewed the available medical data regarding Plaintiff's inpatient

admission and hospitalization, together with the plan documents, and determined that Plaintiff's

medical condition did not meet the criteria for inpatient psychiatric treatment.  *See* October 14,

2004 MLH Coverage Decision (Admin. Rec. at pp. 1-2).  Dr. Albert found that Plaintiff's

inpatient admission was not medically necessary and, therefore, not covered by the terms of the

Plan.  *See id.*  Specifically, Dr. Albert stated that:

> [a]ccording to the MAMSI Behavioral Health Department of
> Psychiatric Level of Care Criteria for eating disorders (2003),
> medical necessity for acute psychiatric inpatient admission is
> substantiated by one of the following:  medical complications
> which require 24 hour skilled nursing care, comorbid biomedical
> issues which are worsening due to the patient's inability to manage
> the eating disorder, or comorbid psychiatric issues which require
> 24 hour skilled nursing care.

*See id.*

9.    According to Dr. Albert, Plaintiff did not present to River Oaks with any

condition satisfying any of the above-outlined Eating Disorder Care Criteria or any other

condition warranting inpatient treatment.  In this regard, Dr. Albert stated that:

> [i]nformation available for this review indicates that the member presents with symptoms of bulimia characterized by a history of binging and purging and restricting meal intake. At the time of this request, the member presented with a normal height and weight, normal lab values, there were no reported medical consequences of the eating disorder which required 24 hour monitoring; and there were no coexisting psychiatric, substance abuse, or medical issues. Therefore, the medical necessity for admission to an acute inpatient setting for an eating disorder could not be substantiated.

*See* October 14, 2004 MLH Coverage-Decision (Admin. Rec. at pp. 1-2). More specifically, Plaintiff's weight upon admission was 119. *See* River Oaks Diet Hist./Nutrition Assess. (Admin. Rec. at p. 357). Plaintiff's vital signs were all normal: heart rate (88); blood pressure (110/70); and temperature (97.7). *See* River Oaks Admit. Patient Hist. & Physical Exam (Admin. Rec. at p. 322). Plaintiff, likewise, did not have any other disease or comorbidity that complicated her care. *See id.*; *see generally* Plaintiff's Medical Record (Admin. Rec. at pp. 318-546) (citing progress notes and physician orders during inpatient stay). Lastly, she did not display any suicidal ideations or substance abuse issues. *See* River Oaks Suicide Risk Assessment (Admin. Rec. at p. 346). Based on the foregoing, MLH denied Plaintiff's claim for inpatient hospitalization at River Oaks on October 14, 2004. *See* October 14, 2004 MLH Coverage-Decision (Admin. Rec. at pp. 1-2).

**D.    On Appeal, An Independent Psychiatrist And An MLH Medical Director
Also Found That Plaintiff's Inpatient Care Was Not Covered By The Plan**

10.    On November 9, 2006, Plaintiff's treating physician, George Daul, M.D.,
appealed MLH's denial of Plaintiff's request for coverage of her October 13 through November
8, 2004 inpatient admission.  *See* November 9, 2004 Letter from George Daul, M.D. to MLH
Appeals Coordinator (Admin. Rec. at p. 4).   Dr. Daul's appeal request failed to cite any
substantive reason to overturn the prior coverage decision.  *See id.*

11.    On appeal, MLH forwarded documentation regarding Plaintiff's inpatient
admission to an independent Consulting Case Reviewer, Sheldon Glass, M.D., to review MLH's
coverage decision.  *See* Consultant Case Review Summary and Decision dated November 22,
2004 (Admin. Rec. at pp. 262-63).   Based upon his review, the independent Consultant Case
Reviewer, a board-certified psychiatrist, found that Plaintiff did not meet the inpatient admission
criteria for eating disorders upon admission to River Oaks or at any time during her inpatient
stay.  *See id.*

12.    Based, in part, on the recommendation of the independent Consultant Case
Reviewer, MLH's Senior Medical Director, Vera Dvorak, M.D., upheld MLH's coverage
reasoning that:

> [a]ccording to the medical records, there were no medical
> complications of your eating disorders which required 24 hour
> nursing care.   There were no comorbid biomedical issues as
> evidence by normal laboratory tests and stable vital signs.   There
> was no documentation of severe weight loss.   There were no
> significant comorbid psychiatric issues requiring 24 hour skilled
> nursing assessment.   You were inpatient for 13 days before an
> antidepressant was prescribed.  There are no documented cognitive
> impairments or isolation from peers or community.

*See* December 2, 2004 Appeal Decision (Admin. Rec. at pp. 264-65).

**E.**     **Following A Complaint To The D.C. Department Of Health, Two Additional Independent Psychiatrists Found That Plaintiff's Inpatient Stay Was Not Medically Necessary**

13.     Plaintiff then appealed MLH's coverage decision for her inpatient admission to the District of Columbia's Department of Health, Office of General Counsel ("Grievance and Appeals Office").  *See* February 28, 2005 Letter from Patrick Kelly to MLH (Admin. Rec. at p. 268).  Plaintiff's appeal was accepted by the Grievance and Appeals Office and forwarded to IPRO, Inc. ("IPRO") for an external review.  *See* March 11, 2005 Letter from Patrick Kelly to Plaintiff's Counsel (Admin. Rec. at pp. 547-48).  IPRO is an independent review organization under contract with the District of Columbia to provide expert opinions regarding clinical issues that the D.C. Department of Health is not qualified to make on its own.  IPRO has no business affiliation with MLH.

14.     MLH responded to IPRO's review by submitting a letter to Grievance and Appeals Coordinator, Patrick Kelly, explaining that Plaintiff's inpatient admission was not medically necessary.  *See* March 9, 2005 Letter from MLH to Patrick Kelly (Admin. Rec. at pp. 269-70).   The letter enclosed the relevant documentation that MLH reviewed, including Plaintiff's Group Certificate, the Eating Disorders Care Criteria, the initial coverage denial letter, Plaintiff's appeal letter, the medical record and the concurring decision and rationale of the independent Consultant Case Reviewer and Senior MLH Medical Director.  *See* March 9, 2005 Letter from MLH to Patrick Kelly (Admin. Rec. at pp. 269-70).

15.     After reviewing the documentation submitted by both Plaintiff and MLH, IPRO upheld MLH's coverage decision.  *See* May 26, 2005 IPRO Decision (Admin. Rec. at pp. 748-51).  Two IPRO clinical practitioners (individually "Reviewer-1" and "Reviewer-2") reviewed Plaintiff's appeal of the coverage decision for the inpatient care she received at River Oaks from

October 13 to November 8, 2004.[4]  *See id.*  Both Reviewers 1 and 2 are board-certified and licensed to practice psychiatry, are currently practicing and have no governmental or professional disciplinary sanctions taken or pending against them.  *See id.*

16.    Pursuant to the request of counsel for Plaintiff, IPRO conducted a telephone hearing regarding Plaintiff's claim for coverage.[5]  The hearing included Plaintiff's counsel, one of Plaintiff's physicians, an IPRO representative and an IPRO Reviewer.  *See id.* at p. 748. There was no representative of MLH present at the hearing.

17.    Following the hearing, IPRO considered the information it gathered and reviewed the relevant documentation submitted, which included letters from Plaintiff's counsel, letters to and from the DC Grievance and Appeals Office, Plaintiff's medical records from River Oaks, letters from MLH's Medical Directors, the independent Consultant Case Reviewer's Decision, along with the MLH Group Certificate and other plan documents.  *See id.* at pp. 748-51.

18.    Based upon the above-referenced submissions, Reviewer-1 concluded that Plaintiff's inpatient stay was not medically necessary.  Reviewer-1 reasoned that Plaintiff should have first been treated with anti-depressant medication on an outpatient basis coupled with psychotherapy, medical management and nutritional counseling.  Reviewer-1 specifically stated that:

> Additionally, there were other indications for this outpatient trial of medication.  She clearly had elements of depression as noted in her admission note.  Finally, her family history is loaded with

---

[4] Since the D.C. Department of Health independent review process is blinded, neither Plaintiff nor MLH were provided with the names of the psychiatrists performing the review.

[5] During the call, Plaintiff's counsel discussed and submitted new information that he believed IPRO should consider in its review of MLH's coverage decision for Plaintiff's inpatient care.  While IPRO did not initially consider this information because it was untimely, it has since taken that information into consideration in a supplemental review requested by the Court.  *See* May 20, 2005 Letter from Plaintiff's Counsel to IPRO Director of Corporate Programs & External Review (Admin. Rec. at pp. 553-741) (citing plaintiff's counsel's letter and all exhibits attached to same, which were submitted as additional information to be considered).

> antidepressant responsive syndromes and this too would justify the use of antidepressant medication as an outpatient.
>
> Based on the above, the medical necessity for inpatient hospitalization is not substantiated and the insurer's denial should be upheld.

*See id*. at p. 750.

       19.    Reviewer-2 concurred, finding that:

> Based upon the information available[,] acute, inpatient psychiatric hospitalization was not medically necessary during the dates 10/13/01-11/8/04.  The insurer's criteria for acute hospitalization . . . were not met, and there were no other unusual conditions present that made inpatient hospitalization medically necessary.

*See id*. at p. 750-51.

       20.    By letter dated June 2, 2005, MLH accepted IPRO's recommendation that Plaintiff's inpatient psychiatric hospitalization was not medically necessary.  *See* June 2, 2005 Letter from MLH to Patrick Kelly (Admin. Rec. at p. 754).  As a result, MLH upheld its prior coverage decision.  *See id*. at p. 754.

**F.**    **Following A Second Review By IPRO, The Company Yet Again Finds That Inpatient Treatment Was Not Warranted**

       21.    By agreement of the parties and the Court IPRO conducted a second external review of Plaintiff's inpatient hospitalization claim.  In IPRO's second review of the claim, it re-reviewed the medical documentation, including additional documentation submitted by Plaintiff's counsel and once again upheld MLH's decision to deny coverage of Plaintiff's inpatient admission and hospitalization at River Oaks from October 13 to November 8, 2004.  *See* April 18, 2006 IPRO Decision (Admin. Rec. at pp. 762-67).

       22.    Two clinicians (individually "Re-reviewer-1" and "Re-reviewer-2") evaluated Plaintiff's appeal of MLH's adverse coverage decision regarding her inpatient services from

Rivers Oaks during October and November 2004. *See id.* Both Re-reviewers 1 and 2 are board-certified and licensed to practice psychiatry. *See id.* Moreover, the two reviewers have no governmental or professional disciplinary sanctions taken or pending against them. *See id.*

23.    Re-reviewer-1 stated that, upon assessing MLH's coverage decision and reviewing the medical documentation, including new documentation submitted by Plaintiff's counsel, he upheld MLH's coverage denial because Plaintiff's inpatient stay simply was not medically necessary. *See id.* Re-reviewer-1 concluded that:

> [b]ased upon a review of the information available, acute psychiatric hospitalization was not medically necessary from 10/13/04-11/8/04. The insurer's denial is therefore upheld. [Plaintiff] was not suffering with severe weight loss, severe medical complications related to her eating disorder, or severe co-morbid conditions that required inpatient care. Although suffering with an eating disorder and a personality disorder, Ms. [Plaintiff's] condition could have been safely and adequately treated at a PHP level of care. [Plaintiff] was not acutely psychotic, imminently at risk of severe injury to herself or others, or in need of 24-hour skilled nursing care.

*Id.* Explaining further, Re-reviewer-1 emphasized that Plaintiff's medical records showed that she weighed 119 pounds at admission, maintained a weight range of 115-125 pounds during hospitalization, had no severe medical complications and no co-morbid conditions related to severe weight loss. *See id.*

24.    Re-reviewer-2 agreed with his colleague that the denial should be upheld, stating that:

> I do not see any clinical grounds to justify inpatient admission in October 2004 when comprehensive outpatient programs were still available.

*Id.* Indeed, Re-reviewer-2 underscored the fact that hospitalization for bulimia nervosa is required when medical instability or behavioral disturbance cannot be treated in a less restrictive

level of care.  Plaintiff, however, had normal lab results upon admission and had not received comprehensive outpatient care or medication prior to admission.  *See id.*

25.    By letter dated May 1, 2006, MLH accepted the second recommendation provided by IPRO and yet again upheld its decision to deny coverage for inpatient services at River Oaks from October 13 to November 8, 2004.  *See* May 1, 2006 Letter from Karyn Houck, MLH, to Patrick Kelly (Admin. Rec. at p. 769).

**G.    Plaintiff's Separate Claim For Partial Hospitalization Benefits**

26.    On November 9, 2004, Plaintiff began a non-emergent, outpatient partial hospitalization program at River Oaks.  *See* November 11, 2004 MLH Partial Hospitalization Coverage-Decision (Admin. Rec. at pp. 254-57).  Partial hospitalization programs provide hospital-based treatment that does not allow for overnight stays.  Usually the treatment is on-site or physically close to an inpatient/psychiatric facility.  Group activities are part of the therapy including psychotherapy groups and other rehabilitation treatment.  *See generally* Internet Encyclopedia Wikipedia at http://en.wikipedia.org/wiki/Partial_hospitalization.

27.    Plaintiff, however, failed to seek or receive precertification from MLH prior to the initiation of the partial hospitalization program.  *See* November 11, 2004 MLH Partial Hospitalization Coverage-Decision (Admin. Rec. at pp. 254-57).  Plaintiff's MLH policy requires that members or their providers must seek and receive precertification for non-emergent requests for treatment in order to be covered.  *See* Group Certificate (Admin. Rec. at p. 280).

28.    Plaintiff's providers, however, did not submit a request to MLH for coverage of the partial hospitalization until after she had already initiated treatment.  *See* November 11, 2004 MLH Partial Hospitalization Coverage Decision (Admin. Rec. at pp. 254-57).  On November 11,

2004, MLH denied Plaintiff's request for coverage because she failed to obtain precertification per the terms of her policy. *See id.*; Group Certificate (Admin. Rec. at p. 280).

29.    In its November 11, 2004 denial letter, MLH explained its internal appeal review process. *See* November 11, 2004 MLH Partial Hospitalization Coverage Decision (Admin. Rec. at pp. 254-57). Plaintiff had 180 days in which she could appeal an initial adverse coverage decision regarding her November 9, 2004 partial hospitalization. *See id.* Plaintiff, however, never appealed MLH's November 11, 2004 coverage decision. *See* generally, Administrative Record.

30.    Throughout the appeal process, MLH compiled an Administrative Record that included documents relating to MLH's adverse coverage decision, its internal review of the same and the external review of the decisions. (*See* generally, Administrative Record).

31.    MLH filed the Administrative Record with this Court and served the same upon the Plaintiff on July 21, 2006. *See* Administrative Record.

**IV.**

**DISCUSSION**

**A.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(b) (2006). Facts "that might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's opposition must consist of more than mere unsupported allegations or denials and must be supported by competent evidence setting forth specific facts showing that

there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also, Plain v. AT&T Corp.*, 424 F. Supp. 2d 11, 15 (D.D.C. 2006).  The non-movant's evidence, therefore, must be that which will permit a reasonable jury to find in its favor; evidence that is "merely colorable" or "not significantly probative" is insufficient to oppose summary judgment.  *Plain*, 424 F. Supp. 2 at 15.

**B.      MLH Did Not Abuse Its Discretion In Denying Plaintiff's Claim For Coverage Of A Medically Unnecessary Inpatient Stay**

Under ERISA, MLH's denial of Plaintiff's claim for inpatient benefits is governed by the deferential "abuse of discretion" or "arbitrary and capricious" standard of review.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The governing standard is one of "reasonableness."  *Block v. Pitney Bowes*, Inc., 952 F.2d 1450, 1452 (D.C. Cir. 1992).  Under the arbitrary and capricious standard, the court must not overturn a plan administrator's reasoned decision even if an alternative decision is also reasonable.  *Id.*; *see also, Lane v. Dir. of Employer Benefits*, 253 F. Supp. 2d 57, 62-63 (D. Mass. 2003) (holding that "under the arbitrary and capricious standard the plan administrator's decision is upheld if it is within his authority, reasoned and supported by substantial evidence in the record"); *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 48 (D.D.C. 2005) (holding that a plan administrator's decision will not be overturned under the deferential ERISA standard of review so long as the decision is reasonably supported by the administrative record); *accord, Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (holding that under the arbitrary and capricious standard "a court is not to substitute its judgment" for that of the administrator).  Moreover, upon review of an ERISA claim for denial of benefits under the abuse of discretion standard, the Court should limit its review to the record that was before the plan administrator.  *Doe v. MAMSI Life & Health Ins. Co.*, 2006 U.S. Dist. LEXIS 64330,** 9-11 (D.D.C. Sept. 7, 2006) (Huvelle, J.).  In

sum, the essential inquiry is whether the plan administrator reasonably construed and applied the terms of the plan to the plaintiff's claims. *Block*, 952 F.2d at 1454. Given that MLH's coverage decision is supported by multiple reasoned clinical opinions, Plaintiff simply cannot demonstrate that the Health Plan acted arbitrarily.

It is undisputed that MLH is the administrator of the health plan under which Plaintiff received health benefits. Undisputed Facts at ¶¶ 2-3; Amended Complaint ¶ 5. It is also undisputed that the Plan grants MLH discretionary authority to determine eligibility for benefits and to construe the terms of the plan. *See* Memorandum Opinion And Order (filed Sept. 7, 2006) at pp. 5-6; Plaintiff's Opposition To MLH's Motion For Protective Order at p. 8; Undisputed Facts at ¶¶ 3, 7. Indeed, the Plaintiff's Group Certificate provides MLH with the discretionary authority to determine (a) what services are "medically necessary" and (b) the policies and procedures to be used in administering the Plan. *Id*. Thus, the issue that is ripe for summary judgment is whether MLH abused its discretion in denying Plaintiff's claim for inpatient care. Clearly, it did not.

MLH's denial of Plaintiff's request for inpatient care is supported by seven separate clinical opinions, each of which found that Plaintiff's inpatient stay at River Oaks was not medically necessary. Undisputed Facts at ¶¶ 8-9, 11-12, 18-19, 23, 24. Set forth below are several examples of the well-supported reasoning of those physicians.

>    1.    Morton Albert, M.D.,
>           MLH Behavioral Health
>           Medical Director              October 14, 2004
>
>    . . . the member presented with a normal height and weight, normal lab values, there were no reported medical consequences of the eating disorder which required 24-hour monitoring; and there were no co-existing psychiatric substances abuses, or medical issues. (Undisputed Facts at ¶¶ 8-9).

2.    <u>Sheldon Glass, M.D.</u>
      Independent Consultant              November 22, 2004

      . . . at no time in her stay of 10/13 – 11/8/04 did [Plaintiff]
      meet the criteria for inpatient [treatment] of eating
      disorders.  (Undisputed Facts at ¶ 11).

3.    <u>Vera Dvorak, M.D.</u>
      MLH Senior Medical Director          December 4, 2004

      . . . there were no medical complications of your eating
      disorders which required 24-hour nursing care. . .  There
      was no documentation of severe weight loss. . ..<u>You were
      inpatient for 13 days before an antidepressant was
      prescribed</u>.  (Undisputed Facts at ¶ 12) (emphasis added).

4.    <u>Reviewer – 2 [Blinded]</u>
      IPRO Independant Reviewer            May 26, 2005

      . . . inpatient psychiatric hospitalization was not medically
      necessary during the dates 10/13/04 – 11/8/04.  The
      insurer's criteria for acute hospitalization. . . were not met,
      and there were no other unusual conditions present that
      made inpatient hospitalization medically necessary.
      (Undisputed Facts at ¶ 19).

5.    <u>Re-Reviewer – 2 [Blinded]</u>
      IPRO Independent Reviewer            April 18, 2006

      I do not see any clinical grounds to justify inpatient
      admission in October 2004. . . (Undisputed Facts ¶ 24).

As the foregoing examples and the clinical record as a whole make abundantly clear,

Plaintiff did not need to be treated on an inpatient basis.  Undisputed Facts at ¶¶ 8-9, 11-12, 18-

19, 23-24.  MLH, therefore, denied Plaintiff's claim for an inpatient admission because it was

clear that an acute level of care was not medically necessary.  Undisputed Facts at ¶¶ 8-9.  The

undisputed facts demonstrate that Plaintiff simply did not present any conditions that warranted

inpatient hospitalization.  As a result, MLH's decision to deny coverage for Plaintiff's inpatient

stay at River Oaks is reasoned and appropriate.

Indeed, during MLH's internal reviews of Plaintiff's request for coverage, Drs. Albert, Glass and Dvorak each concurred that Plaintiff's inpatient admission was not medically necessary. Undisputed Facts at ¶¶ 8-9, 11-12. Plaintiff did not exhibit any of the conditions warranting inpatient treatment for bulimia, including: 1) severe weight loss; 2) medical complication(s) attributable to severe weight loss; 3) preexisting chronic medical condition(s) worsened by weight loss necessitating 24-hour skilled nursing care; or 4) significant psychiatric issues (i.e., suicidal ideations) needing inpatient care and monitoring. Undisputed Facts at ¶¶ 8-9, 11-12. Moreover, Plaintiff's laboratory results upon admission were normal and her vital signs were stable. Undisputed Facts at ¶ 9. Based on these facts, MLH determined that Plaintiff's inpatient admission was not medically necessary. Undisputed Facts at ¶¶ 8-9, 11-12. Since the Group Certificate specifically excludes "[c]onfinement, treatment, services, or supplies which are not medically necessary," MLH acted reasonably in denying the claim at issue.

The mere fact that Plaintiff's treating physician disagreed with the Plan's determination is not a basis to find that MLH abused its discretion as a plan administrator. Indeed, "ERISA plan administrators give no special deference to the opinions of treating physicians, but they may not arbitrarily refuse to credit them." *Doley v. Prudential Ins. Co.*, 2006 U.S. Dist. LEXIS 17049, *5 (D.D.C. March 28, 2006) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). Even more importantly, "[i]t is not an abuse of discretion to value the opinions of the insurer's own medical consultant's over those of a participant's treating physician." *Doley*, 2005 U.S. Dist. LEXIS 17049, at *5. Here, the vast weight of authority and expertise compels a finding that MLH did not act arbitrarily in denying the claim at issue. Plaintiff's unsupported disagreement with that conclusion is not a basis to disturb the finding of the plan administrator.

In *Powell et al. v. Bettelle Pacific Northwest Laboratories*, 204 F. Supp. 2d 1295 (D. Utah 2002), a case similar to the one at hand, the court considered a claim challenging the denial of inpatient care for dependent children to treat mental, emotional, behavioral and substance abuse problems. The plan administrator concluded that the claims were properly denied because the inpatient treatment was not medically necessary. *Powell*, 204 F. Supp. 2d at 1305. In support of his conclusion, the plan administrator relied heavily on the opinion of a consulting psychiatrist. That psychiatrist found that, based on his review of the medical records, the adolescent boys who received inpatient care were not a threat to themselves or others. *Id.* at 1306. Moreover, the psychiatrist likewise concluded that, at most, the boys needed outpatient treatment or participation in a partial hospitalization program. *Id.* The court agreed with the determination of the plan administrator and granted summary judgment.

As in the case *sub judice*, the court in *Powell* was faced with a plaintiff's contention that inpatient services provided were medically necessary countered by the opinion of a medical expert finding just the opposite. The *Powell* court rightly concluded that, in such circumstances, the determination of a plan administrator is not arbitrary and capricious. *Id.* at 1307; *see also*, *Ortlieb v. United Healthcare*, 387 F.3d 778, 783 (8th Cir. 2004) (plan's coverage determination, which was reviewed by at least four different physicians [two of them external], is reasonable); *Gleich v. Wachovia Securities*, 2005 U.S. Dist. LEXIS 16748 **17-18, 21 (E.D. Va. 2005) (defendant's motion for summary judgment granted ERISA in action where plan engaged in a reasoned review process in determining that medical device was experimental).

In the instant case, the facts are even more compelling than those in *Powell* and the other cases cited above. Here, there have been at least seven separate physician reviews supporting the coverage determination by MLH. Those reasoned opinions constitute substantial evidence

supporting the determination of the Health Plan.  As a result, the Court should grant summary

judgment.

**C.**    **Plaintiff's Separate Claim For Coverage Of Outpatient Partial Hospitalization Services Is Barred Because She Failed To Exhaust Her Administrative Remedies**

Plaintiff submitted a request for coverage of outpatient partial hospitalization services on

November 11, 2004.  Undisputed Facts at ¶¶ 26-29. MLH denied the claim because neither

Plaintiff nor her healthcare providers sought or received pre-certification from the Health Plan

per the terms of her Group Certificate.  *Id.* at ¶¶ 27-28.  More importantly, Plaintiff never

appealed that administrative denial prior to initiating the instant lawsuit.  *Id.* at ¶ 29.  The law is

abundantly clear that an ERISA plaintiff must exhaust his or her administrative remedies prior to

seeking redress in the Courts.  *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 252 (3d

Cir. 2002) ("courts require exhaustion of administrative remedies prior to hearing an action for a

denial of ERISA benefits.").  Having failed to do that, MLH respectfully requests that the Court

dismiss her claim for coverage relating to request for partial hospitalization services.[6]

ERISA plaintiffs must exhaust their administrative remedies prior to pursuing any action

for coverage of benefits.  *Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 156-57 (D.C. Cir. 2006)

(holding airline pilots' failed to exhaust administrative remedies by filing suit before they had

resorted to the Pension Benefit Guaranty Corporation's internal appeals process); *see also*

*Communications Workers of American v. American Telephone and Telegraph Co.*, 40 F.3d 426,

433-434 (D.C. Cir. 1994) (reversing district court's ruling excusing employees' failure to

exhaust their plan remedies prior to suit for pension benefits).  Although ERISA does not

explicitly require claimants to exhaust their administrative remedies, the courts have uniformly

---

[6]  Even if Plaintiff had exhausted her administrative remedies, MLH's decision to deny her claim administratively for failure pre-certify the care is likewise supported by substantial evidence and, therefore, is not an arbitrary and capricious decision.  *See* Undisputed Facts, ¶¶ 26-28.

adopted the exhaustion requirement before claimants may challenge adverse plan determinations in court. *See e.g., Hunter v. Metro. Life Ins. Co.*, 251 F. Supp. 2d 107, 113 (D.D.C. 2003) (dismissal for failure to exhaust administrative remedies warranted where plaintiff did not complete appeal process prior to filing suit).

Importantly, the exhaustion requirement ensures that plan administrators: 1) are able to apply their expertise and exercise their discretion to manage the plan's funds, correct errors and make considered interpretations of plan provisions; 2) assemble a factual record that will assist the court in reviewing the administrators' actions; and 3) give a final, fully considered, and reasoned explanation and decision to the court for review. *See Hunter*, 251 F. Supp. 2d at 111; *Boivin*, 446 F.3d at 156-57. If the plan administrator does not render a final determination and is proscribed from providing a fully reasoned explanation for its decision, the reviewing court has nothing "before it, except the arguments of counsel." *Boivin* 446 F.3d at 156-57. Indeed, allowing an insufficiently reasoned and documented ERISA claim to proceed without first receiving a final decision from the plan administrator leaves the courts "unable to apply properly the . . . rule of deference." *Id.* Since Plaintiff never appealed MLH's adverse coverage decision regarding her partial hospitalization, her claim in this Court is not ripe and the Court should not consider it on the merits. *Id.*; *see also Hunter*, 251 F. Supp. 2d at 110 (analogizing the ERISA exhaustion doctrine to the exhaustion doctrine applied in administrative agency actions).

In this action, Plaintiff obscures the two separate and distinct claims for different medical care and acts as if they are a single claim. *See* generally, Administrative Record. Plaintiff, however, submitted two separate and discrete requests for benefits coverage: (a) one on October 14, 2004 for inpatient care and (b) a separate request on November 11, 2004, for outpatient partial hospitalization benefits. Undisputed Facts at ¶¶ 7, 26-28.

Given these facts, any argument by Plaintiff that she is pursuing redress for a single claim sinks of its own weight.  Setting aside Plaintiff's attempt to conflate two separate healthcare claims, the facts are undisputed that Plaintiff never appealed the denial of her claim for outpatient partial hospitalization services prior to requesting redress from the Court. Undisputed Facts at ¶ 29.  In its coverage decision denying Plaintiff's request for outpatient partial hospitalization services, MLH explained that Plaintiff must appeal within 180 days of the denial. Despite having 180 days within which to appeal, Plaintiff never submitted any appeal of the denial of her claim for outpatient partial hospitalization services.  *Id.*

The law is clear that, absent an attempt to exhaust administrative remedies within the timeframe set forth by the plan, a putative plaintiff has no right to pursue an ERISA claim. *See, Counts v. Am. Gen. Life and Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (affirming dismissal of claim for judicial review of denial of benefits where plaintiff did not appeal denial within 60 days as required by the plan documents).  Since Plaintiff failed to pursue her administrative remedies within 180 days as it related to her claim for outpatient partial hospitalization services, the Court should dismiss this claim with prejudice.

**V.**

**<u>CONCLUSION</u>**

Defendant MLH respectfully requests that the Court enter an Order, pursuant to Federal Rule of Civil Procedure 56(b), granting summary judgment in its favor and against Plaintiff. There is no dispute that, on seven different occasions, reviewing physicians concluded that Plaintiff's inpatient stay at River Oaks was not medically necessary.  MLH did not act arbitrarily in adopting these reasoned clinical opinions.  As a result, Plaintiff cannot prevail as a matter of law on her claim for inpatient benefits.  Likewise, MLH is entitled to summary judgment on

Plaintiff's claim for coverage of outpatient partial hospitalization services because she did not exhaust her administrative remedies prior to seeking redress in this Court.  Based on the foregoing, MLH respectfully requests that the Court dismiss Plaintiff's claims in their entirety with prejudice.

Dated:  October 16, 2006                    Respectfully submitted,


                                            /s/ Christopher Flynn_____
                                            Christopher Flynn, Esq.
                                            William C. Silvis, Esq.
                                            KING PAGANO HARRISON
                                            1730 Pennsylvania Avenue, NW
                                            Suite 900
                                            Washington, DC 20006
                                            Ph: 202-371-6800
                                            Fax: 202-371-6770
                                            cflynn@kph.com
                                            wsilvis@kph.com