UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MAMSI LIFE AND HEALTH<br>INSURANCE COMPANY, et al.,<br><br>　　　　Defendant. | Case No.: 1:05CV02450 (ESH) |

**DEFENDANT MAMSI LIFE AND HEALTH INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE AFFIDAVIT OF MARY STOCK**

Defendant MAMSI Life and Health Insurance Company ("MLH"), by and through counsel, Crowell & Moring LLP, respectfully submits this Reply in support of its Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment. MLH also moves to strike the Affidavit of Mary Stock.

**I.**

**INTRODUCTION**

In her Opposition, Plaintiff misconstrues the facts and misapplies the law. Specifically, Plaintiff's Opposition (1) incorrectly states the standard of review, (2) wrongly contends that MLH's alleged dual status as an administrator and insurer constitutes a conflict of interest, (3) inaccurately states that her partial hospitalization claim for coverage was administratively appealed, (4) mistakenly assumes that MLH is not permitted to rely on its Criteria for Eating Disorders in making a coverage determination, (5) improperly applies the Criteria to support her claim of medical necessity, and (6) impermissibly relies on evidence outside the administrative

record. For each of these reasons and those set forth in MLH's moving papers, the Court should enter judgment in favor of MLH.

First, the Court has ruled that the standard of review in this case is abuse of discretion. The Court's decision is consistent with the governing federal statute, ERISA, and the applicable caselaw. Indeed, Plaintiff concedes in a prior brief that abuse of discretion is the appropriate standard of review. Accordingly, there is no legitimate dispute that the applicable standard here is abuse of discretion.

Second, Plaintiff's argument that MLH's alleged dual status as administrator and insurer constitutes a conflict of interest is contradicted by long-standing case law. Even if the record supported MLH's alleged dual status, the case law clearly reflects that dual status in and of itself does not amount to a conflict of interest. Moreover, the fact that two independent reviewers with no alleged self-interest agreed with MLH's benefits decision belies MLH's purported conflict.

Third, there is nothing in the record to support Plaintiff's contention that she appealed the denial of her partial hospitalization claim. Due to Plaintiff's failure to exhaust her administrative appeal rights, the partial hospitalization claim is not ripe for review.

Fourth, MLH is permitted to rely on its Behavioral Health and Psychiatric Level of Care Criteria for Eating Disorders ("Criteria") in making coverage determinations and need not incorporate them into the member's policy document, as Plaintiff inaccurately alleges. ERISA and its accompanying regulations do not require voluminous medical treatment guidelines to be included in the policy. Rather, MLH is permitted to both establish and rely on such medical guidance to make a reasonable coverage decision.

Fifth, Plaintiff seeks coverage for her inpatient psychiatric hospitalization despite the fact that she did not meet the coverage criteria for this acute level of care. Plaintiff's opposition is

replete with references to "facts" that purportedly support her position, but these statements are wholly unsupported by the clinical documentation and expert opinion in the administrative record.

Finally, Plaintiff improperly attempts to supplement the record by providing an affidavit of a purported medical professional, Mary Stock. The affidavit must be struck as it falls outside the administrative record and attempts to introduce expert opinion regarding facts that are unsupported by the evidence in the record.

Even setting aside the foregoing deficiencies, the facts are undisputed that, in seven separate clinical reviews, board-certified physicians concluded that Plaintiff's inpatient stay at River Oaks Hospital in New Orleans was not medically necessary and, therefore, not covered under the terms of the MLH health benefits plan. For the reasons outlined below and in its Memorandum of Law in Support of its Motion for Summary Judgment, MLH is entitled to summary judgment on Plaintiff's claims.

## II.

## ARGUMENT

### A.   MLH's Benefits Determination May Be Reviewed For Abuse Of Discretion Only

Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., the denial of Plaintiff's claim for inpatient benefits is reviewed for an abuse of discretion. Plaintiff's eleventh hour contention that a *de novo* standard of review should apply is in direct conflict with the Court's previous holding and Plaintiff's own position on this issue. *See* Sept. 7, 2006 Memorandum Opinion and Order at 5 ("the denial of benefits by a claims administrator or fiduciary is subject to the deferential 'abuse of discretion' or 'arbitrary and capricious' standard

of review."); Plaintiff's Opposition to Defendant's Protective Order at 8 (agreeing that the standard of review is "abuse of discretion.").

In its September 7, 2006 Order, this Court held that the abuse of discretion standard applies to the facts here. Sept. 7, 2006 Memorandum Opinion and Order at 6 (holding that the "deferential standard of review [abuse of discretion] . . . applies in this case . . ."). Under the law-of-the-case doctrine, the Court need not – and should not – re-open this long-answered question. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995). The law-of-the-case doctrine "refers to a family of rules embodying the general concept that a court . . . should not re-open questions decided (i.e., established as the law of the case)." *Id.* at 739. Accordingly, the Court's prior ruling is the established law of the case and remains binding.

Even barring the application of the law-of-the-case doctrine, the applicable case law undeniably supports the abuse of discretion standard of review in this case. Plaintiff's contention to the contrary is based on a blatant misreading of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). As this Court held in its order, "[p]ursuant to the Supreme Court's decision in *Firestone* . . . under ERISA, the denial of benefits by a claims administrator or fiduciary is subject to the deferential 'abuse of discretion' or 'arbitrary and capricious' standard of review when 'the benefit plan gives the administrator o[r] fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Sept. 7, 2006 Memorandum Opinion and Order at 5 (quoting *Firestone*, 489 U.S. at 115). It is well-settled that this governing standard is one of "reasonableness." *Block v. Pitney Bowes*, Inc., 952 F.2d 1450, 1452 (D.C. Cir. 1992). Under the abuse of discretion standard, a court must not overturn a plan administrator's reasoned decision even if an alternative decision is also reasonable. *Id.*; *see also, Mobley v. Cont'l Cas. Co.*, 405 F. Supp.2d 42, 48 (D.D.C. 2005) (holding that a plan administrator's

4

decision will not be overturned under the deferential ERISA standard of review so long as the decision is reasonably supported by the administrative record).

Plaintiff's reliance on the Supreme Court's decision in *Firestone* in support of the application of a *de novo* standard of review is misplaced. The *Firestone* Court applied a *de novo* standard of review because the administrator in that case had no discretion to interpret the policy terms and not because, as Plaintiff suggests, the administrators "lacked the expertise required to interpret contractual provisions." *Firestone*, 489 U.S. at 111-15; Plaintiff's Opposition at 21-22. Plaintiff does not contend that the MLH is without discretionary authority to interpret the terms of the plan. Sept. 7, 2006 Memorandum Opinion and Order at 5-6. Her reliance on *Firestone*, therefore, is misplaced.

Plaintiff's contention that a *de novo* standard of review should apply to this case is also inconsistent with her prior position. As the Court pointed out in its order, "Plaintiff does not dispute MAMSI's contention that a deferential standard of review is appropriate in this case because the plan provides MAMSI with discretionary authority to determine eligibility benefits and to construe the terms of the plan." Sept. 7, 2006 Memorandum Opinion and Order at 5-6; *see also* Plaintiff's Opposition to Defendant's Motion for Protective Order at 8 (Plaintiff unequivocally states that "the standard of review for an ERISA case 'abuse of discretion'" and notes that it is a "deferential standard of review."). Given this admission, the Court should not permit Plaintiff to revisit the long-established standard of review in this matter.

**B.     MLH's Alleged Dual Status Does Not Create A Conflict Of Interest**

Plaintiff asserts that MLH is both the policy administrator and the policy insurer despite the fact that she failed to identify any evidence in the Administrative Record supporting her assertion. The law is well-settled that this dual status does not in and of itself constitute a conflict of interest. *Block v. Pitney Bowes*, Inc., 952 F.2d 1450, 1452 (D.C. Cir. 1992). More

5

importantly, such dual status does not mandate a conclusion that the decision to deny benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law" as the abuse of discretion standard of review requires. *See Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir. 1999). Plaintiff has utterly failed to assert any facts other than dual status to show MLH's alleged conflict of interest. In the absence of additional supporting facts, Plaintiff's charge of an alleged conflict falls flat.

Here, the record below illustrates that MLH made a reasoned decision free of any conflict of interest in this case. The seven clinical opinions finding that Plaintiff's inpatient treatment was not medically necessary clearly rebuts any notion that MLH acted out of self-interest in denying the claim at issue. More importantly, two independent and blinded IPRO reviewers agreed (after a first review and then a re-review) that Plaintiff's inpatient treatment was not medically necessary. These independent reviews demonstrate that MLH's decision to deny coverage was not colored by an alleged conflict of interest.

  C. **MLH Properly Relied On The Coverage Criteria In Making Its Coverage Determination**

MLH properly relied on its Criteria to determine whether Plaintiff's treatment was medically necessary. Plaintiff, in an attempt to muddy clear water, contends that MLH may not rely on its Criteria because 1) Plaintiff's policy is allegedly silent as to MLH's ability to establish such criteria, and 2) MLH allegedly failed to establish that the Criteria are aligned with established medical standards. Both arguments are utterly without merit.

First, Plaintiff admits in her Opposition that the policy is not silent but, rather, expressly allows MLH to adopt reasonable "policies, procedures, rules and interpretations to promote orderly and efficient administration of this Contract." Plaintiff's Opposition at 23. The Criteria are among those reasonable policies. Moreover, the policy definition of medical necessity gives

clear notice that the Plan will use its discretion to measure requests for benefits against professional standards:

> Medically necessary health services are defined as those "which are reasonably necessary and in the exercise of good medical practice in accordance with professional standards accepted and commonly available in the United States for treatment of Sickness or Injury *as determined by [MLH]*." (emphasis added).

Group Certificate, Definition of Medical Necessity (Admin. Rec. at 279). Indeed, without establishing such criteria, MLH would be open to attack for failing to base its coverage decisions on widely-recognized standards of care.

Plaintiff's argument that the Criteria are not established professional standards is simply a red herring. The two independent, IPRO psychiatrists that reviewed this case discussed the standards of care interchangeably with MLH's Criteria. In fact, both the first and second review confirmed that the coverage denial using MLH's Criteria was "consistent with the general standards of clinical psychiatric practice as well as the American Psychiatric Association Guidelines for the Treatment of Patients with Eating Disorders." May 26, 2005 IPRO Decision (Admin. Rec. at 748-51) and April 18, 2006 IPRO Decision (Admin. Rec. at 762-67). As these and two other board-certified psychiatrists rendered their expert opinions based on MLH's Criteria, Plaintiff's position that the Criteria are somehow different from established professional standards is simply untenable.

In addition, and contrary to Plaintiff's assertion, there is no requirement that the Criteria must be part of the member's plan documents. Indeed, ERISA does not require plans to provide participants with all possible criteria on which coverage decisions will be made for every possible condition covered by the policy. Instead, ERISA requires that "the plan description and summary plan description" shall include "the plan's requirements respecting eligibility for

7

participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b); *see also* 29 C.F.R. § 2520.102-3(l); 29 C.F.R. § 2520.102-3(j)(2). The statute's "requirements" and "circumstances" language refer to "the general test of medical necessity, the claims procedure, and like information that a beneficiary would normally consult in determining what protection was afforded by a plan." *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir. 1999). Accordingly, Plaintiff is incorrect that MLH should have provided her with the criteria on which MLH would rely in making her coverage determination. *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir. 1999) (holding that ERISA does not mandate a plan to provide mental health guidelines to a plan member, but finding for the member on other, unrelated grounds).

In addition, Plaintiff cannot now take issue with these Criteria when she had notice of their existence from the very first coverage denial letter. October 14, 2004 MLH Coverage-Decision (Admin. Rec. at 1-2). Plaintiff had every opportunity to request a copy of these guidelines during the internal and external review process. It is simply not true that Plaintiff was somehow surprised that the Plan would be utilizing the Criteria as a measure of medical necessity for her requested benefits.

More importantly, Plaintiff's argument misses the point. The governing standard of review in this case is one of "reasonableness." *Block v. Pitney Bowes*, Inc., 952 F.2d 1450, 1452 (D.C. Cir. 1992). Plaintiff never contends that either the criteria or MLH's reliance on those criteria is unreasonable. She never argues that the criteria are somehow incorrect or incomplete. In fact, it is perfectly appropriate and reasonable for MLH to consult such criteria in making coverage decisions. Accordingly, its coverage decision -- based in part on those Criteria -- can not be considered an abuse of discretion.

**D.     Plaintiff's Condition Did Not Warrant Inpatient Treatment Under The Criteria**

Plaintiff wrongly contends that MLH misstated the Eating Disorder Criteria in its statement of undisputed facts. Plaintiff's Opposition at 13-15; Defendant's Statement of Undisputed Facts at 4. The Criteria states: "Admission Criteria are met if any one of 2-4, or 1 and any of 5-8 are met." Eating Disorders Criteria (Admin. Rec. at 303-05.) Thus, the Criteria require, as MLH has explained, a finding of at least one of the following:

    a.    severe weight loss: i.e., refusal to maintain weight at or above 75% of optimal weight;

    b.    medical complications related to weight loss that require 24-hour skilled nursing care such as a heart rate less than 40, blood pressure less than 90/60, temperature less than 97, severe orthostatic changes, severe hypokalemia or hyponatremia, esophageal rupture, or other significantly abnormal test results;

    c.    comorbid biomedical issues such as diabetes or pregnancy that worsen due to the weight loss and need 24-hour skilled nursing care; or

    d.    comorbid psychiatric/substance abuse issues that meet inpatient rehabilitation criteria.

*See* Eating Disorder Criteria (Admin. Rec. at 303-05); October 14, 2004 MLH Coverage-Decision (Admin. Rec. at 1-2); December 2, 2004 MLH Coverage-Decision on Appeal (Admin. Rec. at 264-65); May 26, 2005 IPRO Decision (Admin. Rec. at pp. 748-51); April 18, 2006 IPRO Decision (Admin. Rec. at 762-67).

Plaintiff contends that she "clearly satisfies" Criterion 1 and Criteria 5 through 8. This is simply not a credible claim. Criterion one requires: "Through determined food avoidance in the absence of any physical or mental illness, a refusal to maintain weight = or > 75% of optimal body weight or approaching a weight at which physiological instability occurred in the past." Admin. Rec. 303. Plaintiff does not contend that she was below or at 75% of her optimal body

9

weight. Instead, she contends that she was not required to "suffer 'severe weight loss' because she was diagnosed with and endured well-documented mental illness." Plaintiffs' Opposition at 29.

As an initial matter, Criterion 1 does not create a blanket exception to the severe weight loss requirement for those who suffer from mental illness. It does allow, however, coverage for claimants who are "approaching a weight at which physiological instability occurred in the past." Eating Disorders Criteria (Admin. Rec. at 303). There is no evidence in the Administrative Record that Plaintiff was "approaching a weight at which physiological instability occurred in the past." Eating Disorders Criteria (Admin. Rec. at 303). Nor is there evidence in the record to support Plaintiff's contention that she "was diagnosed with and endured well-documented mental illness." Eating Disorders Criteria (Admin. Rec. at 303). Plaintiff offers as her sole support a letter written to IPRO by Plaintiff's lawyer, which IPRO considered but rejected in determining that MLH's decision to deny the claims should be upheld. May 26, 2005 IPRO Decision (Admin. Rec. at 748). MLH did not have access to the letter or its content when conducting its own administrative review. Even if it had access to the letter, it is nothing more than a series of bald allegations unsupported by the evidence in the record.

Plaintiff also makes a series of unsupported allegations contending that she satisfied Criteria 5 through 8, again relying chiefly on a letter that Plaintiff's counsel wrote to IPRO. The external, blinded IPRO reviewers considered that information and determined the coverage was not medically necessary. In fact, and as set forth in the Plans' Motion, five separate doctors have reviewed the case and determined that inpatient treatment was not medically necessary. Undisputed Facts at ¶¶ 8-9, 11-12, 18-19, 23, 24.

The intake and admission reports consistently indicate that Plaintiff did not have suicidal tendencies or thoughts. Plaintiff's admission summary states: "She denies suicidal ideation"; her screening assessment reads: "She is not currently suicidal or homicidal"; and her psychological evaluation explains that "suicidal ideation is denied." Plaintiff's Admission Summary (Admin. Rec. at 8, 18, 39 and 46). Plaintiff's claim that her "profile is consistent with suicidal thoughts" distorts the record and manipulates the actual evidence, which clearly shows that Plaintiff in fact had no suicidal thoughts or tendencies. *Id.*

As the foregoing examples and the clinical record as a whole make abundantly clear, Plaintiff did not require inpatient treatment. Undisputed Facts at ¶¶ 8-9, 11-12, 18-19, 23-24. MLH, therefore, denied Plaintiff's claim for an inpatient admission because it was clear that an acute level of care was not medically necessary. Undisputed Facts at ¶¶ 8-9. The undisputed facts demonstrate that Plaintiff simply did not present any conditions that warranted inpatient hospitalization. As a result, MLH's decision to deny coverage for Plaintiff's inpatient stay at River Oaks is reasoned and appropriate.

> E. **The Court Lacks Jurisdiction To Review Plaintiff's Separate Claim For Partial Hospitalization Coverage**
>
> 1. **Plaintiff's Appeal Of Her Inpatient Claim Is Not An Appeal Of The Denial Of Her Separate Outpatient Claim**

In her opposition, Plaintiff contends – for the first time – that the Court should conflate her claim for inpatient benefits with her separate claim for coverage of her outpatient partial hospitalization program ("outpatient benefits"). Under the terms of the Plan, Plaintiff's inpatient claim is separate and distinct from her claim for outpatient benefits. Group Certificate, F. Mental Illness, Emotional Disorders, Drug Abuse and Alcohol Abuse (Admin. Rec. at 288-89). Plaintiff's contention that these constitute one claim because her treatment was allegedly "continuous and ongoing" is inconsistent with the Group Certificate and the administrative

11

determinations. Plaintiff's Opposition at 2 and 31; Admin. Rec. 288-89, 268, 269, and 550. As Plaintiff admits, she submitted "claims" for her medical treatment and MLH denied those distinct claims based on "two separate rationales." Plaintiff's Opposition at 2.

Plaintiff's request for outpatient benefits was denied on November 11, 2004. November 11, 2004 MLH Partial Hospitalization Coverage-Decision (Admin. Rec. at 254-57). On that day, via written correspondence, MLH notified Plaintiff of the denial as well as her right to appeal. Plaintiff, however, failed to exercise her appeal right. *Id.* at 254-56. Plaintiff appealed only the denial of her claim for inpatient benefits for treatment between the dates from October 13, 2004 to November 8, 2004. Letter from MLH to Patrick Kelly dated March 9, 2005 (Admin. Rec. at 269)("At issue is the Health Plan's denial of coverage for inpatient treatment for [Plaintiff] from October 13 through November 8, 2004."); *see also* December 2, 2004 MLH Coverage-Decision on Appeal (Admin. Rec. at 264)(denial of appeal "for inpatient treatment" after reviewing "Medical records for October 13-November 8, 2004); Letter from Patrick Kelly to MLH dated February 28, 2005(Admin. Rec. at 268)(notifying MLH that "J. Michael Hannon has appealed MAMSI's decision on behalf of [Plaintiff] denying coverage for inpatient treatment at River Oaks Hospital from October 13, 2004 to November 8, 2004"); Letter from Patrick Kelly to MLH dated March 11, 2005 (Admin. Rec. at 550)(notifying MLH that the "Director has accepted [Plaintiff's] appeal of MAMSI's decision denying coverage for inpatient treatment from October 13, 2004 through November 8, 2004.").

Under ERISA, a claimant must exhaust his or her administrative remedies prior to seeking redress in the courts. *See* 29 U.S.C. § 1133; *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 252 (3d Cir. 2002) ("courts require exhaustion of administrative remedies prior to hearing an action for a denial of ERISA benefits"); *Hickey v. Digital Equip. Corp.*, 43 F.3d 941,

12

945, (4th Cir. 1995*); Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980). Surprisingly, Plaintiff does not disagree that she was required to exhaust her administrative remedies. Nonetheless, Plaintiff accuses MLH of "bad faith" in relying on that basis in moving for summary judgment on the outpatient benefits claim. Plaintiff's Opposition at 31. She asserts that, by appealing the denial of her claim for inpatient care, she also implicitly appealed the denial of her separate claim for her partial hospitalization because the treatment was "continuous and ongoing." Plaintiff's Opposition at 31. Plaintiff utterly fails to cite any support for this contention. Indeed, any decision to the contrary would undermine the purposes of the administrative exhaustion doctrine: (1) to allow for internal correction of mistakes and (2) to encourage judicial efficiency. *See Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 156-57 (D.C. Cir. 2006).

Since Plaintiff never appealed MLH's decision to deny her outpatient benefits claim, this Court lacks jurisdiction to review the denial.[1] *See Counts v. Am. Gen. Life and Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (affirming dismissal of claim for judicial review of denial of benefits where plaintiff did not appeal denial within 60 days as required by the plan documents).

Under the terms of the Plan, Plaintiff had 180 days from the receipt of her denial to appeal that claim. November 10, 2004 MLH Coverage-Decision (Admin. Rec. at 238). MLH denied Plaintiff's claim for PHP Care by letter dated November 10, 2004. In the denial letter, MLH expressly stated that "[a]ppeals must be submitted verbally or in writing within 180 calendar days of receipt of this letter . . . ." Id. Plaintiff failed to timely appeal that determination and, as a result, is barred from doing so now. *Counts*, 111 F.3d at 108.

---

[1] Even if Plaintiff had exhausted her administrative remedies, MLH's decision to deny her claim administratively for failure to pre-certify the care is likewise supported by substantial evidence and, therefore, is not an arbitrary and capricious decision. *See* Undisputed Facts, ¶¶ 26-28.

13

III.

**MOTION TO STRIKE THE AFFIDAVIT OF MARY STOCK**

A.  **The Affidavit Is Not Part Of The Administrative Record**

The affidavit of Mary Stock falls outside the administrative record. Plaintiff's reliance on the affidavit violates the Court's September 7, 2006 Order that, with the exception of meeting minutes, "discovery in this case should be limited to the administrative record." Sept. 7, 2006 Memorandum Opinion and Order at 9. By offering this Affidavit, Plaintiff is impermissibly attempting to introduce new facts and evidence that were not before MLH at the time it made its decision. It is well settled that a reviewing court may review a plan's coverage decision based on the evidence that was before the plan at the time of the appeal. *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 493 (D.C. Cir. 1998) ("Courts review ERISA-plan benefit decision on the evidence presented to the plan administrators, not on a record later made in another forum."). Accordingly, the eleventh hour submission of the affidavit is prohibited and must be struck.

Furthermore, the affidavit offered by Plaintiff does not qualify Ms. Scott as an expert, indicate her level of expertise, or identify the type of services she provided to the Plaintiff. Indeed, the affidavit does not identify Ms. Scott's educational background, her specific experience with the Plaintiff or her expertise in the field of eating disorders generally. Although the last page of the affidavit identifies Ms. Stock as a Ph.D., the affidavit does not indicate in what subject matter she was granted this degree. Due to this lack of information, the Court is unable to make a determination as to whether Ms. Scott's opinion is within the reasonable confines of an area in which she has expertise. Moreover, one of the independent IPRO reviewers characterized Ms. Stock as an "eating disorder therapist" and declared, after a telephone conversation with her about this case, that the conversation "did not change this

reviewer's opinion." April 18, 2006 IPRO Second Review (Admin. Rec. at 765). Accordingly, not only does Ms. Scott's affidavit not properly qualify her as someone with the factual or expert experience necessary to comment on this case, but the independent reviewers considered her opinions unpersuasive. For these reasons, Ms. Stock's affidavit must not be considered by this Court.

## IV.

## CONCLUSION

Based on the foregoing as well as the facts and law outlined in MLH's October 16, 2006 Memorandum of Law in Support of its Motion for Summary Judgment, MLH respectfully requests that the Court enter an Order, pursuant to Federal Rule of Civil Procedure 56(b), granting summary judgment in its favor and against Plaintiff. Plaintiff agrees that her "admitting physical exam, laboratory workup, and vital signs were normal." Plaintiff's Opposition at 12. There is no dispute that, on seven different occasions, reviewing physicians concluded that Plaintiff's inpatient stay at River Oaks was not medically necessary. MLH did not act arbitrarily in adopting these reasoned clinical opinions. As a result, Plaintiff cannot prevail as a matter of law on her claim for inpatient benefits. Likewise, MLH is entitled to summary judgment on Plaintiff's claim for coverage of outpatient partial hospitalization services because she did not exhaust her administrative remedies prior to seeking redress in this Court. Accordingly, Plaintiff's claims should be dismissed in their entirety with prejudice.

Dated:  November 27, 2006                    Respectfully submitted,


                                                        /s/ Christopher Flynn
Christopher Flynn, Esq.
William C. Silvis, Esq.
CROWELL & MORING
1001 Pennsylvania Avenue, NW
Washington, DC 20001
Ph: 202-624-2864
Fax: 202-628-5116
cflynn@crowell.com
wsilvis@crowell.com

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 27th day of November 2006, a copy of **DEFENDANT MAMSI LIFE AND HEALTH INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE AFFIDAVIT OF MARY STOCK**, were sent via electronic filing to:

> J. Michael Hannon, Esq.
> HANNON LAW GROUP, LLP
> 1901 18th Street, NW
> Washington, DC 20009
> ph: (202) 232-1907
> Fax: (202) 232-3704
> *Counsel for Plaintiff*

and all counsel of record, registered with the Court's ECF system.

> Respectfully submitted,
>
> /s/ William C. Silvis
> William C. Silvis, Esq.
> CROWELL & MORING
> 1001 Pennsylvania Avenue, NW
> Washington, DC 20001
> Ph: 202-624-2516
> Fax: 202-628-5116
> wsilvis@crowell.com
>
> *Counsel for Defendant MAMSI Life and Health Insurance Company*