**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANE DOE,                                          :

     Plaintiff,                                   :
                            CASE NO. 1:05cv02450 (ESH)

     v.                                          :

MAMSI LIFE AND HEALTH                              :
INSURANCE COMPANY, et al.,
                                  :

     Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**CROSS MOTION FOR SUMMARY JUDGMENT AND IN**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

       Plaintiff Jane Doe, by and through her attorneys HANNON LAW GROUP, LLP,

respectfully submits the following Statement of Material Facts Not in Dispute and its

Reply in Support of its Cross Motion for Summary Judgment and in Opposition to

Defendant's Reply Motion for Summary Judgment ("Reply").  Plaintiff incorporates

herein its Memorandum of Law in Support of its Cross-Motion for Summary Judgment.

**INTRODUCTION**

       Plaintiff seeks coverage for health benefits which more likely than not saved her

life.  The requested benefits have been denied by Defendant, MAMSI Life and Health

Insurance Company ("MAMSI") which moved for Summary Judgment on October 16,

2006.  MAMSI's entire defense for non-payment rests on its unwillingness to consider

the recommendations of Plaintiff's treating physicians and portions of the Administrative

Record ("Record").

## I.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In comparing MAMSI's Genuine Issues of Fact with Plaintiff's Disputed Facts, MAMSI has not contested specific issues and the Court can find the following facts not to be in dispute:

### ERISA Benefits Plan at Issue

1.    Plaintiff and Defendant do not dispute that Plaintiff seeks health benefits coverage for covered services under an employer-sponsored health benefits plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  The requested benefits have been denied by MAMSI, which moved for Summary Judgment on October 16, 2006.  Plaintiff Cross-Motioned for Summary Judgment on November 6, 2006 and Defendant filed its Reply on November 27, 2006.

2.    Plaintiff and Defendant do not dispute that Defendant is both the policy administrator and the policy insurer of the plan at issue.  *See* Defendant's Reply at p. 5.

3.    Defendant does not dispute that ERISA provisions require that plan administrators provide a "full and fair review" of claim denials.  *See* 29 USC § 1381.  Furthermore, Defendant does not contest that it did not consider portions of the record submitted by Plaintiff.  *See* Defendant's Reply ¶ 24.  Specifically, MAMSI did not consider a correspondence outlining a telephonic hearing between Plaintiff's counsel and IPRO, Inc. ("IPRO"), an independent review organization, and the medical records provided therewith.  *See* May 20, 2005 Letter of J. Michael Hannon (Admin. Rec. at pp. 553-58); *See also* Defendant's Reply, ¶¶ 14, 16, 20, 24 and 25.

4.    MAMSI does not dispute that the Court previously ordered consideration of the entire Administrative Record, including the record of the telephonic hearing

between Plaintiff's counsel and IPRO, in it coverage determination. *See* September 7, 2006 Memorandum Opinion and Order.

5.     Defendant does not dispute that the Behavioral Health and Psychiatric Level of Care Criteria for Eating Disorders ("Criteria") utilized in reaching its coverage determination was not part of Plaintiff's plan documents. *See* Defendant's Reply at p. 7. There is also no dispute that Plaintiff had no notice of the Criteria prior to her Hospital admission and received notice only upon denial of her initial coverage request. *See* Defendant's Reply at p. 8.

6.     Plaintiff and Defendant do not dispute the content of the Criteria accurately read as follows:

Admission Criteria are met if any one of 2-4, or 1 and any of 5-8 are met

1.  Through determined food avoidance in the absence of any physical or mental illness, a refusal to maintain weight = or 75% of optimal body weight or approaching a weight at which physiological instability occurred in the past. For child/adult, may also be refusal to maintain bmi 15 or body weight , 85% of optimal body weight during a period of rapid growth. *There are no particular weight indicators re: bulimia nervosa.*

2.  Medical complications related to eating disorder that require 24 hour skilled nursing care.

3.  Diabetes, pregnancy, cardiovascular disease, or any chronic medical illness that is worsening due to the patient's inability to manage eating disorder symptoms. Severity requires 24 hour monitoring by skilled nursing team.

4.  Psychiatric issues that meet inpatient acute psychiatric criteria.

5.  Resistant to acceptance of illness and treatment recommendations, or *verbally agrees to participate, but requires 24 hour skilled nursing supervision to resist urges to engage in eating disorder behaviors*

6.  *Inability or unwillingness to comply with refeeding program and restricted exercise without 24 hour skilled nursing supervision* due to severe cognitive distortions, intensive fears, denial of serious illness

7. *Family conflicts/dysfunction contributes to the perpetuation of the eating disorder due to family's lack of insight, knowledge, coping skills. Patient is isolated from peers and community resources due to illness.*

8. *At a lower level of care, demonstrated inability to reverse weight loss or sustain weight gain, even with some supervision. Inability to control compulsive behaviors including exercise, and binge/purge cycle, even with some supervision. Non-compliant with treatment.*

*See* Eating Disorder Care Criteria (Admin. Rec. at pp. 303-05)(emphasis supplied).

### **Plaintiff's Treatment was Medically Necessary**

7.     MAMSI does not dispute Plaintiff's exhaustive medical history or her precarious condition prior to inpatient treatment. Defendant merely contests that her history should not be considered in its coverage determination.

There is no dispute that Plaintiff's first adult psychiatric treatment began in Washington, D.C., in April, 2004. *See* Plaintiff's Opposition ¶ 4. Plaintiff was subsequently admitted to River Oaks Hospital ("the Hospital") in New Orleans, Louisiana on October 13, 2004. *See* Plaintiff's Opposition ¶ 16. Plaintiff was diagnosed with bulimia nervosa. *See id.*

8.     Defendant does not contest Plaintiff's bingeing and purging behaviors, exhaustion or resistance to treatment. *See* Plaintiff's Opposition at ¶¶ 4-6. Furthermore, Defendant does not contest that prior to inpatient treatment Plaintiff described feeling listless and reported a strong urge to "something shocking and harmful." *See* October 13, 2004 Psychological evaluation (Admin. Rec. at p. 19); *See also* Plaintiff's Opposition at pp. 10-11.

9.     Plaintiff and Defendant do not dispute that Plaintiff struggled with anxiety and panic attacks. *See* Admission Summary (Admin. Rec. at p. 316); *See also* Plaintiff's Opposition atp. 7.

4

10.    Defendant does not dispute Plaintiff's feelings of extreme sadness and irritability, depression, pain, frustration, and ambivalence about hope for her future.  *See id* (Admin. Rec. at pp. 316, 318); *See also* Plaintiff's Opposition at p. 8.

11.    The parties do not contest Plaintiff's ongoing struggle with eating disorder behaviors.  *See* November 9, 2004 River Oaks Hospital Partial Progress Notes (Admin. Rec. at p. 609); *See also* Plaintiff's Opposition at p. 7.

12.    Finally, Defendant does not dispute that Plaintiff was incapable of successfully managing her eating disorder in an outpatient capacity or that inpatient care was the best option for Plaintiff's successful treatment.  *See* Plaintiff's Opposition at p. 7.

**Defendant's Denial of Coverage to Plaintiff**

13.    Defendant does not dispute that Plaintiff requested and was denied coverage.  Further, Defendant does not dispute that it was aware, at the time of its decision, of the aforementioned undisputed facts regarding Plaintiff's physical and psychological condition.

14.    Defendant does not dispute Plaintiff's contention that her inpatient care and partial hospitalization were both part of one continuing course of treatment.  *See* Plaintiff's Opposition at p. 19.

15.    Defendant does not dispute that Plaintiff was denied coverage for her subsequent partial hospitalization services on the ground that Plaintiff had not obtained Preadmission Authorization.  *See* October 14, 2004 MAMSI Denial of Coverage Letter (Admin. Rec. at p. 1).

16.    Even if the Court determines that Plaintiff's Partial Hospitalization constituted a separate treatment, Plaintiff maintains, and MAMSI does not dispute, that

the Contract does not require pre-certification absent Hospital Confinement. *See* Group

Certificate (Admin. Rec. at p. 276). There is no dispute that Plaintiff was not "registered

as a bed patient in a Hospital" and was therefore not required to receive preadmission

authorization in order for her treatment to be covered. *See id.*

      15.     Plaintiff and Defendant do not dispute that the purposes of the

administrative exhaustion doctrine include (1) allowing for correction of internal

mistakes and (2) encouraging judicial efficiency. *See* Defendant's Reply at p. 13.

      16.     Defendant does not dispute that its denial of Plaintiff's claim for coverage

is final and that the Court has before it a complete Record illustrative of Defendant's

rationale for denying Plaintiff's claim for coverage.

## II.    GENUINE ISSUES OF FACT IN DISPUTE

      Many of the operative facts in this case are not in dispute. Defendant, however,

overlooks the fact that Plaintiff's treatment likely saved her life. MAMSI ignores

material evidence of Plaintiff's condition, suggests that both the Plaintiff and the Court

are unable to rely on the Record, and draws unwarranted inferences as to its rights under

the Contract of insurance ("Contract"). Specifically, MAMSI ignored J. Michael

Hannon's letter to IPRO, the medical records provided therewith, and Plaintiff's

extensive medical history that prompted her three treating physicians and her psychiatric

social worker to recommend inpatient treatment.

      Plaintiff is presenting its Facts in Dispute in two parts. The first part contains

Plaintiff's response to Defendant's Statement of Material Facts in Dispute ("SMF"). The

second addressed Defendant's Reply in Support of its Motion for Summary Judgment

("Reply"). For ease of reference, the following numbered paragraphs parallel and

address Defendant's Statement of Material Facts in Support of its Motion for Summary Judgment.

### Response to Defendant's Genuine Issues of Facts Generally

Plaintiff disputes Defendant's assertion that Plaintiff cannot rely, and the Court should not consider, evidence from the Record. *See generally* Defendant's SMF ¶¶ 14, 16, 20, 24 and 25. Specifically, Defendant suggests that the Court disregard correspondence outlining a telephonic hearing between Plaintiff's counsel and IPRO, Inc. ("IPRO"), an independent review organization, and provided medical records therewith. *See* May 20, 2005 Letter of J. Michael Hannon to IPRO (Admin. Rec. at pp. 553-58); *See also* Defendant's SMF ¶¶ 14, 16, 20, 24 and 25.

The correspondence in question, however, is part of the Record. The Record's purpose, in part, is to reflect the "facts before the claim administrator or fiduciary at the time the benefits decision was made." *See* September 7, 2006 Memorandum Opinion and Order at p. 8 (citing *Hunter v. Metropolitan Life Insurance Co.*, No. 02-137, 2000 WL 32072472 (D.D.C. Aug. 9, 2002). Presumably, IPRO considered this telephonic hearing and the medical records provided therewith, in recommending a denial of Plaintiff's claim for coverage. Defendant thereafter implemented IPRO's recommendation. The Letter, therefore, reflects facts that MAMSI should have considered at the time the benefits decision was made and obviously did not.

Moreover, Defendant is not permitted to arbitrarily select which part of the Record the Court should consider. The Court has previously considered and determined, what was germane to, and permissible in, the review of the denial of Plaintiff's request for coverage. In its Memorandum Opinion and Order, the Court ordered Defendant to

consider this correspondence, and the associated medical records, in Plaintiff's coverage determination as it is part of the Record.  *See* September 7, 2006 Memorandum Opinion and Order.

Finally, the J. Michael Hannon Letter recounts the telephonic hearing supported by the medical record, and MAMSI never contested what was discussed between J. Michael Hannon and the IPRO reviewers or the medical records provided therewith.

Plaintiff, therefore, disputes Defendant's assertion that Plaintiff may not refer to the Record.  *See* Defendant's SMF ¶¶ 14, 16, 20, 24 and 25.  Plaintiff also disputes Defendant's contention that the Court should not consider a portion of the Record previously ordered by the Court to be considered.  *See id*; *See also* September 7, 2006 Memorandum Opinion and Order.

### **Response to Defendant's Argument in Paragraph No. 9:**

Plaintiff's food restriction, weight loss, resistance to medication, and eating disorder behaviors are well documented throughout the administrative record.  *See* Plaintiff's Admission Record (Admin. Rec. at pp. 7-22); *See also* Plaintiff's Progress Notes (Admin. Rec. at pp. 102, 122-125, 375).  Specifically, Plaintiff's Psychological Evaluation prior to River Oaks admission states that Plaintiff had her first eating binge at age 19, with regular binge eating continuing since that time.  *See* Plaintiff's Admission Record (Admin. Rec. at p. 20).  Plaintiff reported binge eating 14 times per week at worst, and more generally, "hates feeling anything in her stomach."  *See* Plaintiff's Admission Record (Admin. Rec. at pp. 19-20).  In its review, MAMSI failed to consider Dr. Tripitelli's prior unsuccessful outpatient treatment and her continuous recommendation for Plaintiff's inpatient treatment.  MAMSI also failed to consider that

each of Plaintiff's treating physicians concurred with Dr. Tripitelli and determined that Plaintiff's recovery depended on the structure, therapy, and nutrition monitoring provided by inpatient treatment at River Oaks Hospital.

Contrary to Defendant's contention that Plaintiff has not provided any support for her illness, the Record is replete with documentation of Plaintiff's physical and psychological struggle with bulimia nervosa and depression. *See* Plaintiff's Admission Record and Progress Notes (Admin. Rec. at pp. 318-546). MAMSI, however, ignored the abundant evidence.

**<u>Response to Defendant's Argument in Paragraph No. 12</u>:**

In her Statement of Material Facts in Support of her Cross-Motion for Summary Judgment ("Cross-Motion"), Plaintiff referenced her referring physician's fears regarding the results of an administered cardiology report. *See* September 1, 2004, Tulane University SHC Cardiology Department Report (Admin. Rec. at p. 698); Plaintiff's Cross Motion ¶ 9.

Defendant argues that the Record does not state that Plaintiff "suffered a silent heart attack." Defendant's SMF ¶ 12. Defendant is correct, but misstates Plaintiff's characterization of the results of the cardiology report. Defendant's SMF ¶ 12. The Record states, and Plaintiff reiterated, that Plaintiff was "*suspected* of having suffered a silent heart attack in early September." *See* September 1, 2004 Tulane University SHC Cardiology Department Report (Admin. Rec. at p. 698) (emphasis added). The diagnosis was that Plaintiff suffered a possible Anterior Infarct of undetermined age, an acute condition that fits within MAMSI's Criteria. *See Id* (Admin. Rec. at p. 701); *See* Criteria 3 (Admin. Rec. at pp. 303-05).

**<u>Response to Defendant's Argument in Paragraph No. 13</u>:**

Contrary to Defendant's assertion, Plaintiff did not *allege* that she began outpatient treatment at River Oaks Hospital with Mary Stock, L.C.M., and Corey Walsh, R.D. Defendant's SMF ¶ 13. Plaintiff did in fact receive outpatient treatment prior to her inpatient admission at River Oaks Hospital. *See* May 20, 2005 Letter of J. Michael Hannon to IPRO (Admin. Rec. at pp. 556-557). Dr. Carol Lynn Trippitelli, Plaintiff's treating physician in Washington, D.C., Dr. Tolmas, and Ms. Mary Stock, a clinical social worker formerly employed at River Oaks Hospital, were all of the opinion that Plaintiff required inpatient treatment. *See id*. Ms. Stock contacted Susan Willard of River Oaks Hospital, Plaintiff was admitted, and began inpatient treatment at the Hospital on October 13, 2004. All of this critical evidence was simply ignored by MAMSI. *See* Plaintiff's Admission Record and Progress Notes (Admin. Rec. at pp. 318-546).

**<u>Response to Defendant's Argument in Paragraph No. 14</u>**

Defendant states that Plaintiff's Cross Motion ¶ 14, a recount of Plaintiff's medical treatment history, is based, almost entirely, on a letter from Plaintiff's counsel to IPRO, an independent review organization. Again, Defendant contends that the Court should not consider Plaintiff's medical history absent support in the "underlying Record." Defendant's SMF ¶ 14.

The letter written by J. Michael Hannon to IPRO, and the medical records provided therewith, are part of the Record. *See* May 20, 2005 Letter of J. Michael Hannon to IPRO (Admin. Rec. at p. 556). Plaintiff can therefore reference, and the Court may consider, the correspondence. See Plaintiff's Disputed Assertion Generally at p. 6. In any event, Plaintiff's medical treatment history is recounted elsewhere, repeatedly,

throughout the Record. *See* Plaintiff's Admission Record and Progress Notes (Admin. Rec. at pp. 19-20, 318-546).

Defendant further states that Plaintiff failed to report that no acute EKG results were present following an EKG administered on September 1, 2004. Defendant's SMF ¶ 14. Plaintiff merely asserted, however, that Dr. Tolmas was concerned about Plaintiff's cardiology report and abnormal EKG taken prior to Plaintiff's outpatient care. *See* September 1, 2004 Tulane University SHC Cardiology Department Report (Admin. Rec. at p. 698).

Finally, though there were no acute EKG findings, the diagnosis *was* abnormal, as Plaintiff asserted. *See* Id (Admin. Rec. at pp. 698-719). Again, the diagnosis noted that Plaintiff suffered a "possible anterior infarct of undetermined age." *See id* (Admin. Rec. at p. 699). The abnormal EKG is a co-morbid health issue, particularly alarming in individuals suffering with bulimia, and further supports the treating physicians' inpatient treatment recommendation.

### **Response to Defendant's Argument in Paragraph No. 20**

In continuing her treatment, Plaintiff was placed in a partial hospitalization program on November 9, 2004, following her inpatient care. Defendant contends that Plaintiff's "Inpatient Admission History does not address the care provided during the time frame of Plaintiff's treatment in the partial hospitalization program." Defendant's SMF ¶ 20. Plaintiff's Admission Summary, however, states that Plaintiff's "estimated length of treatment was two to three weeks *with partial to follow*." *See* Plaintiff's Admission Summary (Admin. Rec. at pp. 10, 320) (emphasis added); *See also* Plaintiff's Progress Notes (Admin. Rec. at p. 377). Contrary to Defendant's assertion, Plaintiff's

partial hospitalization services were provided during the time frame of Plaintiff's treatment, were recommended by Plaintiff's treating physicians and health care professionals, and constituted merely a portion of Plaintiff's continuing treatment for bulimia nervosa. *See* Plaintiff's Admission Summary (Admin. Rec. at pp. 10, 320).

**<u>Response to Defendant's Argument in Paragraph No. 23</u>**

Defendant continues to contend that Plaintiff's Statement of Material Facts addresses care not relevant to the coverage dispute at issue in this case. *See generally* Plaintiff's Cross Motion ¶ 23; *See also* Defendant's SMF ¶ 23. Plaintiff contends, however, that the partial hospitalization services provided were part of Plaintiff's ongoing care and are therefore relevant to Defendant's denial of Plaintiff's health benefits coverage. *See* May 20, 2005 letter of J. Michael Hannon to IPRO (Admin Rec. at pp. 557-58); *See generally* Plaintiff's Admission Record (Admin. Rec. at pp. 3, 10, 320).

**<u>Response to Defendant's Argument in Paragraph No. 24</u>:**

Defendant again contends that portions of the Record cannot be cited by Plaintiff, nor considered by the Court. Plaintiff disagrees and contends that MAMSI's initial denial of benefits was flawed by a failure to consider Plaintiff's medical history, the Contract at issue, and Plaintiff's evident need for the treatment recommended by her attending physicians. Plaintiff's SMF ¶ 14. Plaintiff further contends that the subsequent reviews by MAMSI perpetuate this blind eye to Plaintiff's presenting condition and the view of her own physicians. Plaintiff's Opposition at p. 2. The reviews, in fact, do not even reflect consideration of the portion of the Record which the Court ordered MAMSI to consider. *See* May 20, 2005 Letter of J. Michael Hannon Letter to IPRO with attached medical records (Admin. Rec. pp. 553-741); *See* September 7, 2006 Memorandum

Opinion and Order at pp. 8-9, ordering Defendant to consider the administrative record produced.

In addition to J. Michael Hannon's letter to IPRO, Defendant neglected to consider a report by Mary Stock of Plaintiff's physical and psychological condition prior to her admittance to River Oaks Hospital.  *See* Defendant's SMF ¶ 24; *See also* May 20, 2005 Letter of J. Michael Hannon to IPRO (Admin. Rec. at pp. 553-741).  Again, Defendant is required to consider the entire Record.  *See* September 7, 2006 Memorandum Opinion and Order at pp. 8-9.

**<u>Response to Defendant's Argument in Paragraph No. 25</u>:**

Throughout its Reply, Defendant concedes that it did not consider, and was not required to respond to, portions of the Record.  Defendant chose to ignore segments of the record, but contends that it never received the bills for Plaintiff's treatment at issue in the correspondence.  The Record, however, includes a letter that contained the following demand:

> We have obtained and included the billing records from River Oaks.  Even if MAMSI took the position that inpatient care would not be covered, the treatment modalities applied during that time period were clearly covered mental health services.  For MAMSI to fail to consider covering all services except for the daily bed rate is evidence of its bad faith.  In any event, all of the expenses should have been covered by MAMSI from the outset.

(Admin. Rec. at p. 558).

In spite of this letter on Record, Defendant contends that the Record is silent regarding Plaintiff's demand that the non-hospital charges be paid under its Contract of insurance.  Moreover, Defendant was Court ordered to consider the entire record in its coverage determination.  This letter, and the medical records

associated therewith, is part of the Record at the time MAMSI reached its

decision.  Defendant is, therefore, precluded from arguing that it was unaware of

Plaintiff's claims for coverage.  Finally, MAMSI also does not dispute that many

of Plaintiff's medical expenses and charges are covered by the Contract.  Its

avoidance of that issue entirely is indicative of its utter bad faith.  *See* Defendant's

SMF ¶ 25.

III.    **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
        SUMMARY JUDGMENT MISCONSTRUES THE FACTS AND
        MISAPPLIES THE CONTRACT**

In its Reply, MAMSI misconstrues the facts, misapplies the law and improperly

characterized Plaintiff's arguments.  Specifically, Defendant (1) misstates Plaintiff's

conflict of interest analysis for Defendant's status as both the plan administrator and the

policy insurer, (2) claims that there is nothing in the record to support Plaintiff's

contention that she appealed her denial of coverage for her partial hospitalization

treatment, (3) contends that it was contractually permitted to supplement the Contract

with extra-contractual Criteria, that Plaintiff was aware of Defendant's reliance on these

Criteria, and that Plaintiff failed to argue that the Criteria were incorrect or incomplete,

(4) claims that Plaintiff's illness and request for coverage are unsupported by

documentation and expert opinion in the administrative record, and (5) contends that

Plaintiff's submission of the declaration of Mary Stock is improper.  *See* Defendant's

Reply at 2-3.  For ease of reference, Plaintiff's following arguments address Defendant's

Reply according to the structure of Defendant's arguments.

The only way MAMSI can defend denying Plaintiff's coverage is by ignoring

Plaintiff's prior unsuccessful medical treatment and consistent physician

recommendations as reflected in the J. Michael Hannon letter to IPRO and the provided medical records therewith.

### Defendant's Status May be a Factor in the Court's Abuse of Discretion Determination

Defendant contends that Plaintiff failed to identify any evidence that MAMSI is both the policy administrator and the policy insurer.  *See* Defendant's Reply at p. 2. Defendant, however, has not contested that it in fact does administer the health coverage policy, nor has Defendant contested that it is the policy insurer.  Defendant has therefore, in essence, admitted its dual status.

Defendant further contends that "this dual status does not in and of itself constitute a conflict of interest."  *See* Defendant's Reply at p. 5.  Plaintiff, however, contends, and Defendant does not contest, that Courts routinely recognize that that there is some degree of conflict of interest inherent in the fact that a party can perform both roles of administering and paying for the plan.  *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1256 (2d Cir. 1996).  Plaintiff therefore maintains that the Court, in its discretion, may consider the conflict of interest as a  "*factor* to be [considered] in determining whether there has been an abuse of discretion"  *See id* at p. 1255 (emphasis added).

### Plaintiff Appealed her Denial of Coverage

Defendant's Reply states that there is "nothing in the record to support Plaintiff's contention that she appealed her denial" of coverage for her partial hospitalization treatment.  *See* Defendant's Reply at p. 2.  MAMSI's denial, however, was attached to Plaintiff's appeal letter.  *See* November 10, 2006 MAMSI Denial Letter (Admin. Rec. at p. 226).

Second, even if the Court determines that Plaintiff's partial hospitalization constituted separate medical treatment, the contract supports, and Defendant does not contest, Plaintiff's assertion that the partial hospitalization did not require pre-authorization absent Hospital Confinement. *See* Group Certificate (Admin. Rec. at p. 276); *See also* Plaintiff's Statement of Material Facts Not In Dispute at ¶ 16. Again, there is no dispute that Plaintiff was not "registered as a bed patient in a Hospital." *See id.* She was therefore not required to receive preadmission authorization in order to receive coverage for her treatment. *See id.*

In spite of the evidence that Plaintiff was not required to seek pre-authorization, Defendant argues that the purposes of the administrative exhaustion doctrine have not been met. Specifically, Defendant contends that it did not have the opportunity to internally correct mistakes and that judicial efficiency would be undermined. *See* Defendant's Reply at p. 13. Contrary to Defendant's contention, however, the purposes of the administrative doctrine have been met.

The doctrine "acknowledges the commonsense notions of dispute resolution that an agency ought to have an opportunity to correct its own mistakes… [regarding] the programs it administers before it is haled into federal court." *McKart v. United States*, 395 U.S. 185, 195 (1969). Defendant has had an opportunity to correct its mistake in denying Plaintiff coverage. *See* November 11, 2004 MAMSI Letter to Plaintiff (Admin. Rec. at p. 256). Specifically, Defendant has had an opportunity to review Plaintiff's request for coverage, review materials submitted by Plaintiff's treating physicians, review the Administrative Record, including Plaintiff's long medical history, and has had an opportunity to consult "external, blinded IPRO reviewers." *See* November 9, 2004 River

16

Oaks Hospital Letter to MAMSI (Admin. Rec. at p. 4); *See* March 18, 2005 Letter of J. Michael Hannon to MAMSI (Admin. Rec. at p. 551); *See* Defendant's Reply at 10.

Moreover, in Defendant's cited case, *Boivin v. U.S. Airways, Inc*., the Defendant Administrator had not yet reached a final decision.  In *Boivin*, the Court reasoned that "allowing the [Plaintiffs] to proceed in court… would permit them to jump ahead of others who have patiently waited for the [Defendant] to reach final determinations."  The Court required exhaustion in order to "generate the necessary record, a fully considered, and reasoned explanation for the court to evaluate."  *Boivin v. U.S. Airways, Inc*., 446 F.3d 148, 156-57 (D.C. Cir. 2006), citing *Communications Workers of Am. v. AT&T,* 309 U.S. App. D.C. 170 (D.C. Cir. 1994).  In this case, Defendant MAMSI has already reached its final determination and the Court has access to a fully considered record explaining the rationale behind Defendant's decision.

Defendant has therefore had an opportunity to internally review and correct any mistakes in denying Plaintiff coverage.  Further, it has reached a final determination in denying Plaintiff coverage, and the Court has had access to a record illustrating Defendant's rationale in denying Plaintiff coverage. Contrary to Defendant's contention, the purposes of the administrative doctrine have been satisfied and the court does not lack jurisdiction to consider Plaintiff's claim.  *See* Defendant's Reply at p. 11.

### **Plaintiff's Condition Warranted Inpatient Treatment**

Defendant contends that it is permitted to rely on its Criteria in making coverage determinations.

Article 9 of the Contract permits Defendant to adopt "reasonable policies, procedures, rules and interpretations to promote orderly and efficient *administration* of

this Contract." *See* Group Agreement, Article 9.3 (emphasis added). Defendant contends

that the language of Article 9 gives it the discretion to adopt the utilized extra-contractual

Criteria. *See* Defendant's Reply at pp. 6-7. Plaintiff disagrees. While the language of

Article 9 permits Defendant to adopt "reasonable policies, procedures, rules and

interpretations," the Criteria are not policies, procedures, rules, or interpretations. They

are Criteria, and Article 9 does not expressly permit Defendant to arbitrarily adopt

standards not referenced or incorporated in the Contract, nor does Article 9 permit

Defendant to alter the standards contained in the Contract. The Contract requires that

Defendant provide coverage for services which are:

> reasonably necessary and in the exercise of good medical practice in accordance
> with professional standards accepted and commonly available in the United States
> for treatment of Sickness or Injury as determined by [MLH].

*See* Group Certificate, Definition of Medically Necessary (Admin. Rec. at p. 279).

MAMSI has failed to cite any legal authority that justifies its supplementing the

Medically Necessary definition provided in the Contract. Moreover, MAMSI failed to

demonstrate a nexus between the Medically Necessary standard and its representation

that the utilized Criteria are consistent with established professional standards.

Defendant also provides no evidence to refute Plaintiff's contention that MAMSI

repeatedly misstated its own Criteria used to reach its decision on Plaintiff's claim and

has presented no evidence that any of its experts received the correct Criteria to form

their opinions. *See* Plaintiff's Opposition ¶ 7; *See* also Defendant's Reply at p. 10.

Regardless if these oversights and concessions, Plaintiff has demonstrated that her

treatment was medically necessary, and was therefore entitled to coverage.

Defendant states that it is untrue "that Plaintiff was somehow surprised" that Defendant would utilize extra-contractual Criteria in denying Plaintiff's coverage. *See* Defendant's Reply at p. 8. Defendant further states that Plaintiff cannot "take issue" with the Criteria because she was aware of "their existence from the very first coverage denial letter." *See id.* Indeed, Plaintiff was "surprised." The Criteria are not part of the Contract and Plaintiff was not provided a copy of the Criteria pursuant to becoming a signatory to the Contract. Moreover, as Defendant concedes, Plaintiff only became aware of the extra-contractual Criteria *after* she was denied coverage. Subsequent to being denied coverage, then, would be the precise point to "take issue" with the Criteria.

Finally, Defendant contends that Plaintiff failed to claim that the extra-contractual Criteria, and MAMSI's reliance on those Criteria, are unreasonable. *See* Defendant's Reply at p. 8. Defendant contends that Plaintiff "never argued that the Criteria are somehow incorrect or incomplete." *See id.* In its Cross Motion for Summary Judgment, however, Plaintiff argued that Defendant abused its discretion and acted arbitrarily and capriciously by misstating and misapplying its own Criteria. *See* Plaintiff's Opposition at p. 27. Plaintiff further states that that Defendant "truncates and obliterates the Eating Disorder Care Criteria." *See id*; *See* also Defendant's Reply at p. 9. Most importantly, Defendant never denies misstating the Criteria, nor does it offer an explanation for its experts misstating, and presumably, misapplying the Criteria. *See* Defendant's Statement of Undisputed Facts at p. 4. Plaintiff, therefore, did indeed contend, and maintains, that Defendant's application and restatement of its own extra-contractual Criteria were both incorrect and incomplete. *See* Plaintiff's Opposition at pp. 27-28.

**Plaintiff's Illness is Well-documented Throughout the Record**

In order to contend that Plaintiff's physical and psychological illnesses are "wholly unsupported by the clinical documentation and expert opinion in the administrative record," MAMSI must ignore Plaintiff's medical records and the recommendations of her treating physicians. *See* Defendant's Reply at p. 3. Though ERISA does not require MAMSI to defer to Plaintiff's physicians, in this case, the opinions of Plaintiff's physicians, rather than those of the sanitized reviewers, should be given deference. Moreover, Defendant has not disputed Plaintiff's medical history or the opinions and recommendations of her physicians.

Plaintiff's food restriction, weight loss, resistance to medication, and eating disorder behaviors, however, are well documented throughout the administrative record. *See* Plaintiff's Admission Record (Admin. Rec. at pp. 7-22); *See also* Plaintiff's Progress Notes (Admin. Rec. at pp. 102, 122-125, 375). For example, the Record states that:

> Plaintiff engaged in bingeing and purging activities anytime any food or drink was consumed. *See* Continuous Treatment Outpatient Progress Note (Admin. Rec. at pp. 580-82). *See* Defendant's Reply at 3.

> Plaintiff was isolated and anxious throughout adolescence and practiced self-mutilation in the form of "cutting" in high school. *See* Tripitelli Progress Reports (Admin. Rec. at pp. 580-82).

> She endured decreased self-esteem and self worth throughout her formative years. *See* October 13, 2004 River Oaks Admission Summary (Admin. Rec. at p. 10).

> Plaintiff restricted her diet, engaged in bingeing and purging anytime any food or drink was consumed, and resisted inpatient treatment, admitting that part of her did not "want to give up the eating disorder." *See id* (Admin. Rec. at p. 587-590).

> During treatment, Plaintiff continued eating disorder behaviors, continued to be non-compliant with her anti-depressant prescription and reported feelings of isolation, extreme sadness and irritability. *See* Admission Summary (Admin. Rec. at p. 316).

The Record is replete with medical evidence that Plaintiff suffered, for years, with depression, psychological distress, and bulimia nervosa. Even with over 463 pages of evidence of Plaintiff's suffering, Defendant contends that Plaintiff's illness was "wholly unsupported" by the Record.

## Plaintiff May Submit Declarations in Support of its Motion for Summary Judgment

Defendant contends that Plaintiff's submission of the declaration of Mary Stock is improper. *See* Defendant's Reply at p. 3. Contrary to Defendant's contention, Plaintiff is permitted, pursuant to Federal Rules of Civil Procedure 56, to submit supporting affidavits which set forth facts that would be admissible in evidence. Fed. R. Civ. P. 56. In any event, the Court can consider Declarations in evaluating Plaintiff's medical record.

## ARGUMENT

Plaintiff seeks recognition of her diagnosed illness and health benefits coverage for necessary treatment pursuant to the Contract between Plaintiff and Defendant. The facts are undisputed that, in the fall of 2004, after several years of physical and psychological health problems, Plaintiff sought acute medical services from River Oaks. *See generally* Plaintiff's Admission Record (Admin. Rec. at pp. 5-22). Plaintiff, diagnosed with bulimia nervosa, suffered from bouts of profound depression, has a long history of restricting food, binging and purging, and an inability to maintain her health and proper nutrition independently. *See generally* Plaintiff's Admission Record (Admin. Rec. at pp. 7-22). Due to the severity of Plaintiff's illness, her three doctors recommended inpatient and partial hospitalization care. *See id.* Plaintiff's entire treatment was provided under the same diagnosis of bulimia nervosa and without re-admitting Plaintiff to the Hospital. *See id.* A review of Plaintiff's medical history

21

supports the necessity of the hospitalization and outpatient treatment, and further,

compels coverage by MAMSI pursuant to the employer-sponsored health benefits plan.

> ### I.     DEFENDANT'S UNREASONABLE FAILURE TO RECOGNIZE PLAINTIFF'S ILLNESS IS ARBITRARY AND CAPRICIOUS

MAMSI claims that it utilized its "Criteria for determining medical necessity of

an inpatient stay" to deny coverage.  MAMSI SMF ¶ 7.  As previously argued, however,

the Contract at issue supplies a definition for what qualifies as Medically Necessary and

MAMSI need not supplement the terms of the contract.  *See* Plaintiff's Opposition pp.

11-13.  Even if the Court determines, however, that it is admissible for Defendant to rely

on the extra-contractual Criteria, MAMSI is required to correctly apply the Criteria to

Plaintiff's claim.

Defendant contends that Plaintiff makes "unsupported allegations contending that

she satisfies" the Criteria.  See Defendant's Reply at p. 10.  Defendant further contends

that Plaintiff's claim of a long, arduous illness amounts to nothing more then "bald

allegations unsupported by the evidence in the record."  *See* Defendant's Reply at p. 10.

Contrary to Defendant's contention, Plaintiff did suffer from bulimia nervosa.

*See generally* Plaintiff's Admission Record at pp. 318-546.  Plaintiff's psychological

history evaluation reports that Plaintiff

> [A]lways becomes anxious prior to eating.  She is always terrified abut being
> overweight.  She always avoids eating when she is hungry.  She always finds
> herself preoccupied with food.  She always is aware of the calorie content of
> foods that she eats…She very often vomits after she has eaten.  She always likes
> her stomach to be empty.

*See* generally October 13, 2004 Psychological Evaluation (Admin. Rec. at p. 19).  Of

course, the breadth of Plaintiff's illness prevents Plaintiff from reciting each instance of

food restriction, each instance of bingeing and purging, each obsessive preoccupation

with food, and depressive mood. The Record, however, is replete with evidence of Plaintiff's food restriction, weight loss, resistance to medication, and eating disorder behaviors. *See* Plaintiff's Admission Record (Admin. Rec. at pp. 7-22). Furthermore, the unanimity of expert opinion on the part of those who examined and treated Plaintiff determined that inpatient care was medically necessary. *See* Plaintiff's Opposition ¶ 16; *see also* (Admin. Rec. at p. 318).

Defendant also contends that Plaintiff did not have suicidal ideation and that reference to suicidal thoughts "distorts the Record and manipulates the actual evidence." *See* Defendant's Reply at p. 11. Plaintiff did in fact deny suicidal ideation. *See* Plaintiff's Admission Summary (Admin. Rec. at p. 8). Plaintiff's treating physician, however, stated that "while suicidal ideation is denied, suicidal ideation is associated with Plaintiff's profile." *See id* (Admin. Rec. at p. 18). Plaintiff's admitting physician further stated that Plaintiff "was likely to try to self-medicate with alcohol use."

Regardless, suicidal ideation is not an exclusive criterion even under the MAMSI Level of Care Criteria. *See* Eating Disorder Care Criteria (Admin. Rec. at pp. 303-05). Moreover, Plaintiff does not support her claim for coverage on the basis of suicidal tendencies or thoughts. Rather, her recognized depression and isolation are indicative of the seriousness of Plaintiff's illness and contribute to the Medical Necessity of her treatment.

Plaintiff's treating physicians agreed that acute treatment was necessary. *See* Admission Summary (Admin. Rec. at p. 318). The physicians determined that Plaintiff's treatment would include inpatient care, focusing on structure, strict medication and supervision. *See generally* May 20, 2005 J. Michael Hannon Letter to IPRO (Admin.

Rec. at pp. 553-58). Plaintiff's treatment continued with Partial hospitalization services beginning immediately following her inpatient care. Plaintiff continued individual therapy in an outpatient capacity. *See* October 26, 2004 River Oaks Hospital Partial Progress Notes (Admin. Rec. at p.134).

Defendant repeatedly contends that the opinions of Plaintiff's treating physicians should not determine whether Plaintiff's treatment was medically necessary. Defendant, has not rebutted those opinions, but rather, contends that Plaintiff did not satisfy the Criteria. Given the fact that the opinions were not rebutted, MAMSI should defer to the opinions of Plaintiff's treating physicians.

Considering the potential risk to Plaintiff, her depression and isolation, bingeing and purging activities, her failure to maintain sufficient nutrition, and her failure to take prescribed anti-depression medication, Defendant's denial of benefits was capricious and unreasonable. See *Doe v. Travelers Ins. Co*., 167 F.3d 53 (1st Cir. 1999) (holding that denial of full benefits was unreasonable considering Doe's condition, her undoubtedly fragile mental condition, the opinion of examining medical professionals that inpatient care was required, and Travelers' own guidelines). Defendant is responsible, under the policy, for the treatment as "medically necessary," and its denial of coverage, in consideration of the Record, was arbitrary and capricious.

## II.    DEFENDANT'S FAILURE TO CONSIDER THE ENTIRE ADMINISTRATIVE RECORD IS ILLUSTRATIVE OF ITS UNREASONABLE DENIAL OF PLAINTIFF'S CLAIM

Throughout its Statement of Genuine Issues of Fact in Dispute in Support of its Opposition to Plaintiff's Cross Motion for Summary Judgment, Defendant states that it was not required to consider, and did not consider, the entire Administrative Record. *See*

24

*generally* Defendant's SMF ¶¶ 14, 16, 20, 24 and 25.  Defendant, therefore, failed to consider Plaintiff's complete medical history and obvious need for inpatient treatment as attested to by her treating physicians.

Specifically, Defendant suggests that the Court disregard correspondence outlining a telephonic hearing between Plaintiff's counsel and IPRO, as well as the medical records provided therewith.  *See* May 20, 2005 Letter of J. Michael Hannon (Admin. Rec. at pp. 553-58); *See also* Defendant's SMF ¶¶ 14, 16, 20, 24 and 25.  Defendant also states, in spite of an extensive Record to the contrary, that Plaintiff has not provided any evidence that she suffered, indeed suffers, from a physically and psychologically debilitating illness.  *See* Defendant's SMF ¶ 9; *See also* Plaintiff's Admission Record and Progress Notes (Admin. Rec. at pp. 318-546).  Finally, Defendant claims that Plaintiff "distorts the Record and manipulates the actual evidence."  *See* Defendant's Reply at p. 11.  Plaintiff, however, has demonstrated that the evidence in the Record is just that, evidence.  The Record is crammed with facts and opinions illustrative of Plaintiff's illness and the rationales behind Plaintiff's treating physicians' prescribed, necessary treatment.

Much of Defendant's argument relies on the Court ignoring, and condemns Plaintiff's reliance on, relevant portions of the Record.  Indeed, Defendant concedes that it has ignored portions of the Record.  *See* Defendant's SMF ¶ 14, 16, 24 and 25.  Even under the arbitrary and capricious standard of review, a plan administrator's decision to deny benefits may be overturned if the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Kinstler v. First Reliance Standard*

*Life Ins. Co*., 181 F.3d 243, 249 (2d Cir. 1999) (quoting *Pagan v. Nynex Pension Plan*, 52

F.3d 438 at 442 (2d Cir. 1995).

     MAMSI's decision to deny coverage was arbitrary and unreasonable; the decision

was based on misstated Criteria, a refusal to consider proffered evidence from Plaintiff,

and is not supported by the evidence.  *See Jordan v. Ret. Comm. of Rensselaer*

*Polytechnic Inst*., 46 F.3d 1264, 1271 (2d Cir. 1995).  Its failure to even discuss this

evidence speaks volumes about the level of review conducted by Defendant and those on

its behalf.

## III.    PLAINTIFF SATISFIES DEFENDANT'S EXTRA-CONTRACTUAL CRITERIA AND IS ENTITLED TO COVERAGE

     Defendant consistently misstated and misapplied the extra-contractual Criteria.  In

its Statement of Undisputed Material Facts 7, MAMSI incorrectly describes its own

Criteria.  Defendant inaccurately contends that the Criteria requires "a finding of at least

one of the following criteria:"

1.    severe weight loss: i.e., refusal to maintain weight at or above 75% of optimal weight;

2.    medical complications related to weight loss that require 24-hour skilled nursing care such as a heart rate less than 40, blood pressure less than 90/60, temperature less than 97, severe orthostatic changes, severe hypokalemia or hyponatremia, esophageal rupture, or other significantly abnormal test results;

3.    comorbid biomedical issues such as diabetes or pregnancy that worsen due to the weight loss and need 24-hour skilled nursing care; or

4.    comorbid psychiatric/substance abuse issues that meet inpatient rehabilitation criteria.

*See* MAMSI Statement of Undisputed Facts at 4. In its Opposition, Plaintiff stated, and

Defendant does not dispute, that the accurate Criteria are much broader. *See supra* at p.

3; *See also* Eating Disorder Care Criteria (Admin. Rec. at pp. 303-05).

Defendant further contends that Criterion 1 does not "create a blanket exception."

*See* Defendant's Reply at p. 10. Plaintiff, however, does not contend that Criterion 1

creates a blanket exception. The Criterion states that:

> Through determined food avoidance *in the absence of any physical or mental
> illness*, *a refusal to maintain weight = or* 75% of optimal body weight *or*
> approaching a weight at which physiological instability occurred in the past. For
> child/adult, may also be refusal to maintain bmi . 15 or body weight , 85% of
> optimal body weight during a period of rapid growth. *There are no particular
> weight indicators re: bulimia nervosa.*

*See* Eating Disorder Care Criterion (Admin. Rec. at pp. 303-05). Criterion 1,

therefore, requires that an enrollee suffer weight loss in the absence of physical or mental

illness. *See* Eating Disorder Care Criteria (Admin. Rec. at p. 303). The Record supports

Plaintiff's contention that she suffered from physical and mental illness. *See generally*

Plaintiff's Admission Record (Admin. Rec. at pp. 5-22). Nonetheless, prior to entering

inpatient treatment, Plaintiff was not at her standard weight, weighing nearly fifteen

pounds less. Nor was she gaining weight. Some days she did not eat at all, and if she did

it was only about 200 calories at the end of the day. Plaintiff was, therefore, unwilling to

maintain her weight. *See generally* May 20, 2005 Letter to IPRO (Admin. Rec. at pp

553-58).

Defendant also contends that Plaintiff was not "approaching a weight at which

physiological instability occurred in the past," and she does not, therefore, meet the

Criterion 1. *See* Defendant's Reply at p. 10. The Criterion states, however, that "there

are no particular weight indicators re: bulimia nervosa."

Finally, Defendant contends that Plaintiff is unable to rely on the Administrative Record to support her argument that she does, in fact, satisfy the Criteria. Specifically, Defendant contends that "Plaintiff makes a series of unsupported allegations [regarding the Criteria]...chiefly relying on a letter that Plaintiff's counsel wrote to IPRO." *See* Defendant's Reply at p. 10. Contrary to Defendant's contention, however, Plaintiff permissibly relied on and referred to the May 20, 2005 correspondence between J. Michael Hannon and IPRO. *See* May 20, 2005 Letter of J. Michael Hannon to IPRO (Admin. Rec. at pp. 553-58). This letter is part of the Record, and more importantly, is reflective of various portions of the Record. *See* Plaintiff's Admission Report (Admin. Rec. at pp. 5-22).

## CONCLUSION

Based on the foregoing as well as the facts and law outlined in Plaintiff's November 6, 2006 Memorandum of Law in Support of its Cross Motion for Summary Judgment, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment and grant Summary Judgment in its favor pursuant to Federal Rule of Civil Procedure 56(b). Defendant's Reply focuses almost entirely on its unwillingness to consider the entire Administrative Record. Plaintiff has demonstrated that Defendant's failure to consider the entire record is illustrative of its unreasonable denial of Plaintiff's claim. Plaintiff has further demonstrated that she satisfies the standards set forth in the Contract, as well as those utilized by the Defendant, and is therefore entitled to coverage. As a result, Defendant cannot prevail as a matter of law in its denial of coverage for Plaintiff.

Dated December 21, 2006                    Respectfully submitted,

                                           HANNON LAW GROUP, LLP


                                           _____//s// J. Michael Hannon //s//_____
                                           J. Michael Hannon, #352526
                                           1901 18th Street, NW
                                           Washington, DC 20009
                                           (202) 232-1907
                                           Fax: (202) 232-3704
                                           *Counsel for Plaintiff Jane Doe*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was sent via electronic filing this 21st day of December, 2006 to:

Christopher Flynn, Esq.
William Silvis, Esq.
KING PAGANO HARRISON
1730 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20006


                                           _____//s// J. Michael Hannon //s//_____
                                           J. Michael Hannon