UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> MAMSI LIFE AND HEALTH INSURANCE COMPANY, *et al*., <br><br> Defendant. | Case No.:  1:05CV02450 (ESH) |

**DEFENDANT MAMSI LIFE AND HEALTH INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Defendant MAMSI Life and Health Insurance Company ("MLH"), by and through counsel, Crowell & Moring LLP, respectfully submits the following Opposition to Plaintiff's Motion for Attorney's Fees and Costs.  In support of its Opposition, MLH states as follows:

**INTRODUCTION**

Plaintiff has filed an improper, premature and unsubstantiated request for attorney's fees and costs.  Plaintiff requests attorney's fees despite the fact that the Court has not entered a judgment in her favor and she has not prevailed on a single claim in this case.  Plaintiff alternatively claims that she is entitled to fees and costs under ERISA because she has "settled" one of her claims with MLH.  The parties, however, have not settled any issue in this litigation and Plaintiff's argument is, therefore, meritless.  Finally, even assuming, *arguendo*, that an award of attorney's fees is appropriate, Plaintiff has not offered any proof that her attorney's fees are reasonable.

In the case at bar, Plaintiff sought coverage under ERISA for both outpatient and inpatient services she received in New Orleans in late 2004. The Court granted summary judgment in favor of MLH as to the outpatient claim and remanded to the plan the coverage decision for the inpatient claim based on several considerations raised by the Court in its ruling. After addressing the considerations identified by the Court, MLH again clinically denied the Plaintiff's request for inpatient coverage. Therefore, Plaintiff has not prevailed on the issues in dispute.

Second, despite Plaintiff's assertions to the contrary, the parties have not settled any issue in this case. As a result, Plaintiff's claim that she has "prevailed" on the inpatient coverage issue as the result of a "settlement" is baseless and does not form a basis upon which to recover attorney's fees and costs.

Finally, even if the Court were to ignore the fact that Plaintiff has not prevailed on any of her claims, Plaintiff has not adduced any proof as to the reasonableness of her counsel's fees and costs. Plaintiff has not provided the Court with a single invoice for legal services or costs, has not segregated fees or costs by the issues in this case and has likewise failed to break out attorney's fees and costs by the separate defendants in this action. On this record, Plaintiff's request for attorney's fees and costs is *per se* unreasonable. As a result, Plaintiff's request for fees and costs should be denied for this reason as well.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

1. Plaintiff, a member of the MLH health plan, filed a six count complaint against MLH and IPRO, Inc. on December 20, 2005. Plaintiff pled three counts against MLH, including a claim for benefits under ERISA (Count I), a claim for breach of contract (Count II) and a claim for bad faith (Count III). Faced with the dismissal of her common law claims based on ERISA

preemption, Plaintiff voluntarily dismissed those claims against MLH (Counts II and III) on February 3, 2006.

2.      Following the filing of her complaint, Plaintiff engaged in a lengthy dispute with Defendant IPRO regarding its appropriateness as a defendant in this action. IPRO is an independent review organization that contracted with the District of Columbia government to perform clinical reviews of coverage decisions when a plan member challenges a coverage decision to the D.C. Department of Health. From February 6, 2006 until June 26, 2006, Plaintiff filed two briefs opposing the dismissal of IPRO and participated in several oral arguments regarding the same issue. *See* Memorandum in Opposition to Motion to Dismiss (Docket Entry #8); Plaintiff's Memorandum in Opposition to IPRO's Motion for Entry of Judgment and Dismissal with Prejudice (Docket Entry #9). Despite Plaintiff's extensive briefing on this issue, the Court dismissed all claims against IPRO with prejudice. *See* Minute Order dated June 26, 2006.

3.      During the pendency of Defendant IPRO's Motion to dismiss, MLH and IPRO requested that Plaintiff stipulate that discovery should be limited to the administrative record relating to the coverage denials in dispute pursuant to this Court's precedent governing the scope of discovery in an ERISA case. *See* LCvR 16.3 Conference Report dated March 20, 2006, ¶¶ 7-8 (Docket Entry #14). Plaintiff, however, refused to so stipulate. *Id*. As a result, MLH moved for a protective order quashing the interrogatories, requests for production and deposition notices propounded by Plaintiff. *See* MLH'S Motion for Protective Order dated July 25, 2006 (Docket Entry #27). Plaintiff opposed this motion on August 7, 2006. *See* Memorandum in Opposition to MLH's Motion for Protective Order dated August 7, 2006 (Docket Entry # 30). On September 7, 2006, the Court granted MLH's Motion for Protective Order almost entirely, with

3

the caveat that MLH was to produce any minutes of meetings regarding Plaintiff's claims if such documents existed. *See* Memorandum Opinion and Order dated September 7, 2006 (Docket Entry #32). No such minutes existed.

4. Following submission of the administrative record under seal, the parties cross moved for summary judgment. *See* MLH's Motion for Summary Judgment (Docket Entry #33); Plaintiff's Motion for Summary Judgment (Docket Entry #34). Despite the Court's ruling limiting its review to the administrative record below, Plaintiff submitted a lengthy declaration from Mary Stock, one of Plaintiff's healthcare providers. Dr. Stock's declaration was not part of the administrative record. As a result, MLH moved to strike the declaration of Ms. Stock. *See* Motion to Strike Affidavit of Mary Stock dated November 27, 2006 (Docket Entry #40). Once again, Plaintiff opposed this motion despite the clear case law prohibiting the use of affidavits in opposing summary judgment in an ERISA action. *See* Plaintiff's Reply in support of her Cross Motion for Summary Judgment dated December 21, 2006, p. 21 (Docket Entry #42).

5. On January 25, 2007, the Court ruled on the cross motions for summary judgment and MLH's Motion to Strike the Affidavit of Mary Stock. The Court granted MLH's Motion to Strike and granted summary judgment in favor of MLH as to the partial hospitalization claim submitted by Plaintiff. The Court remanded the remaining inpatient coverage decision to MLH to explain how the inpatient criteria applied to all the evidence in the record, including new evidence considered for the first time by IPRO on its second review. *See* Memorandum Opinion dated January 25, 2007, p. 18 (Docket Entry #47).

6. Following receipt of the Court's Memorandum Opinion, MLH addressed the issues raised by the Court, reviewed the new evidence considered by IPRO on its second review, and upheld its denial of the inpatient claim in dispute. *See* Letter from Morton Albert, M.D., to

Plaintiff, dated April 2, 2007 (attached hereto as Exhibit A).  Plaintiff failed to take any action to challenge the plan's re-review and did not appeal or otherwise challenge the final determination of the Court.

      7.      Following the Court's Memorandum Opinion on the parties' summary judgment motions, the parties continued to discuss the possible resolution of this matter by settlement.  *See* Declaration of Christopher Flynn, Esq., dated June 13, 2007, ¶ 2 (attached hereto as Exhibit B).  During several discussions with Michael Hannon, counsel for Plaintiff, the parties discussed the parameters of a settlement, which included the payment of an amount by MLH in return for the dismissal of Plaintiff's claims against MLH, including any claim for attorney's fees and costs.  Flynn Declaration, ¶ 2.

      8.      Plaintiff's counsel set forth his client's initial settlement demand in an e-mail in which the Plaintiff requested the following:

| | |
|---|---|
| Inpatient payment: | $39,130.15 |
| Total Fees to 1/29/07: | $65,018.40 |
| Total Fees 1/29/07 to Present: | 1,429.50 |
| TOTAL FEES TO DATE: | $66,447.90 |
| Less IPRO Motion Fees: | (6,681.00) |
| FEES NET OF IPRO: | $59,766.90 |
| TOTAL DEMAND: | $98,897.47 |

Email from J. Michael Hannon, Esq. to Christopher Flynn, Esq., dated March 26, 2007 (attached as Exhibit C). [1]  In response to the demand, counsel for both parties spoke on the telephone and

---

[1] MLH very reluctantly addresses settlement negotiations in its Opposition and recognizes that such issues should not normally be raised before the trial judge.  Plaintiff, however, has made numerous representations in its motion regarding settlement negotiations that are false and that can only be rebutted by providing the complete context of those negotiations.  Moreover, Plaintiff has openly discussed the settlement discussions in both her Motion for Attorney's Fees and Costs and the Motion to Enforce a Settlement Agreement that she filed yesterday.

counsel for MLH explained that MLH would settle all claims (including inpatient claims, outpatient claims and attorney's fees) for a specific dollar amount. Flynn Decl. ¶ 3. Counsel for MLH reiterated the monetary amount of the settlement via e-mail. *See* email from Christopher Flynn, Esq. to J. Michael Hannon, Esq., dated April 17, 2007 (attached as Exhibit D).

9. Despite repeated inquiries, MLH did not receive a substantive response to its settlement offer for over a month and a half. Then, on June 4, 2007, at 5:28 p.m., counsel for Plaintiff sent an e-mail to MLH's counsel purporting to accept an offer to pay only the outstanding claim for inpatient are. One minute later, Plaintiff filed her Motion for Attorney's Fees and Costs claiming, in part, that she was due attorney's fees as the result of a "settlement" between the parties. *See* Plaintiff's Motion for Attorney's Fees and Costs dated June 4, 2007 (Docket Entry #50). Counsel for Plaintiff never contacted counsel for MLH to confirm the parameters of the settlement agreement purportedly reached on June 4, 2007.

10. Counsel for Plaintiff ignored the fact that MLH's offer, communicated by phone and e-mail, was for a specific dollar amount to resolve all outstanding claims, including both of the health benefits claims at issue and attorney's fees. Upon receipt of counsel for Plaintiff's email purportedly accepting MLH's alleged settlement offer, MLH's counsel immediately clarified the previous offer:

> The best and final offer to your client was to settle all open claims (inpatient, outpatient and attorney's fees) for the value of the [dollar amount redacted] in medical costs and subject to the execution of a settlement agreement. Your client has not accepted those terms and we reject your counter offer. Moreover, your attempt to shoehorn attorney's fees in a separate Motion is one of the most underhanded and duplicitous actions I have seen in my 15 years of practice.
>
> I'll address the substance of your Motion separately.

6

Email from Christopher Flynn to J. Michael Hannon, dated June 4, 2007 (attached hereto as Exhibit E). Plaintiff's counsel never responded to counsel for MLH. MLH now opposes the relief requested in Plaintiff's motion.

### ARGUMENT

### I.

### PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS IS, AT BEST, PREMATURE

Plaintiff's request for attorney's fees and costs is, at best, premature. Federal Rule of Civil Procedure 54(d)(2)(B) provides that:

> [u]nless otherwise provided by statute or order of the court, the motion [for attorney's fees] must be filed within 14 days after the entry of judgment.

The Court has not entered judgment on any issue in favor of Plaintiff. Indeed, Plaintiff has lost every substantive issue thus far in this matter. *See* Statement of Facts, *supra*, at ¶¶ 1-5. Indeed, in its Memorandum Opinion, the Court granted summary judgment in favor of MLH as to Plaintiff's claim for partial hospitalization benefits and remanded the inpatient claim to the plan to consider her comments regarding application of the relevant care criteria to the medical services in dispute. Memorandum Opinion at 21. After addressing the issues raised by the Court in its Memorandum Opinion, MLH upheld its denial of Plaintiff's claim for inpatient services. *See* Letter from Morton Albert, M.D., to Plaintiff, dated April 2, 2007 (Ex. A). Since the Court has not entered a judgment in favor of Plaintiff, it should deny Plaintiff's motion in its entirety.

In *Ravesloot v. Baxter International, Inc.*, 2004 U.S. Dist. LEXIS 11572, *18 (N.D. Ill. Jun. 23, 2004), the court considered the same issue as that presented here – whether a plaintiff is entitled to attorney's fees and costs where he or she has not prevailed on a claim, the court has remanded the decision to the plan and there is no evidence of bad faith. Under those

7

circumstances, the *Ravesloot* court held that the request for attorney's fees was premature and denied the request in its entirety. *See Ravesloot*, 2004 U.S. Dist. LEXIS 11572, *18 (N.D. Ill. 2004); *see also*, Da-Wai Hu, Running the Caucus-Race: Prevailing Parties and Fee Shifting under ERISA, 67 U. Chi. L. Rev. 217, 224-25 (2000) ("… the standard courts apply to determine whether fee shifting is appropriate seems to assume implicitly that only winning parties are eligible to recover attorney's fees."). According to the *Ravesloot* court, the trial court should not award attorney's fees without being able to ascertain the prevailing party. 2004 U.S. Dist. LEXIS 11572 at *18. Here, Plaintiff has not prevailed on any of her claims. As a result, Plaintiff's motion should be denied because it is premature.[2]

## II.

## PLAINTIFF IS NOT THE PREVAILING PARTY IN THIS ACTION

Even if the Court finds Plaintiff's motion to be ripe for adjudication, Plaintiff is nevertheless not entitled to attorney's fees and costs. In *Eddy v. Colonial Life Insurance Company of America*, the D.C. Circuit held that, under ERISA's attorney's fees provision, the Court must "weigh[ ] the factors appropriate to an award of attorney's fees without presuming that an award to the prevailing party is appropriate absent *exceptional circumstances*." 59 F.3d 201, 203 (D.C. Cir. 1995) (emphasis added). The *Eddy* Court identified several factors as guidelines for the trial court in deciding whether to award attorney's fees under ERISA. Those factors are as follows:

> (1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the detriment effect of such an award; (4) the value of the victory to plan and participants and

---

[2] Alternatively, to the extent that the Court's summary judgment ruling on January 25, 2007 signaled the Court's final determination in this case, Plaintiff's claim for attorney's fees four-and-a-half months later is timebarred under Fed. R. Civ. P. 54(d)(2)(B) (applying a 14-day deadline to motions for attorney's fees following entry of judgment).

> beneficiaries, and the significance of the legal issue involved; and
> (5) the relative merits of the parties' positions.

*Eddy*, 59 F.3d at 206. Applying those factors here, it is clear that a fee award is completely unwarranted.

First and foremost, the factors above make it clear that the Court should only consider attorney's fees if a party has prevailed on at least some of its claims. The courts have almost uniformly adopted this position. *See, e.g., Carrigan v. Reliance Stnd. Life Ins. Co.,* 55 Fed. Appx. 630, 633 n.5 (4th Cir. 2003) (where it is unclear that appellee will be prevailing party, attorneys' fee award is vacated); *Phelps v. U.S. West, Inc.*, 1998 U.S. App. LEXIS 6667, *7 (10th Cir. 1998) (". . . most courts, including this one, have interpreted ERISA to allow an award of attorney's fees only to prevailing parties"); *Martin v. Blue Cross & Blue Shield of Virginia, Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997) (". . . only a prevailing party is entitled to consideration for attorney's fees in an ERISA action."); *Flanagan v. Inland Empire Electric Workers Pension Plan & Trust*, 3 F.3d 1246, 1253 (9th Cir. 1993) ("holding that Plaintiff must succeed on a 'significant issue of litigation' to merit an award of attorney's fees.").[3] Since Plaintiff has not prevailed on any issues in this litigation, the Court's inquiry regarding attorney's fees should end here.

Plaintiff pled three claims against MLH, yet stipulated to the dismissal of her two non-ERISA claims (breach of contract – Count II, and bad faith – Count III). *See* Statement of Facts, ¶ 1. In her remaining ERISA denial of benefits claim (Count I), Plaintiff sought coverage from MLH for two separate services – inpatient treatment at River Oaks Hospital from October 13, 2004 until November 8, 2004, and treatment in a partial hospital program from November 9,

---

[3] The D.C. Circuit has not identified specific milestones a litigant must achieve in ERISA litigation in order to be eligible for attorney's fees and costs.

9

2004 until November 22, 2004. *See* Amended Complaint, ¶¶ 14, 17. The Court, however, ruled on summary judgment that Plaintiff was not entitled to benefits for the partial hospital services. Memorandum Opinion at 21. Additionally, the Court remanded to MLH consideration of the remaining inpatient claim in light of its comments regarding application of the relevant criteria to the claim at issue. Memorandum Opinion dated January 25, 2007, at 18. Pursuant to the Court's direction, MLH conducted a further review of Plaintiff's inpatient claim and upheld the denial of benefits. *See* Letter from Morton Albert, M.D. to Plaintiff dated April 2, 2007 (Ex. A). Including the plan's most recent review, MLH's coverage decision for Plaintiff's inpatient care at River Oaks Hospital has now been the subject of eight clinical reviews, including three internal and five external reviews. *See* Undisputed Facts in Support of MLH's Motion for Summary Judgment, ¶¶ 8-9, 11-12, 18-19, 23-24; *see also*, Letter from Morton Albert, M.D., to Plaintiff, dated April 2, 2007 (Ex. A). On each occasion, the reviewers have upheld MLH's coverage determination in this case.

Assuming, *arguendo*, that Plaintiff had prevailed on any of her claims (which has not occurred), she still would not be entitled to attorney's fees and costs under the *Eddy* factors. The first factor measures the losing party's culpability or bad faith. In this case, eight clinical reviews have found that Plaintiff was not entitled to coverage of the inpatient services she received in New Orleans. *See* Undisputed Facts in Support of MLH's Motion for Summary Judgment ¶¶ 8-9, 11-12, 18-19, 23-24; *see also*, Letter from Morton Albert, M.D., to Plaintiff, dated April 2, 2007 (Ex. A). Five of the health care providers conducting those reviews were not employed by MLH. *Id*. Plaintiff cannot demonstrate that MLH's coverage denial for the claims at issue constituted bad faith when a host of clinicians with no relationship to MLH reached the same conclusion as MLH.

Another *Eddy* factor measures the deterrent effect of a fee award. Again, since MLH has not improperly denied the claims at issue, there is no action to deter. Equally important, since UnitedHealthcare acquired MLH, MLH migrated to UHC's clinical criteria when reviewing claims, including those for the treatment of eating disorders. Declaration of Sandra H. LeCompte, dated June 15, 2007, ¶ 4 (attached hereto as Exhibit F). As a result, any adverse judgment here would not deter MLH from using the clinical criteria at issue since MLH now utilizes the clinical criteria of UnitedHealthcare.

Similarly, there is no value of a "victory to plan participants and beneficiaries" in this case because Plaintiff has not prevailed. Moreover, this case has not involved any novel ERISA issues, and therefore, fees are not warranted on that basis either. In fact, Plaintiff attempted on numerous occasions to contravene well-established ERISA standards in this action but failed on each occasion (*i.e.*, Plaintiff's common law claims that were preempted by ERISA; Plaintiff unsuccessfully demanded full-blown discovery in an ERISA action in the face of binding precedent limiting review to the administrative record below; Plaintiff unsuccessfully attempted to alter the well-established ERISA standard of review for a denial of benefits claim; and, finally, Plaintiff attempted, albeit unsuccessfully, to introduce affidavit testimony at summary judgment after the Court had previously limited the parties to the record).

The last *Eddy* factor – the relative merits of the parties' positions – again requires that Plaintiff not receive attorney's fees in this case. Plaintiff's positions have not been vindicated on a single issue in this case. Indeed, the only judgment on a claim rendered to date – the claim for partial hospitalization services – was rendered in favor of MLH.

Based on the foregoing, Plaintiff has no legitimate claim to attorney's fees or costs. Indeed, Plaintiff's motion appears to be nothing more than a desperate attempt to recover

11

something in this case since she has not prevailed on any claim or sought to challenge, by appeal or any other method, the Court's ruling on summary judgment or the plan's most recent review.

### III.

### PLAINTIFF'S CLAIM THAT THE PARTIES "SETTLED" PART OF THIS MATTER IS DISINGENUOUS

In her Motion, Plaintiff also claims that she is entitled to attorney's fees because she has "settled" a portion of this dispute and, therefore, has prevailed on at least one of her claims. *See* Memorandum in Support of Motion for Attorney's Fees and Costs, p. 9 (Docket Entry #50). Plaintiff's claim that the parties have settled the inpatient claim is patently false. As a result, Plaintiff is not entitled to attorney's fees under the theory that she prevailed as a result of an erstwhile settlement.

Under District of Columbia law, "settlement agreements are determined according to principles of contract law." *Simon v. Circle Associate, Inc.*, 753 A.2d 1006, 1012 (D.C. 2000). A complete enforceable contract exists only where there is (1) an agreement as to all the material terms; and (2) an intention of the parties to be bound. *See United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001); *see also*, *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 152 (D.D.C. 2002). "There must thus be an honest and fair meeting of the minds as to all issues in a contract." *Hood v. District of Columbia*, 211 F. Supp. 2d 176, 179 (D.D.C. 2002) (quoting *Simon*, 753 A.2d at 1012). Indeed, the parties to an alleged settlement agreement 'must' intend the words and acts which constitute their manifestation of assent. *Id.*

A district court may not summarily enforce a settlement "until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." *Hood*, 211 F. Supp. 2d at 180 (quoting *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002)). Indeed, a party attempting to enforce a settlement agreement "bears the

burden of showing, by clear and convincing evidence, that the parties in fact formed a binding agreement *in resolution of all the disputed issues in the underlying litigation.*" *Samra v. Shaheen Business and Investment Group, Inc.*, 355 F. Supp. 2d 483, 493 (D.D.C. 2005) (emphasis added).

Plaintiff's contention that the parties settled Plaintiff's inpatient claim appears to be based on a misbegotten game of "gotcha". As set forth in the Statement of Facts above, the parties have discussed settlement at various times during this litigation. At all times, MLH explained to counsel for Plaintiff that a settlement would be subject to an executed settlement agreement, which includes, among other things, a waiver of all claims, including those for attorney's fees and a confidentiality provision. Flynn Decl., ¶ 2 (attached hereto as Exhibit B). At no time during this case has MLH authorized, or counsel for MLH offered, to settle this case by paying any portion of the outstanding inpatient medical claim without also receiving a release of all claims and attorney's fees and subject to agreement on the terms of an executed settlement agreement. Flynn Decl., ¶¶ 2, 4.[4] Any contention to the contrary is, at best, inaccurate.

Plaintiff would have this Court believe that MLH agreed to settle only the Plaintiff's outstanding inpatient claim without addressing any other issue in the case as part of the settlement (*i.e.*, the partial hospitalization claim, releases, dismissal of this action, attorney's fees, confidentiality, terms of payment, etc.). Essentially, Plaintiff is representing to the Court that MLH agreed to settle Plaintiff's inpatient claim and litigate the issue of attorney's fees and costs separately. Simply stated, Plaintiff's contention is untrue and a red herring.

---

[4] Counsel for MLH has represented MLH and its affiliates for over thirteen years, including in numerous ERISA actions. Counsel has never settled an ERISA dispute on behalf of MLH without also requiring an executed settlement agreement, releases as to all claims, including attorney's fees, dismissal of relevant action with prejudice, confidentiality and terms of payment. Flynn Decl., ¶ 5.

13

Plaintiff also contends that the terms of the purported settlement agreement are fully embodied in several emails between counsel. These emails do not constitute any form of agreement, let alone the "settlement" alleged by Plaintiff. Plaintiff offered to settle all claims in the case, including attorney's fees, for $98,897.47. *See* Statement of Facts, ¶ 8. Counsel for MLH countered that demand with an offer of a specified amount to settle the entire matter. *Id*. Over a month and a half later, Plaintiff responded to MLH's counteroffer via email by purportedly accepting an alleged offer to settle only Plaintiff's inpatient claim for the amount MLH had offered to settle all matters in the case and moving this Court for attorney's fees and costs one minute later. *Id*. at ¶ 8. At no point did counsel for Plaintiff telephone counsel for MLH to confirm the terms of the purported agreement. Flynn Decl., ¶ 6 (Ex. B).

Immediately upon receipt of the email from Plaintiff's counsel, counsel for MLH responded in writing and explained that Plaintiff had misrepresented the terms of MLH's settlement offer and that the Plaintiff's counteroffer was rejected. *See* Statement of Facts, ¶ 10. Plaintiff's contention that the foregoing emails embody the terms of an enforceable settlement agreement is false and cannot be sustained under District of Columbia law.

No matter how Plaintiff attempts to recharacterize the facts here, they fall well short of proving a settlement agreement. First, there is absolutely no mutuality of understanding as to the terms of the alleged agreement. Counsel for MLH has never been authorized to settle just the inpatient claim and never made such an offer. Flynn Decl., ¶ 4. Indeed, MLH's counsel wrote to counsel for Plaintiff immediately upon receipt of the purported "acceptance" email explaining that the parties had not reached an agreement. Statement of Facts, ¶ 10. That contemporaneous evidence evinces anything but an intent to be bound to the alleged "settlement agreement" that Plaintiff argues before the Court.

14

Even more telling, Plaintiff filed its Motion for Attorney's Fees and Costs and Memorandum in Support one minute after allegedly "accepting" MLH's purported settlement offer to settle only one of the issues in dispute in the litigation. The reason for counsel for Plaintiff's timing is obvious – he knew that MLH would immediately object to the alleged "agreement" and he would not be able to represent to the Court in the moving papers that the parties agreed on a settlement. Settlement agreements are meant to embody the full terms of an agreement to be bound. They are not intended to bind parties as the result of guile. *See Hood v. District of Columbia*, 211 F. Supp.2d 176, 180 (D.D.C. 2002) (settlement agreement is enforceable when there is an "honest and fair meeting of the minds as to all issues").

Counsel for MLH explained to counsel for Plaintiff within hours of his alleged acceptance of the purported offer that the parties were not in agreement on the terms of a settlement. Yet, counsel for Plaintiff continues to blithely represent to this Court that the Plaintiff's inpatient claim has been settled. Enforcing such an "agreement" would reward Plaintiff for its questionable tactics.

Additionally, Plaintiff represents to the Court that MLH agreed to settle only the Plaintiff's inpatient claim while apparently agreeing to resolve the remaining claims and the issue of attorney's fees through additional litigation. The Court would have to suspend common sense in order to adopt Plaintiff's reasoning. Plaintiff bears the burden of showing, by clear and convincing evidence, that the parties formed a binding agreement in resolution of all the disputed issues in this litigation. *Samra*, 355 F. Supp.2d at 493. Plaintiff argues the opposite – that the parties agreed to settle only one issue in dispute so that Plaintiff could separately attempt, through additional litigation, to recover attorney's fees and costs. MLH respectfully requests

15

that the Court reject such a skewed interpretation of the settlement discussions between the parties.

Finally, Plaintiff's purported "settlement" apparently consists of only one term – a payment amount. For example, Plaintiff does not even assert a common understanding as to a written settlement agreement, a release of all claims, confidentiality and payment terms – all common terms of a settlement agreement. While the parties never reached agreement on a single issue in this case, Plaintiff does not allege any term other than the purported amount of a monetary settlement on Plaintiff's inpatient claim. Thus, even assuming, *arguendo*, that the Court were to find that such an agreement as to a monetary amount existed, Plaintiff has nevertheless fallen well short of even alleging, let alone proving, that the parties "formed a binding agreement in resolution of *all* the disputed issues in the underlying litigation." *Samra*, 355 F. Supp.2d at 493 (emphasis added).

### IV.

### PLAINTIFF HAS ALSO FAILED TO PROVE THAT HER FEES ARE REASONABLE

The Court need not even reach the issue of whether Plaintiff's attorney's fees and costs are reasonable. Yet, even if it were to do so, Plaintiff has not demonstrated, by any measure, that she is entitled to the fees requested in her motion.

Plaintiff bears the burden of establishing entitlement to fees, documenting the appropriate hours, and justifying the reasonableness of the rates requested. *Hotel and Restaurant Employees Local 25 v. The Madison Hotel, Inc.*, 43 F. Supp.2d 8, 11 (D.D.C. 1999). Plaintiff has failed to satisfy each of those standards here.

First, Plaintiff has not even provided to the Court time records from which the Court and MLH can determine the reasonableness of the fee demand.[5] On that basis alone, Plaintiff's claim for fees should be denied. *Hotel and Restaurant Employees Local 25 v. The Madison Hotel, Inc.*, 43 F. Supp.2d 8, 11 (D.D.C. 1999) (plaintiffs must document hours in an attorney's fee petition).

Second, Plaintiff is requesting $72,624.50 in attorney's fees despite the fact that she has not prevailed in a single claim in this case. *See* Affidavit of J. Michael Hannon, Esq. (attached to Plaintiff's Motion for Attorney's Fees and Costs). Since Plaintiff failed to provide billing statements, it is impossible to determine which fees are attributable to which events in the case. Yet, as more fully set forth in the Statement of Facts above, Plaintiff has already lost on the following issues:

    a. ERISA preemption of her common law claims against MLH (by stipulation);

    b. dismissal of her claims against Defendant IPRO;

    c. the scope of discovery permitted in an ERISA action;

    d. her claim for coverage of partial hospitalization services; and

    e. the motion to strike the affidavit testimony of Mary Stock.

Plaintiff's fee application, however, does not appear to take any of these facts into account. Moreover, Plaintiff has not recovered on her claim for inpatient benefits. As a result, her claim for attorney's fees in the amount of $72,624.50 is patently unreasonable.

Moreover, Plaintiff's claim that it is entitled to attorney's fees based on the alleged "settlement" is unfounded since no settlement has ever been reached. Yet, even if that were not the case, Plaintiff's claim of entitlement to $72,624.50 in attorney's fees, which far exceeds the

---

[5] Plaintiff has instead submitted a one-paragraph time summary without providing to the Court or MLH the records from which the summary was prepared.

alleged settlement amount, is *per se* outrageous. To the extent the Court even reaches the issue of reasonableness of fees, it should not entertain a fee request that far exceeds the amount of an alleged, yet unsubstantiated, settlement agreement.

Finally, Plaintiff has not provided any support for her alleged costs in this case. As a result, those costs should be denied as well.

## CONCLUSION

For each of the foregoing reasons, MLH respectfully requests that the Court deny Plaintiff's motion for attorney's fees and costs in its entirety.

Dated: June 15, 2007                                  Respectfully submitted,


/s/ Christopher Flynn
Christopher Flynn, Esq.
William C. Silvis, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Phone: 202-624-2500
Fax: 202-628-5116
cflynn@crowell.com
wsilvis@crowell.com

Counsel for Defendant MAMSI Life and
Health Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 15th day of June 2007, a copy of DEFENDANT MAMSI LIFE AND HEALTH INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS was sent via electronic filing to:

> J. Michael Hannon, Esq.
> HANNON LAW GROUP, LLP
> 1901 18th Street, NW
> Washington, DC 20009
> ph: (202) 232-1907
> Fax: (202) 232-3704
>
> Counsel for Plaintiff

and all counsel of record registered with the Court's ECF system.

Respectfully submitted,

/s/ William C. Silvis
William C. Silvis, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
Ph: 202-624-2516
Fax: 202-628-5116
wsilvis@crowell.com

#3516573